DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

Attorneys for Defendant **Julius Liu**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-06-00772-JW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIUS LIU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT JULIUS LIU'S MOTION FOR BAIL PENDING APPEAL**

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STANDARDS FOR BAIL ON APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. MR. LIU IS NOT A FLIGHT RISK AND POSES NO
     DANGER TO THE COMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Mr. Liu Is Not a Flight Risk; He Has Made All Appearances Before
          this Court and Adhered to All of its Requirements Before, During,
          and after Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.   Mr. Liu Is Not a Danger to the Community . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  THIS APPEAL IS NOT FOR THE PURPOSE OF DELAY . . . . . . . . . . . . . . . . . . 7

V.   MR. LIU'S APPEAL RAISES SUBSTANTIAL QUESTIONS
     OF LAW AND FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.   Definition of a "Substantial Question of
          Law or Fact" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          1.   Mr. Liu received ineffective assistance of counsel due to his
               trial attorney's failure to raise a statute of limitations defense
               to Counts 1 and 2 (See Exhibit A, Draft of Opening Brief,
               Pg. 21-46) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2.   This Court issued prejudicial jury instructions that were
               misleading, unrequested and permitted to the jurors to
               apply a lower standard for proof to this case (See Exhibit A,
               Draft of Opening Brief, Pg. 65-83) . . . . . . . . . . . . . . . . . . . . . . 12

     a.   Failure to incorporate Mr. Liu's proposed instruction despite the
          government's lack of opposition . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     b.   This Court's sua sponte definition of the words "willfully infringed"
          impermissibly lowered the standard of proof . . . . . . . . . . . . . . . . . . . . . 13

     c.   This Court erred by incorporating, without the request or approval
          of the parties, an instruction permitting the jury to find Mr. Liu
          guilty based on an agency relationship . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     d.   This Court erred by failing to conduct a Rule 30 conference . . . . . . . . . . . 15

3.   This Court committed structural error by failing to obtain Mr. Liu and his attorney's input, and to make any record, with respect to three of the five jury notes submitted to the Court (See Exhibit A, Draft of Opening Brief, Pg. 83-88) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4.   The government committed prosecutorial misconduct through its erroneous representations to the Court regarding Mr. Liu's supposed admission that he sold "Symantec software" to Vertex; the record reflects that Mr. Liu did not admit to selling "Symantec software." (See Exhibit A, Draft of Opening Brief, Pg. 113-121) . . . . . . . . . . . 16

5.   This Court erred by admitting over defense objection unauthenticated business records generated and maintained by Vertex (See Exhibit A, Draft of Opening Brief, Pg. 88-112) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6.   This Court erred in calculating the sentencing guidelines for Mr. Liu because it improperly calculated the value and quantity of the loss (See Exhibit A, Draft of Opening Brief, Pg. 143-152) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7.   Other arguments raised on appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.   The Substantial Questions Raised by Mr. Liu on Appeal Are Likely to Elicit the Results Required by 18 U.s.c. §3143(b)(1)(B) . . . . . . . . . . . . . . . . 26

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# **TABLE OF AUTHORITIES**

**Case Law**                                                                    **Page(s)**

*A & M Records v. Napster, Inc.,*
    239 F.3d 1104, 1022 (9th Cir. 2001) .................................... 18, 19

*Cheek v. United States,*
    498 U.S. 192, 200 (1991) ............................................. 27

*Hung v. United States,*
    439 U.S. 1326 (1978) ............................................... 2, 3

*Miller-El v. Cockrell,*
    537 U.S. 322, 342 (2003) ............................................. 9

*Musladin v. Lamarque,*
    555 F.3d 830, 837 (9th Cir. 2009) ................................... 20

*United States v. Cronic,*
    466 U.S. 648, 659 (1984) ............................................ 20

*United States v. Gaskins,*
    849 F.2d 454, 459 (9th Cir. 1988) .................................. 19

*United States v. Handy,*
    761 F.2d 1279, 1283 (9th Cir. 1985) ........................... 8, 28, 30

*United States v. McKenna,*
    327 F.3d 830, 845 (9th Cir. 2003) .................................. 21

*United States v. Moran,*
    757 F.Supp. 1046 (DC Neb 1991) ..................................... 28

*United States v. Pacheco,*
    912 F.2d 297, 304 (9th Cir. 1990) .................................. 22

*United States v. Wheeler,*
    795 F.2d 839, 840-841 (9th Cir. 1986) ............................... 1

**I.**

**INTRODUCTION**

On Friday June 18, 2010, a jury found Mr. Liu guilty of three counts of criminal copyright infringement and one count of trafficking in counterfeit labels. Mr. Liu was sentenced to a term of 48 months in prison on December 13, 2010.

At that time, the Court scheduled Mr. Liu's surrender date for February 14, 2011 and set a hearing date of January 31, 2011 for the motion for bail pending appeal. The Court indicated that any motion for bail pending appeal should be formally made in written form. (RT, 12/13/2010, Pg. 38).

On December 21, 2011, Mr. Liu retained his current attorney, David J. Cohen, Esq., who promptly began reviewing the available trial documents in preparation for this motion and for the appeal. Although trial transcripts were ordered immediately, the transcripts were ultimately not delivered until February 18, 2011. In anticipation of this, Mr. Cohen and Assistant United States Attorney, Hanley Chew, Esq., stipulated to continue the hearing and surrender dates. Additional circumstances led the parties to stipulate to a second continuance for the hearing and surrender dates.

The final order of this Court mandated that this motion be filed by today, April 18, 2011. The hearing date for this motion, scheduled by this Court, is set for May 16, 2011 at 1:30 p.m., and Mr. Liu's surrender date, if not vacated pursuant to this matter, is scheduled for May 23, 2011.

**Defendant Julius Liu's Motion for
Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW

1

## II.

## STANDARDS FOR BAIL ON APPEAL

Subsection (b)(1) of 18 U.S.C. § 3143 states that a person found guilty of an offense and who has an appeal currently pending shall not be subject to imprisonment if it is shown:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title [18 USCS § 3142(b) or (c)]; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Ordinarily, an application for bail on appeal shall, in the first instance, be made in the district court. *Fed. R. App. Proc. 9(b)*. If the application is denied, the district court must state its reasons, not merely its conclusions. *United States v. Wheeler*, 795 F.2d 839, 840-841 (9th Cir. 1986).

Mr. Liu now moves this Court, pursuant to 18 U.S.C. § 3143, to grant him bail pending his current appeal with the Ninth Circuit Court of Appeals. Mr. Liu is scheduled to file his opening brief in this case May 23, 2011.[1] Because Mr. Liu is not a flight risk, does not pose a

---

[1]    A copy of a draft of this brief is attached to this motion as Exhibit A. Periodic references to the brief will be made throughout this motion.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                              2

danger to the community, and because he currently has a pending appeal with the Ninth Circuit

in which he raises numerous meritorious questions of law and fact likely to result in the outcomes

listed in subsection (B) of section 3143, this Court should grant Mr. Liu's motion for bail pending

appeal.

## III.

## MR. LIU IS NOT A FLIGHT RISK AND POSES NO DANGER TO THE COMMUNITY

A.      Mr. Liu Is Not a Flight Risk; He Has Made All Appearances Before this Court and Adhered to All of its Requirements Before, During, and after Trial.

Since this case began, Mr. Liu has punctually made all of his court appearances, including

the post-verdict sentencing hearing, and been mindful of all court orders and restrictions.

In *Hung v. United States*, 439 U.S. 1326 (1978), a Vietnamese national convicted of

numerous serious crimes including conspiracy to commit espionage was sentenced to 15 years

in prison. He was denied bail pending appeal, and the Fourth Circuit Court of Appeals affirmed

the denial of bail. *Id.* Defendant then filed a petition for an individual justice on the United

States Supreme Court. Justice Brennan wrote an opinion in which he rejected the logic of the

lower courts that examined the case.

Chief among the lower courts' concerns was the defendant's status as a foreign national.

*Id.* at 1327. Justice Brennan began his analysis by noting that the defendant was raising

"important questions" on appeal. *Id.* Then Justice Brennan turned to the question of whether

defendant's status as a foreign national (particularly in light of his convictions related to

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                    3

espionage) was sufficient to infer that he was a flight risk. *Id.* at 1328. Upon examining the facts, Justice Brennan held that "if these considerations suggest opportunities for flight, they hardly establish any inclination on the part of applicant to flee." *Id.* at 1329. To support this conclusion, Justice Brennan pointed to the fact that the applicant "faithfully complied with the terms of his pretrial bail and affirmed at sentencing his faith in his eventual vindication and his intention not to flee if released on bail." *Id.* Justice Brennan also noted that the defendant had "extensive ties to the community." *Id.*

Like the defendant in *Hung*, Mr. Liu has maintained all of his commitments to the court and has "extensive ties to the community." Mr. Liu has been maintaining regular contact with his Pretrial Services office, Mr. Tim Elder. Mr. Liu is expected to contact Mr. Elder via email at least one time per month to check in and he has kept all scheduled appointments with Pretrial Services. As of the date of this motion, Mr. Elder has indicated that Pretrial Services does not object to Mr. Liu's remaining free on bail pending the outcome of his appeal provided that he continues to maintain contact as ordered.

An example of Mr. Liu's willingness to accommodate the Court's orders and requests occurred on the first day of trial. Jury selection was scheduled to begin at 9:00 a.m. on June 15, 2010. Mr. Liu was not there at that time because his attorney had communicated to Mr. Liu that the trial would begin at 1:00 p.m. (RT, Pg. 3). Mr. Liu's attorney accepted full responsibility for the blunder. (RT, Pg. 4).

The Court requested that his attorney contact Mr. Liu in order to determine whether he would be willing to waive his right to be present and allow the court to proceed with the

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                    4

preliminary stages of jury selection. (RT, Pg. 5, 7). Mr. Liu graciously agreed to waive his right to be present. (RT, Pg. 9).

This situation is representative of Mr. Liu's general compliance with every aspect of the trial proceedings. Reviewing the record, there is nothing that suggests anything less that full cooperation and he has provided this Court with absolutely no reason to believe that he would abscond if permitted to remain out on bail pending the resolution of his appeal.

Indeed, were he to leave the Bay Area, Mr. Liu would be leaving behind his family, his business, and putting his health at risk.

Mr. Liu moved to the United States from Taiwan in 1980. Mr. Liu's father is a Christian minister and moved his family to Berkeley to continue his work here. Mr. Liu became a United States citizen in the mid-1980s. Since that time, Mr. Liu's entire life has been concentrated in the Bay Area. He and his wife live here along with their three children. They have two sons, ages 28 and 29, and one daughter, age 25. Like Mr. Liu, his children are educated and hard working. The family also has one grandchild, a seven year old boy named Anthony. Mr. Liu has not left the United States for nearly a decade and has no desire to leave this country. This Court ordered Mr. Liu to relinquish his passport on February 1, 2007. Again, Mr. Liu abided the Court's demand without hesitation. The Court has maintained control of Mr. Liu's passport since that time. Mr. Liu also currently owns and operates a business called "Berkeley Wind" that specializes in the sale of musical instruments. Mr. Liu is himself a musician.

It was also noted in the Presentence Report that Mr. Liu is currently under the regular care of a physician. He suffers from high blood pressure and a "blood-related condition that creates

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    5

1  restricted airways." (PSR, Pg. 15). This condition is called polycethemia vera and occurs when

2  the patient's bone marrow produces an inordinately high number of red blood cells.  Without

3
4  treatment polycethemia vera can be life threatening.  Mr. Liu "requires the use of an oxygen

5  machine nightly." (PSR, Pg. 15). He sees his physician on almost a weekly basis and takes daily

6  medication for the high blood pressure.

7      All of these factors show that Mr. Liu is inextricably tethered to his life here.  Moreover,

8
9  his health condition shows that, were he to leave, he would be putting his life in jeopardy.  With

10  no past history indicating a tendency to disregard court orders or fail to appear in court, there is

11  no basis for this Court to deny bail to Mr. Liu on the ground that he is a flight risk.

12      B.      Mr. Liu Is Not a Danger to the Community.

13      Far from being a danger, Mr. Liu is a highly regarded and active member of his

14
15  community. The offenses for which Mr. Liu was convicted were non violent. Mr. Liu is 56 years

16  old and has never been convicted of any crimes other than the ones that formed the bases for the

17  current convictions.

18      Mr. Liu is an active member of his church and has the support of the other members of

19  the congregation. He has spent his entire life in service to his church having grown up in a deeply

20
21  religious family.  Mr. Liu regularly attends church on Sundays and often opens the doors of his

22  home to church group meetings during the week. He began playing music to facilitate the spread

23  of the church's message and continues to do so even today[2]. As mentioned above, he is also a

24

25      2      Mr. Liu regularly works with the music ministry of Grace Lutheran Church.  He supplies the music
   ministry with many of the instruments for their music and has developed a good relationship with the church
26  community at large.  Dr. Curtis Shaw, pastor of the African descent service at Grace Cathedral, has known Mr. Liu

27  **Defendant Julius Liu's Motion for**
   **Bail Pending Appeal**
28  *United States v. Liu;*
   Case No. CR-06-00772-JW                            6

loving and caring father of three children and one grandchild.

Mr. Liu is college educated and maintains an active business in El Cerrito. His role in the community economy is therefore also important. Indeed, Mr. Liu's business is among the oldest businesses in El Cerrito. At this time, his business is operated by Mr. Liu and his wife Kathy. Should he be committed to prison, they will have to close the business which they have maintained for over two decades.

These facts reveal that Mr. Liu is hardly a threat to the community.

## IV.

## THIS APPEAL IS NOT FOR THE PURPOSE OF DELAY

Mr. Liu will accept the decisions of the courts and submit to the Bureau of Prisons at any time he is ordered to do so. However, Mr. Liu should not be forced to serve his sentence while numerous meritorious questions remain regarding the validity of his convictions and the sentence imposed by this Court.

Immediately following the Sentencing Hearing, Mr. Liu contacted his current attorneys and began the appellate process. The Ninth Circuit initially ordered the opening brief filed on March 23, 2011. Mr. Liu promptly paid for and ordered transcripts, but they were unavailable until February 18, 2011. After reviewing the transcripts, it became apparent to Mr. Liu's attorneys that there are many significant issues that must be raised on appeal. With the cooperation of Mr. Liu, counsel immediately began fashioning the opening brief so that it can be

---

for nearly the past four years. Pastor Shaw is planning to attend the hearing for this motion and is willing to address the court regarding Mr. Liu's relationship to his church.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                    7

filed with a minimum amount of delay. A draft of this brief is attached to this motion. Although the Ninth Circuit has ordered the opening brief filed on May 23, 2011, Mr. Liu is planning to file it early so that it will be on file at the time of the hearing on this motion. We are attaching a draft of the opening brief before the Ninth Circuit as an Exhibit to this motion in order to clearly demonstrate the numerous arguable and meritorious issues Mr. Liu on appeal.

The swiftness of Mr. Liu's preparation of the opening brief demonstrates that he is endeavoring to resolve these issues expediently. Additionally, the content of the brief, as will be shown below, demonstrates that there is substance to Mr. Liu's contentions. For these reasons, it must be conceded that this appeal is not for the purpose of delay.

## V.

## MR. LIU'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW AND FACT.

A.      Definition of a "Substantial Question of Law or Fact"

The Ninth Circuit has held that a "substantial question" is one that is "fairly debatable." "A 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous." *United States v. Handy*, 761 F2d. 1279, 1283 (9th Cir. 1985). However, the question need not be "close"; nor must appellant show he "will probably prevail on appeal." *Id.* at 1280. In other words, an issue raised in the appeal must require thoughtful consideration and not be directly contrary to clearly controlling precedent. As the Supreme Court stated concerning a similar issue regarding the granting of a Certificate of Appealability, "[t]he question is the debatability of the underlying[] claim, not the resolution of that debate." *Miller-El v. Cockrell*; 537 U.S. 322, 342 (2003).

The following are synopses of the most salient points related to the issues Mr. Liu is raising on appeal[3]. For the full analysis, see the current draft of Mr. Liu's Opening Brief before the Ninth Circuit, a draft which is virtually complete, and which is attached to this motion for bail pending appeal as Exhibit A. We incorporate, by reference, the attached draft of Mr. Liu's opening brief before the Ninth Circuit into this motion for bail pending appeal, and request that the Court fully review the draft as part of Mr. Liu's showing that he has met the Handy standard. The issues in this motion for bail pending appeal, and which are fully and completely explicated in the draft opening brief to be filed before the Ninth Circuit, and attached as Exhibit A, are collectively and individually of far more substance than necessary to a finding that the appeal is not frivolous and is not, by any means, for the purposes of delay.

> 1.    Mr. Liu's received ineffective assistance of counsel due to his trial attorney's failure to raise a statute of limitations defense to Counts 1 and 2 (See Exhibit A, Draft of Opening Brief, Pg. 21-46).

In Counts 1 and 2, the government accused Mr. Liu of copyright infringement based on Super DVD's alleged replication of five music CD titles and one DVD title. The original indictment in this case was filed on November 29, 2006. Thus, any criminal conduct charged in the Indictment must have occurred on or after November 29, 2001. The only evidence produced at trial by the government with respect to the replication and distribution of the CDs and DVDs at issue in Counts 1 and 2 showed that they were manufactured and/or distributed prior to November 29, 2001.

---

3    Legal authority and detailed and complete record citations related to the issues presented in this motion are fully set forth in the opening brief attached as Exhibit A.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                  9

The government introduced documentation with respect to the "Beatles 1" CDs and the "Crouching Tiger Hidden Dragon" DVDs that specified manufacturing and delivery dates in mid 2001. (Trial Exhibits 15 and 22). All of the documents related to the DVDs, including the Packing List, were prepared and dated in July of 2001. The government did not include the allegations of copyright infringement with respect to these DVDs until February 17, 2010 when it filed the Second Superseding Indictment in this case. Because the original Indictment did not mention the DVDs and because there was nothing about the filing of that Indictment that tolled the statute of limitations, Mr. Liu should not have been charged with Count 2 of the Second Superseding Indictment.

The reason that the discs were still in the possession of Super DVD was because the customer, Randy Lin of R & E Trading, returned them to Super DVD after the third party who ordered them from Mr. Lin claimed they were defective. (RT, pg. 547). Following this, Super DVD sued R & E Trading for nonpayment and the legality of the DVDs was discussed in court during that lawsuit. (RT, Pg. 549).

Similarly, the "Beatles 1" CDs were not charged until February 17, 2010. The documents introduced into evidence related to these CDs also show that they were produced for R & E Trading in early 2001. (Trial Exhibit 15). The government introduced no evidence related to when the Latin music and Rap music pirate compilation CDs were produced, but the government's own witness, Agent Scott Hellman, testified that the "only documentation" available for some of them showed that they were produced in "early 2001." (RT, Pg. 544). This also places the compilation CDs outside the statute of limitations even though some of the tracks

Defendant Julius Liu's Motion for
Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                    10

from those CDs were charged in the original Indictment.

Despite the government's failure to show any evidence that the items in Counts 1 and 2 were produced or distributed within the limitations period, trial counsel for Mr. Liu, James McNair-Thompson, Esq., neglected to raise this most elemental of defenses. Although allegations of ineffective assistance of counsel are generally only raised on collateral review, the Ninth Circuit has held that there are two exceptions to this rule: "(1) when the record on appeal is sufficiently developed to permit review and determination of the issue, or (2) when the legal representation is so inadequate that it obviously denies a defendant his *Sixth Amendment* right to counsel." *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003). The present case falls within both of these exceptions.

The evidentiary record reveals major deficiencies in the government's case regarding the statute of limitations issue. As already pointed out, the criminal acts alleged in Counts 1 and 2 were completed prior to November 29, 2001 and no evidence was produced to the contrary. Moreover, the "Beatles 1" CDs and the "Crouching Tiger Hidden Dragon" DVDs were not even charged in the original indictment. Instead these allegations were made in February of 2010, nearly nine years after the alleged crimes took place. The statute of limitations for these crimes began to run, therefore, on February 18, 2005. By that time, the CDs and DVDs were already in the possession of investigatory authorities after having been seized during the search warrant that was executed in 2003. Moreover, because the crimes alleged in the original indictment were predicated upon an entirely different set of facts, the Second Superseding Indictment impermissibly "broadened and substantively amended" the original charges. *See United States*

*v. Pacheco*, 912 F.2d 297, 304 (9th Cir. 1990). The record is, therefore, sufficiently developed to allow the Ninth Circuit to make a determination as to whether or not Mr. McNair-Thompson was ineffective in failing to raise this defense. Additionally, the failure to raise a statute of limitations defense is so fundamental that it rises to the level of representation "so inadequate that it obviously denie[d]" Mr. Liu his right to counsel.

Had Counts 1 and 2 been dismissed, the loss associated with those crimes would not have been included in the sentencing analysis. That conduct differs substantially from the timely charged conduct and would, therefore, not be construed as "relevant conduct" within the meaning of the Guidelines. Consequently, Mr. Liu is entitled to an immediate 2 level reduction in his Sentencing Guidelines calculations. In light of the exceptional prejudice incurred by Mr. Liu as a result of his attorney's failure to raise the statute of limitation issue, Mr. Liu requests that the government and the court agree to have an immediate resentencing related to this issue as well as the other sentencing issues raised by Mr. Liu in his opening brief.

        2.    This Court issued prejudicial jury instructions that were misleading, unrequested and permitted to the jurors to apply a lower standard for proof to this case. (See Exhibit A, Draft of Opening Brief, Pg. 65-83).

                a.    <u>Failure to incorporate Mr. Liu's proposed instruction despite the government's lack of opposition</u>

Mr. Liu requested that this court include in its instructions the following sentence taken directly from the copyright infringement statute: "Evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyrighted work." The government conceded that such an inclusion to the instruction was

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW            12

appropriate and yet the Court, without discussion, chose not to include it.

This was highly detrimental to Mr. Liu as the only evidence presented by the government was the existence of the infringing discs.  Other than the existence of the infringing items that were found at Vertex and Super DVD, there was nothing else that tended to show that Mr. Liu "willfully infringed" the copyrighted works.  This instruction would have precluded conviction on Counts 1-3.

        b.    <u>This Court's sua sponte definition of the words "willfully infringed" impermissibly lowered the standard of proof.</u>

This court, in providing the elements of each of the counts, included the following: " . . . defendant willfully infringed, that is, without authorization, duplicated, reproduced, or sold compact disks that infringed the copyright belonging to the owners of the works . . ." (RT, Pg. 596-97, 600-602).  This definition was repeated three times.  Neither party requested this definition and the Court cited no reason or authority for its inclusion.

This definition is simply wrong.  It presents a strict liability form of copyright infringement. According to this definition, anyone who copies a copyrighted work, whether or not they did so intentionally and with knowledge that it was illegal to do so, would be guilty. While civil copyright infringement may properly be characterized as a strict liability claim, criminal copyright infringement is not.  Unlike its civil counterpart, criminal copyright infringement requires proof as to the defendant's "willfulness."  The jury heard this definition repeated three times. They only heard the definition of "willfulness" once. This suggests a strong probability that the jurors misconstrued the meaning of "willful infringement."

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW           13

c. This Court erred by incorporating, without the request or approval of the parties, an instruction permitting the jury to find Mr. Liu guilty based on an agency relationship.

The Court without discussing its decision to do so with the parties, incorporated the following unrequested instruction related to the definition of "willfulness": "Now, you have heard evidence with respect to a company called Super DVD. An individual is liable for willful infringement even if the conduct on which you base your finding of willful infringement is performed as a representative of a corporation." (RT, pg. 599).

This instruction is susceptible to multiple interpretations. Most destructively is that it can be read as authorizing the jury to convict Mr. Liu based upon the actions of any Super DVD employee if that employee's conduct is "performed as a representative of the corporation." This is improper.

There is no authority for a finding of guilt in a criminal copyright case based on an agency relationship. Even in the civil context, the standard is more stringent than the one this Court provided for Mr. Liu. The civil copyright test for the liability of an employer for the actions of the corporation or his or her employees requires the following: (1) the officer has the right and ability to supervise the infringing activity, and (2) the officer has a direct financial interest in such activities. *A & M Records v. Napster, Inc.*, 239 F.3d 1104, 1022 (9th Cir. 2001). In the present case, the jury was not asked to make findings similar to the prongs of the civil test. Even under that standard, the government would not have been able to show that Mr. Liu was liable for copyright infringement. In any event, this test is inapplicable to criminal copyright infringement and certainly there is no reason to instruct the jury to apply a less rigorous standard as this Court

did in Mr. Liu's case.

        d.      This Court erred by failing to conduct a Rule 30 conference.

The Court failed to offer the parties the opportunity to object to the jury instructions that it planned to give and failed to provide any rationale f or incorporating the unrequested instructions that were included. A court's failure to comply with the requirements of Rule 30 is reversible error if defense counsel was prejudiced. *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988). Prejudice to a party occurs when "the party was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments." *Id.*

In this case, Mr. Liu's attorney was unable to object to the inclusion of the erroneous instructions described above. He was also prevented from insisting that the Court include his requested instruction derived verbatim from the statute. This resulted in the watering down of the standard of proof that the government had to meet. By the inclusion of these instructions, the government was able to win the case on what was, in essence, a civil standard.

        3.      This Court committed structural error by failing to obtain Mr. Liu and his attorney's input, and to make any record, with respect to three of the five jury notes submitted to the Court. (See Exhibit A, Draft of Opening Brief, Pg. 83-88).

The jury sent back three notes that were not discussed with the parties. In response to two of these notes, the Court, without input from the parties, provided answers to the jurors. No discussion was held on the record related to these jury notes. The third of these notes was never answered.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW

                           15

Under *United States v. Cronic*, 466 U.S. 648, 659 (1984), "a trial is unfair if the accused is denied counsel at a critical stage of the trial." Such an error is structural, therefore prejudice is assumed and reversal is mandatory. *Musladin v. Lamarque*, 555 F.3d 830, 837 (9th Cir. 2009).

In *Musladin*, the Ninth Circuit examined the issue of whether the fashioning of a response to a jury instruction is a "critical stage" and concluded that it is. *Id.* at 842.

By failing to consult the defense with respect to Jury Notes #1, #3, and #5, this Court denied Mr. Liu his Sixth Amendment right to counsel. This error was structural and reversal is required.

> 4.  The government committed prosecutorial misconduct through its erroneous representations to the Court regarding Mr. Liu's supposed admission that he sold "Symantec software" to Vertex; the record reflects that Mr. Liu did not admit to selling "Symantec software." (See Exhibit A, Draft of Opening Brief, Pg. 113-121).

At three pivotal points during the trial, the prosecutor in this case asserted that Mr. Liu admitted selling "Symantec software" to Mr. Provost. He did not. According to the government's witness, Mr. Quilty, Mr. Liu admitted only to selling "some software." (RT, Pg. 292). No other evidence was presented suggesting that the software Mr. Liu admitted to selling was either counterfeit or legitimate Symantec software.       In its opening statement, the government prepared the jury and this Court to anticipate an admission on the part of Mr. Liu that he "sold Symantec software to one of the managers at Vertex." (RT, Pg. 129). This was improper.

Next, during the discussion with the Court concerning the admission of Exhibit 3, the prosecutor stated: "I would like to remind the court that Mr. Quity, Tom Quilty, testified that he did interview the defendant and the defendant admitted to selling thousands of units of Symantec

software to Vertex." (RT, Pg. 486). In addition to misrepresenting the type of software that Mr.

Liu sold, the prosecutor also misrepresented the quantity. During the examination of Mr. Quilty,

the prosecutor asked him, "Did he say how much he sold?" Mr. Quilty responded ambiguously,

"Several thousand." (RT, Pg. 292). Mr. Quilty never explained whether this was several

thousand dollars worth of software or several thousand units. This misrepresentation on the part

of the government was important because the Court decided to admit the documents in Exhibit

3 based upon the prosecutor's misleading assertions:

> "Well, at this point they're in evidence an I'm not content to strike them based on
> the government's proffer that there was a statement made by the defendant that he
> did, indeed ship Symantec products to Vertex. I hadn't recalled that testimony."

(RT, pg. 488).

Finally, the government argued to the jury in its closing that Mr. Liu's admission proved

the "willfulness" and "knowledge" requirements:

> "How can we show knowledge, willfulness, and intent?  Well, ladies and
> gentlemen, recall the testimony of the defendant.  He said he was friends with
> John Provost and John Provost was at Vertex.  Recall also the statement that the
> defendant made to Tom Quilty in which the defendant admitted that he sold
> Symantec software to Vertex."

(RT, Pg. 622-623). This was possibly the most insidious misrepresentation of the three. The jury

was listening closely to the arguments of the attorneys and the prosecutor's distorted rendering

of the evidence necessarily shaded the juror's interpretation.

The testimony of Mr. Quilty in question was brief, but crucial.  It was the only evidence

that the government could point to that was obtained from Mr. Liu or Super DVD that could have

tied them to Vertex.  Had Mr. Quilty testified that Mr. Liu actually did sell "Symantec software"

to Vertex, it would have been relevant and damaging. However, the ambiguous nature of the testimony rendered it impotent. Unfortunately, the government chose to mischaracterize the evidence to suit its evidentiary needs. This was inappropriate and prejudicial and requires reversal.

> 5.    This Court erred by admitting over defense objection unauthenticated business records generated and maintained by Vertex. (See Exhibit A, Draft of Opening Brief, Pg. 88-112)

A major source of contention during the trial was the admission of unauthenticated documents found at Vertex. These documents, consisting of Purchase Orders, FedEx US Airbills, and handwritten notes, were admitted at trial as Exhibit 3. If the documents are accepted for the truth of the matters asserted within, then the Purchase Orders reflect orders purportedly made by Vertex for shipments of Symantec software by Super DVD, the FedEx US Airbill documents indicate that Super DVD made shipments to Vertex[4], and the handwritten notes, though cryptic, may be interpreted as showing that shipments of Symantec software were received by Vertex from Super DVD. It is uncontested that these documents were generated and maintained by Vertex and, yet, they were never authenticated by anyone from that company. There was no evidence that Mr. Liu or anyone at Super DVD even saw these documents.

The government included John Provost in its witness list. Mr. Provost is allegedly the individual with whom Mr. Liu was doing business and would have been an optimal witness for the government, unless, of course, the government knew that Mr. Provost would testify in a manner that would disrupt its case. Whatever the reason, neither Mr. Provost nor any other

---

4    The contents of those shipments are not reflected in these documents.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    18

representative from Vertex testified as to the authenticity of the documents. (RT, Pg. 605). Consequently, they were not received into evidence as business records.

Although it offered no rationale for their admittance during trial, this Court accepted Exhibit 3 into evidence without any restrictions upon the use of the documents during the parties' closing arguments. Thus, the government proceeded to argue the truth of the matters asserted within the documents to the jury in its closing argument. (RT, Pg. 190-192).

After trial, this Court accepted the government's post-trial argument that the documents were admissible under the residual hearsay exception.[5] This exception is unavailing in the present case as the documents fail to meet the requirements for admission under that Rule in several ways.

First, the documents lack the necessary "circumstantial guarantees of trustworthiness." To satisfy this prong of the test, this Court relied primarily on the government's claim that there was testimony at trial that Mr. Liu admitted selling "Symantec software" to John Provost. This fallacy was propagated by the government at various crucial points at trial and this Court understandably accepted the government's assertions.[6] In actuality, Mr. Quilty testified that Mr.

---

[5]     The government posited and this Court also accepted the alternative theories that the documents were admissible for the non-hearsay purposes of putting other evidence in context and for showing why the government began its investigation of Super DVD. These arguments fail because Mr. Liu was denied a limiting instruction when requested and because the Court explicitly permitted the government to argue the truth of the matters asserted within the documents. Thus, even if these theories were accepted, the denial of Mr. Liu's request for a limiting instruction and the government's closing argument exceed the boundaries of the documents' admission. The court and the government also indicated the possibility that the documents could be admitted as statements of a co-conspirator under Rule 801(d0(2)(E). This argument also fails because the identity of the declarant was never revealed and the government failed to show that the declarant took part in or was even aware of the existence of a conspiracy.

[6]     It should be noted that defense counsel objected to this characterization of the testimony. (RT, Pg. 486).

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                               19

Liu stated he sold "software" to Mr. Provost and gave no indication as to when these sales took place or what type of software he sold to Mr. Provost. (RT, Pg. 292). Considering that Mr. Liu and Mr. Provost had a history of doing business together, Mr. Liu quite likely sold software to Mr. Provost on many occasions. Nothing in the record supports the government's contentions that Mr. Liu admitted to selling "Symantec software" to Vertex. And like a game of "telephone" in which the statement gets gradually more distorted as it is repeated, the Court, in its written ruling on Mr. Liu's Rule 29 motion, stated that it was satisfied that the documents were imbued with guarantees of trustworthiness based primarily upon the Court's belief that "Defendant admitted at trial that he had on prior occasions sold Symantec software to Vertex." (Docket #109, Pg. 8). In fact, at trial, Mr. Liu flatly denied any relationship between himself or Super DVD and the Symantec software found at Vertex. (RT, Pg. 536-37, 563).

These documents were also not the most probative evidence that the government had to present on this issue. The government indicated in its proposed witness list that it intended to call Mr. John Provost. (Docket #68). In addition to his ability to clarify the context of the Symantec sales, Mr. Provost could easily have authenticated the records. The government, for unknown reasons, chose not to call Mr. Provost, but the fact that it at one time planned to do so proves that it had more probative evidence.

Finally, the admission of the documents does not serve the interests of justice. By allowing the government to introduce this evidence in the manner that it did, this Court permitted the government to circumvent the requirements of the hearsay exception for business records. The mechanism by which business records receive a cloak of "trustworthiness" is through their

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    20

authentication.  There is no substitute for this process and surely nothing presented in this case guarantees their trustworthiness to an equal or greater degree than the authentication process. Therefore, by admitting these documents, this Court was not serving the ends of justice, it was flouting the fundamental purposes of the prohibition of hearsay evidence in court.

> 6.  This Court erred in calculating the sentencing guidelines for Mr. Liu because it improperly calculated the value and quantity of the loss. (See Exhibit A, Draft of Opening Brief, Pg. 143-152).

This Court's sentencing guidelines calculation suffers from myriad infirmities.  Most notably, the value of the CDs and DVDs should have been excluded because the criminal activity (if there was any) associated with them was outside the statute of limitations.  Furthermore, the replication of these items does not meet the definition of relevant conduct because the entire scheme of manufacturing and distributing them was substantially different from the Symantec software.  Most apparent is the fact that Counts 3 and 4 which were charged within the limitations period concern software discs sent to Vertex in Florida.  The CDs were mostly pirate CDs.  The creation of pirate compilation CDs reflects an entirely different scheme than the Symantec software.  Pirate CDs are made by combining various hit songs that do not appear on the same album together onto one disc.  The government never adduced any evidence as to who the customer was who ordered these discs.  The other CDs were the counterfeit "Beatles 1" discs. These were ordered by a completely different customer named Randy Lin who owned and operated the company R & E Trading.  Similarly, Mr. Lin also ordered the "Crouching Tiger Hidden Dragon" DVDs.  Each of these sets of items involved an entirely different criminal scheme and cannot be deemed relevant conduct for purposes of calculating the sentencing

1    guidelines range.

2        Moreover, the CDs and DVDs were calculated using the retail value of the "infringed

3    items." According to the commentary to §2B5.3, unless the items are nearly exact replicas, the

4    value of the "infringing items" should be used. None of the CDs or DVDs alleged to have been

5

6    produced by Mr. Liu were close to exact replicas. Indeed, the compilation CDs are not even

7    copies of CDs that actually exist. The "Crouching Tiger Hidden Dragon" DVDs were clearly not

8    counterfeit versions of the originals. The screen printed images and text are blurry and garish.

9
     There was no text on the discs indicating the name of the publishing company or any legal
10
11   information. Anyone looking at such a disc would be forced to conclude that the discs were

12   cheap imitations. §2B5.3 clarifies that "obviously inferior counterfeit" items should be valued

13   according to the value of the "infringing item." In this case, the retail value should be the

14
     wholesale value at which these items were sold to R&E. Finally, although the Court correctly
15
16   looked to the retail value of the "infringing items" with respect to the Symantec software, the

17   value it obtained for those items was incorrect. The software was sold for prices ranging from

18   $4.90 to $6.90. The most common price (the mode) was $5.88 which is very near the median

19   price of $5.90. This is the appropriate retail value for the software.

20
         The calculation of the quantity of the infringing items was also flawed. The quantity
21
22   established in the PSR and relied upon by the Court seemed to take into account every CD and

23   DVD that was found at the Super DVD warehouse. The majority of the CDs and DVDs that

24   Super DVD produced were legitimate. Some of the titles that were included in the PSR are

25   unpopular old films that were genuinely ordered by customers who had valid licenses to produce

26

27   **Defendant Julius Liu's Motion for**
     **Bail Pending Appeal**
     *United States v Liu;*
28   Case No. CR-06-00772-JW                        22

the works. The government provided no proof that any of the CDs or DVDs listed in the PSR save for those which were the subject of the litigation were illegal. For this reason, these items should not be included in the loss calculus.

Additionally, the Court relied upon the quantities reflected in the Purchase Orders from Exhibit 3 to calculate the value of the counterfeit Symantec software. However, the existence of a purchase order does not mean that any sale has ever been consummated. According to Black's Law Dictionary, a "purchase order" merely "constitutes an offer which is accepted when the vendor supplies the quantity and quality ordered." *Black's Law Dictionary*, 6th Ed. (1990). There was no evidence that these orders were ever filled by Super DVD. Additionally, the documents in Exhibit 3 show that at least one other vendor was shipping Symantec products in large quantities to Vertex.[7] The authenticated FedEx documents admitted as Exhibit 5 show only three shipments were ever made by Super DVD to Vertex and that no shipment was made by Super DVD to Vertex after February 13, 2003. The 10 purchase orders that reflect dates after February 13, 2003, therefore, should have been excluded from the value calculation.

In any event, because of the tremendous discrepancies between the purchase orders and the FedEx documents, Mr. Liu contends that the purchase orders should not have been used at all for these calculations. It would be more appropriate to rely upon the amount of software that

_____

7    One of the FedEx US Airbill documents, dated "2/18/03," shows that a company located in Fremont called "FGPP" sent a large quantity of Symantec discs to Vertex. The handwritten note accompanying the Airbill had "Super DVD" written next to the word "From," but Super DVD's name was crossed out and "FGPP" was written adjacent to it.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                        23

was actually recovered from Vertex[8]. There were a total of 4,182 software discs obtained during that search. Using a value of $5.90 per disc, a more appropriate estimation of the retail value of the "infringing items," the total estimated loss becomes $24,673.80. This translates to a level 14 in the Guidelines which would produce a sentencing range of 15-21 months. Considering that, in this case, this Court departed downward by 3 months from the low end of the sentencing range that it previously calculated, it is reasonable that this Court, if it had been looking at a sentencing range of 15-21 months, would have done the same thing. This would mean Mr. Liu may have only been sentenced to 12 months. This would be far less time than the expected duration of the appellate process.

       7.     Other arguments raised on appeal

In addition to the arguments discussed above Mr. Liu is also challenging the admission of prejudicial and irrelevant testimony by Mr. Linares at trial. (See Exhibit A, Draft of Opening Brief, Pg. 122-132). Mr. Linares was a representative of the RIAA, an organization that has previously sued one of Mr. Liu's companies in the past. Mr. Linares testified that Super DVD did not meet the standards of its "Best Practices" model. This standard has no relevance to a criminal prosecution. It misled the jurors and resulted in impermissibly lowering the standard of proof imposed upon the government.

Mr. Liu is also challenging this Court's decision to permit, under Federal Rule of Evidence 404(b), questioning related to civil suits in which companies with which Mr. Liu was

---

    8     Of course, the fact that other vendors were shipping Symantec software casts doubt on this value as well.

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW           24

purportedly affiliated were sued for copyright infringement. (See Exhibit A, Draft of Opening Brief, Pg. 132-143). This evidence was irrelevant to the criminal prosecution and further chipped away at the already disfigured standard of proof in this case. By including this evidence, the jury was permitted to infer that Mr. Liu acted "willfully" in the present case, simply because companies that he worked with in the past have been sued for copyright infringement in civil court. This evidence was raised during the government's cross examination of Mr. Liu. During his questioning, the prosecutor exceeded the scope of the this Court's decision admitting evidence of the prior civil suits. The government's pretrial motions only contemplated evidence related to four suits.  Instead, the government asked about 8 different law suits.  No additional information was provided to give context to these suits, to explain the distinctions between civil and criminal copyright infringement, or elucidate Mr. Liu's relationship, if any, to the companies that were sued. In fact,m the prosecution continually used the word "you" in reference to the suits implying that Mr. Liu was personally sued when, in fact, in the majority of cases he was not. Finally, this Court's limiting instruction related to these suits was misleading and improperly permitted the jury to apply the limitation to only one of the suits rather than the entire group of them.

Finally, Mr. Liu is challenging the sufficiency of the evidence against him. (See Exhibit A, Draft of Opening Brief, Pg. 46-65).  As part of this challenge, Mr. Liu is contesting the definitions of "willfulness" provided by the Court as being inappropriate in the criminal copyright infringement context.  A more appropriate standard would be the one crafted by the Supreme Court for tax evasion purposes.  This definition of "willfulness" requires a showing that the

defendant engaged in "a voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 200 (1991). In a well-reasoned and thorough opinion, the District Court of Nebraska held that this was the appropriate definition to apply in criminal copyright infringement cases. *United States v. Moran*, 757 F.Supp. 1046 (DC Neb 1991). The Ninth Circuit has not addressed this specific issue before.

      B.     The substantial questions raised by Mr. Liu on appeal are likely to elicit the results required by 18 U.S.C. § 3143(b)(1)(B)

In *Handy*, this Court clarified that "the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *Id.* at 1281. To resolve the second inquiry under *Handy*, the appropriate inquiry for this Court is whether or not, should the Court of Appeals decide the issue in favor of Mr. Liu, he would be entitled to one of the forms of relief listed in 18 U.S.C. § 3143(b)(1)(B). These forms of relief are limited to: reversal, an order for a new trial, a sentence that does not include imprisonment, or a reduced sentence that will be less than the expected duration of the appeal process. The issues raised by Mr. Liu all fall into one or more of these categories.

Mr. Liu's allegation of ineffective assistance of counsel for his attorney's failure to raise a statute of limitations defense amounts to a claim of constitutional error. If the Ninth Circuit accepts the arguments posited by Mr. Liu, it would be obligated to reverse on Counts 1 and 2. Additionally, because the evidence put forth with respect to Counts 1 and 2 necessarily tainted the trial, Mr. Liu would be entitled to a new trial on the remaining counts. Finally, the reversal

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW          26

of Counts 1 and 2 would necessitate resentencing and the new sentence would very likely be shorter than the expected duration of the appeal process.

Excising Counts 1 and 2 also exacerbates the weakness of the government's case on Counts 3 and 4. By necessity, the jury predicated its findings of guilt for these two counts exclusively upon the documents admitted as Exhibit 3. The admission of these documents was challenged in the trial court and Mr. Liu is continuing to challenge their admission on appeal. The exclusion of this evidence would also necessitate a reversal as to Counts 3 and 4 because, without those documents, there is insufficient evidence to convict Mr. Liu of copyright infringement and tracking in counterfeit labels.

The jury instruction errors raised by Mr. Liu in this appeal would also result in reversal if the Ninth Circuit were to accept Mr. Liu's argument. As they were provided to the jury, the instructions impermissibly lowered the government's burden of proof and allowed him to be convicted based upon a civil standard of proof rather than a criminal one. Additionally, the failure of this Court to obtain input from Mr. Liu and his attorney in response to the jury notes constitutes denial of counsel at a critical stage. This structural error mandates reversal without requiring a showing of prejudice.

Finally, Mr. Liu is challenging the sufficiency of evidence and the definition of "willfulness" employed by this Court at trial. The latter is a novel question in the Ninth Circuit and there is case law from other courts advocating the interpretation of "willfulness" put forth by Mr. Liu. If the sufficiency of the evidence arguments succeed, the government will be precluded from bringing these charges against Mr. Liu again because to do so would be a double jeopardy

**Defendant Julius Liu's Motion for**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    27

violation.

The errors challenged on appeal by Mr. Liu, therefore, cut to the heart of the case and surely are of the type described by the Ninth Circuit in *Handy*.

## VI.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Liu's motion for bail pending appeal.

Respectfully submitted,

Dated: April 18, 2011             **BAY AREA CRIMINAL LAWYERS, PC**

By: /s/David J. Cohen
    DAVID J. COHEN, ESQ.

Attorneys for Defendant **Julius Chow Lieh Liu**

**Defendant Julius Liu's Motion for
Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    28