DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

Attorneys for Defendant **Julius Liu**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-06-00772-JW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIUS LIU, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT JULIUS LIU'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR BAIL PENDING APPEAL**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................. 1

II.  THE GOVERNMENT MISUNDERSTOOD THE NINTH CIRCUIT'S
     HOLDING IN HANDY; THE ISSUES RAISED BY MR. LIU ON
     APPEAL ARE ALL "FAIRLY DEBATABLE" ......................... 1

     A.   The issue of whether or not Mr. Liu received ineffective
          assistance of counsel at trial is "fairly debatable" and, if the Ninth
          Circuit accepts Mr. Liu's argument, "is likely to result in reversal ......... 4

     B.   Mr. Liu's arguments related to the contested jury instructions are
          "fairly debatable" and, if the Ninth Circuit accepts the arguments,
          are "likely to result in reversal" ................................ 8

     C.   The issue of whether or not the Court committed structural error by
          failing to obtain input from Mr. Liu and his attorney related to the
          jury notes is "fairly debatable" and, if the Ninth Circuit accepts Mr.
          Liu's argument, "is likely to result in reversal or a new trial ............ 10

     D.   The issue of prosecutorial misconduct during Mr. Liu's trial is
          "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's
          argument, "is likely to result in reversal or a new trial" ............... 11

     E.   Mr. Liu's argument that the documents found at Vertex were
          inadmissible hearsay is "fairly debatable" and, if the Ninth Circuit
          accepts Mr. Liu's argument, "is likely to result in reversal or a
          new trial" ..................................................... 14

     F.   Mr. Liu's argument that the value and quantity of the infringed
          items was improperly calculated at sentencing is "fairly debatable"
          and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to
          result in reduced sentence to a term of imprisonment less than...
          the expected duration of the appeal process ......................... 18

     G.   The issue of whether or not the Court improperly admitted testimony
          from RIAA representative, Carlos Linares, is "fairly debatable" and,
          if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result
          in reversal or a new trial" ...................................... 20

H.   The issue of whether or not the Court improperly allowed questioning related to unrelated prior civil suits and whether the government exceeded the scope of the Court's permission are "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's arguments, are "likely to result in reversal or a new trial" . . . . . . . . . . . . . . 22

I.   Mr. Liu's arguments that there was insufficient evidence as to all Counts and that the Court utilized an inappropriate standard for "willfulness" are "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal or a new trial" . . . . . . . . 24

III.   THE GOVERNMENT CONCEDED THERE IS A POSSIBILITY THAT AT LEAST ONE COUNT OF CONVICTION WILL BE REVERSED ON APPEAL; THIS ALONE IS SUFFICIENT TO JUSTIFY GRANTING MR. LIU'S MOTION FOR BAIL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Case Law**                                                                          **Page(s)**

*Boyde v. California,*
    494 U.S. 370, 380 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Carrillo,*
    16 F.3d 1046, 1050 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Cerone,*
    830 F.2d 938, 949 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Handy,*
    761 F.2d 1279 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 26, 27

*United States v. Moshen,*
    587 F.3d 1028, 2032 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Sanchez,*
    944 F.2d 497, 499 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Schmit,*
    881 F.2d 608, 614-15 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Shyres,*
    898 F.2d 647, 657 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

-iii-

## I.

## <u>INTRODUCTION</u>

The government concedes that Mr. Liu is not a flight risk or a danger to the community and that his appeal is not for the purpose of delay.[1]  (Government's Opposition, Pg. 1, fn. 1). Therefore, the only point of contention is whether or not Mr. Liu's appeal presents "substantial question[s] of law or fact."  In its brief, the government misconstrues the meaning of the *18 U.S.C. §3143(b)(1)(B)* standard as it was interpreted by the Ninth Circuit in *United States v. Handy*, 761 F.2d 1279 (9ᵗʰ Cir. 1985).  Properly analyzed, it is clear that Mr. Liu's motion for bail pending appeal meets the requirements articulated in the statute.

Defense counsel is still working to complete the opening brief and intends to have it on file with the Ninth Circuit before the hearing on this motion which is currently scheduled for May 19, 2011.[2]

## II.

## <u>THE GOVERNMENT MISUNDERSTOOD THE NINTH CIRCUIT'S HOLDING IN *HANDY*; THE ISSUES RAISED BY MR. LIU ON APPEAL ARE ALL "FAIRLY DEBATABLE."</u>

The government only objects to Mr. Liu's motion for bail on the ground that none of the

---

1 As Mr. Liu pointed out in the motion for bail pending appeal, his Pretrial Services officer, Mr. Tim Elder indicated that he will not oppose Mr. Liu's remaining out of custody during the course of his appeal so long as Mr. Liu continues to maintain contact with his office as prescribed.

2 Defense counsel will promptly alert this Court when the opening brief is formally filed with the Ninth Circuit Court of Appeals and provide this Court with a copy of the brief.

**Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW

1

issues he presents on appeal raises a "substantial question of law or fact likely to result in – (i) a reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *18 U.S.C. §3143(b)(1)(B).*

While the government correctly recited the standard that must be applied to motions for bail pending appeal, the government appears to have misunderstood the import of the Ninth Circuit's decision in *United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985). In its opposition, the government consistently argues that Mr. Liu's claims are "not likely to be successful" on appeal. (Government's Opposition, Pg. 3). The government's opposition is directed solely at the merits of Mr. Liu's arguments. The government fails to demonstrate that the issues Mr. Liu has raised are not "fairly debatable" as required under *Handy*. *Id.* at 1283.

The *Handy* court specifically addressed the government's argument in that case that the language of *18 U.S.C. §3143(b)(1)(B)* should be interpreted to mean that bail pending appeal should be limited to "defendants who can demonstrate that they will probably prevail on appeal." *Id.* at 1280. The Ninth Circuit flatly rejected this argument: "The construction of the phrase suggested by the government is untenable for a number of reasons." *Id.*

The Ninth Circuit provided three reasons for rejecting the government's argument. The first reason is that to adopt the government's interpretation would render the word "substantial" superfluous. *Id.* Second, the Ninth Circuit pointed out that "Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for new trial. *Id.* Finally,

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                    2

the court stated that "requiring the defendant to demonstrate to the district court that its ruling is likely to result in reversal is tantamount to requiring the district court to certify that it believes its ruling to be erroneous." *Id.* at 1281.

For all of the reasons above, the Ninth Circuit held that the "likely to result in" language of the statute did not require the defendant to show that he would more likely than not be successful on appeal. Instead, that language "defines the type of question that must be presented." *Id.* By "type of question" the Ninth Circuit meant that the defendant must show that, if his or her argument were accepted, the result would be one of the outcomes described in *18 U.S.C. §3143(b)(1)(B)*(i)-(iv). *Id.* at 1281, 1284. The Ninth Circuit ultimately defined a "substantial question as one that is "fairly debatable" or "fairly doubtful." *Id.* at 1283. Focusing its definition even further, the court stated "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous."[3] *Id.* (quotation marks and citation omitted).

The government's opposition, however, focuses on the merits of Mr. Liu's arguments and whether or not those arguments are likely to be successful when presented to the Ninth Circuit. This analysis has no place in the determination of whether or not Mr. Liu is entitled to bail pending appeal. For instance, this Court ruled that the documents recovered during the search

---

[3] "Frivolous" is defined as "1a: having little weight or importance; 1b: having no sound basis (as in law or fact) <a *frivolous* lawsuit>; 2a: lacking in seriousness; 2b: marked by unbecoming levity." *http://www.merriam-webster.com/dictionary/frivolous.* The definition of "substantial question" adopted by the Ninth Circuit is a question that "is of more substance than would be necessary to a finding that" it had "little wight or importance" or had "no sound basis." Thus, for purposes of this motion, Mr. Liu need only make a showing that his arguments have more substance than "frivolous" arguments.

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                      3

of the vertex warehouse were properly admitted.   Mr. Liu has every right to challenge this decision on appeal.   Under *Handy*, Mr. Liu need not prove that the Ninth Circuit will more likely than not agree with his interpretation rather than this Court's.   Instead, Mr. Liu need only show that the issue presented is a "substantial question," meaning that it is "fairly debatable" or "fairly doubtful," and that, if the Ninth Circuit were to accept his argument, the effect would be one of the results enumerated in the statute.   Mr. Liu has made this showing with respect to all of his claims on appeal.

The government clearly focused its analysis on whether or not the Ninth Circuit would accept Mr. Liu's arguments and lost sight of focus of this motion which is whether or not Mr. Liu is raising "substantial questions" on appeal.   The government's own responses to Mr. Liu's contentions, however, reveal that these are "substantial questions" that are "fairly debatable."   The government presents its own arguments for why the Ninth Circuit should not accept Mr. Liu's contentions.   It will be up to the Court of Appeals to ultimately resolve the issues, but the level of analysis provided by the parties depicts issues that can be cogently argued from both the government's and the defendant's perspective.   Thus, the issues are all "fairly debatable."

> A.     The issue of whether or not Mr. Liu received ineffective assistance of counsel at trial is "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal."

The government seems to have missed the central point of Mr. Liu's statute of limitations argument. *The government produced no evidence that Mr. Liu manufactured or distributed any of the CDs or DVDs prior to November 29, 2001.*   Each of the CDs and DVDs, including those charged in the first Indictment, was manufactured prior to that date and the government never

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                4

showed that Super DVD was selling or distributing any of these items.  In fact, the only evidence related to how Super DVD's business operated indicated that Super DVD replicated discs for other companies.  The government has not, and cannot, contest that these CDs and DVDs were manufactured after November 29, 2001 and has produced no evidence of distribution whatsoever. Super DVD did not sell these discs individually.  They were specially made for customers that ordered the replication services that Super DVD offered.  Super DVD was not a CD or DVD outlet at which people could buy these discs.  Super DVD was a replicator.  The government failed to show that Super DVD distributed any of these discs to its customers or to anyone else on or after November 29, 2001.  For this reason, none of the allegedly infringing items in Counts 1 and 2 were properly charged.

The government also argues that the statute of limitations was tolled at the time of the first indictment. The government correctly points out that notice to the defendant "is the touchstone" of the analysis.  Here, as Mr. Liu pointed out in his motion and the draft of his opening brief, he was not on notice that he would be charged with these items. The CDs and DVDs were produced for a different customer, under different circumstances, at a much later point in time.  There is no factual link between the Symantec software and the CDs and DVDs that Mr. Liu was charged with manufacturing and distributing.  Mr. Liu could not have adequately prepared to defend himself against charges related to CDs and DVD that were made over eight years prior to the filing of the Second Superseding Indictment.  This is exactly the type of "broadening" and "substantial amending" that is not permitted.

Although it claims that the CDs and DVDs were "covered by the same course of conduct

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                      5

and fraudulent [sic] alleged in the original indictment" the government has presented no authority suggesting that these crimes can properly be characterized as such. The CDs and DVDs were a different form of media from the timely filed Counts related to the Symantec software and arose out of an entirely different set of factual circumstances. The government's perception of this entire case is colored by its misrepresentation that "Super DVD was a continuing and ongoing criminal enterprise." (Government's Opposition, Pg. 5). This mentality permeated the trial proceedings and continues to infect the government's post-conviction approach to this case. See also, Government's Opposition, Pg. 14. ("His common scheme was to infringe all types of copyrighted works, ranging from music to movies to software. This conduct formed the basis of his business.")

There is absolutely no basis for the government's contention that Super DVD was a "criminal enterprise." At Mr. Liu's sentencing hearing, the government argued that Mr. Liu "is someone whose business for several years was the mass reproduction and sale of copyrighted works without the copyright holder's consent." (RT, 12/13/2010, Pg. 9). In his closing argument at trial the prosecutor state that Mr. Liu was responsible for the "mass production of copyrighted material." (RT, Pg. 663). These statements on the part of the government are not supported by the evidence. None of the witnesses called by the government ever testified that Mr. Liu was the kingpin of any major criminal copyright infringement syndicate. And, yet, the government keeps making these inflammatory remarks. Perhaps the government is hoping that doing so will overshadow the many errors that Mr. Liu is raising based on the trial record, but endless repeating of an untruth does not make it reality.

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu;*
Case No. CR-06-00772-JW                                                    6

The government only charged Mr. Liu with a fraction of the items found at the Super DVD warehouse. The government charged Mr. Liu with an even smaller fraction of the total volume of Super DVD's business. In truth, the majority of the CDs, DVDs and software produced by Super DVD during its years in operation were legitimate. There was no evidence that Super DVD was producing these items on its own. Instead, other companies were hiring Super DVD to do this work. These other companies were initiating the copyright infringement while Super DVD was merely replicating the discs. The government's attempts to cast Mr. Liu as the head of a "criminal enterprise" known as Super DVD would be comical but for the serious situation in which Mr. Liu now finds himself. The government's insistence upon exaggerating the truth in such an absurd fashion stems, most likely, from its awareness that the evidence against Mr. Liu is so tenuous. Thus, in order to convince the jury, the court, and itself that it is doing the right thing in sending Mr. Liu to prison, it has manufactured this make-believe reality.

Finally, while the government argues that the Ninth Circuit is generally loathe to conduct ineffective assistance of counsel analyses on direct appeal, Mr. Liu has presented a strong position as to why this case necessitates such a review. Statute of limitations is among he most elemental defenses and, in this case, would have resulted in the dismissal of Counts 1 and 2. The government argues that "defense counsel may have had valid reasons for his decision not to bring a statute of limitations challenge," however the government fails to even speculate as to what those reasons might have been. There is no conceivable reason not to raise a statute of limitations defense in this case. It would likely have succeeded resulting in a dismissal of two counts and a weakening of the evidence related to the remaining two counts. Also, there is no way that

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                          7

raising a statute of limitations defense could have adversely affected Mr. Liu's case in any way.

These are all arguable positions and, therefore, meet the requirement at the heart of this motion which is that Mr. Liu raise "fairly debatable" issues.

      B.    Mr. Liu's arguments related to the contested jury instructions are "fairly debatable" and, if the Ninth Circuit accepts the arguments, are "likely to result in reversal."

The government first argues that the Court's decision to simply email the jury instructions to the attorneys satisfied the requirements imposed by Rule 30. According to the government, the Court emailed the parties June 16, 2010. This email is not part of the record and there is no way to verify from the record that Mr. Liu or his attorney ever actually received the email. Additionally, as pointed out in the draft of Mr. Liu's opening brief, rather than discuss the parties' concerns related to the jury instructions, the Court almost immediately began directing the parties into a discussion of Mr. Liu's Rule 29 and Rule 33 motions. (RT, Pg. 481). The discussion of the jury instructions consumes a mere 3 pages of the transcript. (RT, Pg. 478-481). The discussion was directed entirely by the Court and the Court never referred to the parties' proposed instructions or asked the parties if there were any additional objections. (RT, Pg. 478-481). No additional discussion was ever conducted regarding the jury instructions. This is insufficient to meet the requirements of Rule 30. That rule requires that the court hold a conference in which the substance of the parties' written objections is discussed and the court provides its rationale for including or excluding various instructions. That never took place in this case and, consequently, Mr. Liu was never able to properly voice his objections prior to the conclusion of the trial.

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW          8

The government's other arguments mostly relate to defense counsel's failure to object to the proposed jury instructions. As noted in the previous paragraph, however, defense counsel was never given the opportunity to do so by the Court. The issues that Mr. Liu is now raising are all of such magnitude that they meet the plain error standard. The three challenged jury instructions are all based on modifications that the Court made without input from or discussion by the parties. Also, the Court cited no authority for the instructions that it incorporated and those instructions run counter to established law on the subject.

The first challenged instruction was objected to by the defense. (Docket # 71, pg. 2). Mr. Liu specifically objected to the government's failure to include the following statutory language: "Evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyrighted work." The government agreed to this addition to the instruction. (Docket #74, Pg. 3). The Court, however, without discussion and without providing a reason, did not incorporate this crucial sentence into its final draft of the instructions. The government responds to Mr. Liu's two other jury instruction challenges by stating that there was "no evidence that the jury was confused in any way" regarding the instructions. The conflicting instructions defining "willfulness" and the instruction that permitted Mr. Liu to be found guilty based on an agency relationship were not confusing; they were legally wrong. Therefore, there is no evidence that can be unearthed that will validate Mr. Liu's contention that these instructions were prejudicial. Mr. Liu need only show that there was a "reasonable likelihood" that the jury misapplied the challenged instruction. *Boyde v. California*, 494 U.S. 370, 380 (1990). There is ample reason to believe that the jury did in fact misapply the

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                        9

instructions at issue here.  Looking at the instructions as a whole, as the government correctly asserts that a reviewing court must do, one can see that the challenged definition of "willful infringement" was repeated three times while the less offensive version of the definition was repeated once.  Also, there was nothing to mitigate the harm of the agency instruction and no statutory or case law supporting its inclusion.  The jurors, therefore, must have accepted and relied upon that instruction.

C.  The issue of whether or not the Court committed structural error by failing to obtain input from Mr. Liu and his attorney related to the jury notes is "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal or a new trial."

The government offers virtually no resistance to Mr. Liu's argument that the Court committed structural error in failing to discuss with the parties three of the jury notes it received.  The government provides no factual refutation of Mr. Liu's argument.  Instead, the government simply claims, without citation to the record, that the Court "presented all of the jury notes to both government and defense counsel and provided both government and defense counsel with the opportunity to comment on each of the jury notes."  (Government's Opposition, Pg. 7).  If this is true, then the government would have surely cited some portion of the record related to this issue.  It did not.

In a footnote, the government also cites the case *United States v. Moshen*, 587 F.3d 1028, 2032 (9th Cir. 2009), for the proposition that a failure to consult with the defendant and defense counsel regarding jury notes is not always structural error.  (Government's Opposition, Pg. 7, fn. 4).  However, as Mr. Liu pointed out in the draft of his brief submitted with his moving papers,

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                10

*Moshen* makes it clear that any note related to factual or legal issues related to the case must be discussed with the parties on the record. *Id*. The Ninth Circuit explained that the note in *Moshen* was distinguishable: "The communication here, by contrast, made no substantive inquiry about the facts or the law." *Id*.

The government has presented nothing to support its claim that the Court addressed these notes on the record. This was a denial of Mr. Liu's right to counsel at a "critical stage" and constitutes structural error. Mr. Liu's case should be reversed on this ground alone. The government has not presented any compelling argument that this issue is not "fairly debatable."

> D.     The issue of prosecutorial misconduct during Mr. Liu's trial is "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal or a new trial."

The government concedes that it misstated the evidence at various points during the trial. The government also acknowledges that a misstatement of the evidence by the prosecutor is improper. The government, however, asserts that its misstatement of the evidence related to this pivotal piece of testimony was "inadvertent" and "harmless."

The Ninth Circuit has held that instances of prosecutorial conduct require a new trial when "considered in the context of the entire trial, the prosecutor's conduct seems likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Sanchez*, 944 F.2d 497, 499 (9th Cir. 1991).

The government cites *United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994) for the proposition that inadvertent mistake does not generally lead to a finding of prosecutorial misconduct. The facts of the present case differ substantially from those of *Carrillo*, however.

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                    11

In *Carrillo*, the prosecutor prefaced his misstatement to the jury by saying that "he may be wrong" and concluded it by reminding the jurors that "your recollection controls." *Id.* This alerted the jurors to the prosecutor's admitted uncertainty as to the evidence.

Here, the prosecutor presented his argument with apparent confidence. The jury was not tipped off in any way to the possibility that the prosecutor was wrong about his recollection. The prosecutor's sense of conviction as he described this testimony to the judge and jury and his repetition of it made the misrepresentations far more insidious than the one in *Carrillo*.

The government also argues that "although government counsel's statement as to Mr. Quilty's statement was inaccurate, the statement regarding Symantec software was accurate as to the underlying factual circumstances. (Government's Opposition, Pg. 9). However, it is the jury's and not the government's role to determine whether or not a given inference is justifiable based on the evidence. The government admits that its misstatement was predicated upon what it perceived was the "reasonable and logical inference" from the testimony. For the government to restate the actual evidence so that it matches the inference it wants the jury to accept is to mislead the jury in its assessment of the evidence. Had the prosecutor here simply stated the evidence correctly and asked the jury to draw the inference from it that Mr. Liu sent Symantec software to Vertex, he would have been insulated from an accusation of misconduct. Instead, he presented that inference (which was not at all certain based on the ambiguous nature of the testimony) as if it was the evidence itself.

Also, the prosecutor made the same misrepresentation in his opening statement as well as his closing argument. Thus, the jury heard his emphatic assertion that Mr. Liu admitted to

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                    12

selling Symantec software on two occasions and only heard the actual testimony once. Inadvertent or not, the twist on the evidence altered the evidentiary terrain dramatically. The exchange of testimony at issue here was extremely brief–consuming only 11 lines of the 700 pages of trial transcript generated in this case. It is unlikely that the jury would remember it vividly enough to be uninfluenced by the prosecutor's rendering of Mr. Quilty's words. Indeed, the judge, himself, was affected by the prosecutor's misstatement. It is very likely then that the "prosecutor's conduct affected the jury's discharge of its duty to judge the evidence fairly."

This Court's reliance upon the government's misrepresentation in making its ruling on the admission of the Vertex documents is even more prejudicial. Although the government admits that "the Court did initially rely upon the government's inadvertent misstatement," it argues that the Court ultimately found other indicia of trustworthiness. The Court's statements make it abundantly clear, however, that the supposed admission of Mr. Liu was the principle piece of evidence supporting its decision. The Court said it would not strike the documents "based on the government's proffer that there was a statement made by the defendant that he did, indeed, ship Symantec products to Vertex." (RT, Pg. 488). In the Court's order denying Mr. Liu's Rule 29 and Rule 33 motions, it listed only three facts that served as "indicia of trustworthiness." (Docket #109, Pg. 8). The first of these facts is Mr. Liu's supposed admission that he sold Symantec software.[4] The remaining two indicia do not link Mr. Liu to the software

_____

4  The Court further misstated the evidence with respect to the supposed admission: "Defendant admitted at trial that he had on prior occasions sold Symantec software to Vertex." (Docket #109, Pg. 8). In truth, Mr. Liu denied during his testimony that he ever sold Symantec software to Vertex. (RT, Pg. 536-537, 563).

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu;*
Case No. CR-06-00772-JW                    13

and, therefore, do not corroborate the assertions within the documents.

The argument Mr. Liu is presenting is one that is surely "fairly debatable," and, should the Ninth Circuit decide this issue in Mr. Liu's favor, it would result in a new trial as to Counts 3 and 4.

E.   Mr. Liu's argument that the documents found at Vertex were inadmissible hearsay is "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal or a new trial."

In its opposition papers, the government fails to address several of the claims raised by Mr. Liu with respect to this Court's ruling related to the admission Exhibit 3.  First, the government offers no response to Mr. Liu's argument that the documents could not have been admitted for a non-hearsay purpose because the Court expressly allowed the parties to argue the truth of the matters asserted within the documents.  The Court also denied defense counsel's request for a limiting instruction.  There is, therefore, no validity to the government's argument that the documents were properly admitted for a non-hearsay purpose.

The government also attempts to argue that the documents were justifiably admitted as co-conspirator's statements.  It attempts to circumvent Mr. Liu's argument that they could not have been admitted under this exception because the declarant was unknown by asserting that they were "clearly made, or adopted by Vertex." (Government's Opposition, Pg. 11).  This is an absurd notion.  Rule 801 of the Federal Rules of Evidence defines a declarant as "a *person* who makes a statement."  Vertex is not a person and, therefore, not a declarant, and that was clearly not "Vertex's" handwriting on the documents themselves.  Vertex is a company comprised of many individuals with different roles.  In order to have the documents admitted under this

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                    14

exception to the hearsay rule, it would be necessary to discern exactly which Vertex employee or employees were responsible for the creation of the documents and whether or not those individuals were aware that the documents were made in furtherance of the conspiracy. The government failed to do this. If the government wishes to make this argument on appeal, it must at least concede that the issue is "fairly debatable."

The government cites three cases in support of its position that the documents were properly admitted as statements of co-conspirators. The cases cited bear no resemblance to the present case, however. Each of the cases cited by the government involves documents for which the author or declarant was known: *United States v. Schmit*, 881 F.2d 608, 614-15 (9th Cir. 1989) ("The evidence that Gary Schmit was the author of the notations, plus the overwhelming evidence offered at trial that Gary Schmit was a participant in the conspiracy, indeed its leader, was sufficient to establish that the notations were made by a coconspirator as required for admission under *Rule 801(d)(2)(E)*."); *United States v. Cerone*, 830 F.2d 938, 949 (8th Cir. 1987) ("An analysis of the notes seized in a search of DeLuna's home revealed that DeLuna had written the notes. The notes carried DeLuna's fingerprints. Thus, the notes were properly authenticated as declarations of a co-conspirator."); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) ("This argument relates to an eleven-page document which Peterson and Cotlar prepared during and in furtherance of the conspiracy."). Unlike the present case, the declarant in each of those cases was known as was proven to be aware of and a participant in the conspiracy.

The government argues that the Court's decision to admit the documents under the residual exception to the hearsay rule was also proper. The residual exception is amorphous to

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                    15

begin with. Essentially, the decision of whether or not to admit any evidence under this exception is "fairly debatable" due to the very nature of the exception.

The government fails to address Mr. Liu's arguments that, after removing the misstatement by the prosecutor, the remaining indicia of trustworthiness relied upon by the Court do not support a finding of reliability sufficient to allow for the admission of these documents. The government also fails to address Mr. Liu's claim that the use of the residual exception should have been precluded because these documents fall squarely within the "business records" exception. The government's failure to point to any reasonable argument to the contrary demonstrates that Mr. Liu has raised meritorious issues that are "fairly debatable."

The government claims that these documents were the most probative evidence that it could have produced. Responding to Mr. Liu's position that the government should have called Mr. John Provost as it had originally planned to do, the government asserts that Mr. Provost could not authenticate the documents. That seems to be a rather implausible argument considering he was one of the owners of the company. Even so, the government never made any effort to show this prior to (or even after) the admission of the evidence. Additionally, the government says that the custodian of records would be almost impossible to produce. Again, the government has offered no evidence to support this. Even if the owner of the company, Mr. John Provost, could not authenticate the documents, it is preposterous to believe without proof that he would be incapable of contacting a prior employee who was familiar with the company's record keeping. The government is simply stretching to produce reasons for its failure to adequately provide a foundation to admit the documents.

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                    16

The government further suggests that if Mr. Provost testified he could not provide the level of detail within the documents. Once more the government is making conjectural statements without so much as a declaration to support its claims. In fact, if the government's hypothesis that Mr. Liu admited to selling software directly to Mr. Provost is true, would it not also be true that Mr. Provost would have the most accurate understanding of the interactions between the two companies? The government's claims with respect to Mr. Provost's knowledge of the specifics of his own company are too incredible to be taken seriously without some showing of proof. The government never made such a showing and would be precluded from doing so for the first time on appeal. Therefore, the government's position with respect to whether or not it was the most probative evidence it could produce is untenable. The government argues that it was under no obligation to call Mr. Provost as a witness. Unfortunately, the government is incorrect. If it wanted to properly have these documents admitted into evidence it should have called Mr. Provost (or another Vertex employee) to authenticate them. Failing that, the government was under an obligation to prove that the documents were the most probative evidence it could produce.

The government failed to show that this issue is not, at the very least, a fairly debatable one. If the Ninth Circuit agrees with Mr. Liu, it will necessarily require a reversal of his convictions as to Counts 3 and 4. Additionally, as with so much of the evidence in this case, the testimony related to the Symantec software was intertwined with that related to the other Counts. The purchase orders and handwritten notes constituted the entirety of the government's case against Mr. Liu as to Counts 3 and 4. When Mr. Liu testified that he did not sell Symantec

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                    17

software to Mr. Provost, the jury likely assumed that he was lying about everything that he said because these documents directly contradicted his testimony. Therefore, the admission of these documents prejudiced Mr. Liu with respect to all four Counts.

> F.    Mr. Liu's argument that the value and quantity of the infringed items was improperly calculated at sentencing is "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process."

The government makes several inappropriate statements in its effort to support the Court's sentencing decisions. First, the government argues that the CDs and DVDs, even if they were outside the statute of limitations, fell within the same course of conduct. This is wrong. The government, as has become its habit, attempts to define Mr. Liu as some sort of criminal mastermind and Super DVD as a huge criminal operation: "His common scheme was to infringe all types of copyrighted works, ranging from music to movies to software. This conduct formed the basis of his business." (Government's Opposition, Pg. 14). This statement is absurd.[5]

Mr. Liu's business was not based upon producing counterfeit works. Even if Mr. Liu did infringe the works at issue in this case, this was clearly insufficient to sustain his business. The government only chose to prosecute Mr. Liu for a relatively small amount of items. If Mr. Liu's

---

5 Imagine that an individual commits five bank robberies. The prosecution timely files charges against him related to three of the robberies. It would be preposterous to assume that the government could then file a Superseding Indictment charging the defendant with the robberies that fell outside the statute of limitations. There, as in this case, the crimes were discrete and separable. They are not, as the government would lead this Court to believe, a single operation or a single course of conduct. Therefore, as in the hypothetical, the government cannot, in this case, bootstrap the copyright infringement charges related to the CDs and DVDs to the charges related to the Symantec software.

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
United States v. Liu;
Case No. CR-06-00772-JW                                    18

entire business really were predicated upon illegal copies of CDs, DVDs, and software, why did the government not charge him with additional acts of infringement? Does the government really mean to suggest that Mr. Liu could run a business based solely upon a five CD titles and one DVD title in 2001 and some software in 2003? Also, why would he have registered a business license? Why would he sue one of his clients for non-payment? The government is wrong in its assessment of Mr. Liu and the fact that it continues to mischaracterize him and his business betrays its poor sense of justice.

Additionally, the government relies upon the quantity of infringing items listed in the Presentence Report (PSR). As the government points out, the PSR states that there were 11,071 CDs and 11,000 DVDs recovered from the Super DVD warehouse at the time that Mr. Liu was arrested. Although the PSR and the prosecutor claim that these CDs and DVDs (the vast majority of which were not part of the present case) were counterfeit, there is no evidence whatsoever to support this. The government acknowledges that the district court must apply a preponderance of the evidence standard when finding facts to support a sentencing determination. The court failed to do this with respect to the CDs and DVDs listed in the PSR. The PSR does not provide any rationale for concluding that the CDs or DVDs were counterfeit. The PSR does state that some of the material on the DVDs was copyrighted, but Super DVD's business necessarily involves the replication of copyrighted material. It is only those instances in which the copyrighted material was reproduced without permission from the copyright holder that there is any potential for criminal liability. The PSR does not provide any facts to support the assertion that the other CDs or DVDs were impermissibly copied and neither does the prosecution.

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW

19

Finally, the government argues that the purchase orders found at Vertex should be used to calculate the loss related to the Symantec software. The government justifies the use of the Purchase Orders by stating that, Mr. Liu has not "offered any evidence that the purchase orders were inaccurate in any regard." (Government's Opposition, Pg. 15). The government completely ignores the fact that its own evidence reveals that the majority of the orders reflected in the Purchase Orders were never consummated. According to the FedEx records admitted into evidence as Exhibit 5, there were just three shipments from Super DVD to Vertex with the last of these shipments taking place on February 13, 2003. The FedEx records reveal definitively that no other shipments were made after that date. Moreover, one of the FedEx U.S. Airbill documents that was found (dated February 19, 2003) shows that another company referred to as "FGPP" was also supplying Symantec software to Vertex. This further supports Mr. Liu's contention that no shipments were made by Super DVD to Vertex after February 13, 2003.

At a minimum, Mr. Liu's request for resentencing should be granted by the Ninth Circuit. The entire sentencing process was contorted in such a way as to punish Mr. Liu for acts that were outside the statute of limitations and acts that were not even crimes to begin with. The issues raised by Mr. Liu are "fairly debatable," and if the Ninth Circuit orders him to be resentenced, the new sentence would likely be less than the expected duration of the appeals process.

    G.    The issue of whether or not the Court improperly admitted testimony from RIAA representative, Carlos Linares, is "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal or a new trial."

The government continually relies on the great discretion afforded to trial courts in determining the admissibility of evidence. That does not mean that there are not instances in

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW          20

which a trial court abuses that discretion.  This is one of those instances.

The government makes no direct response to Mr. Liu's challenge to the testimony of Mr. Linares on the grounds that it is irrelevant and more prejudicial than probative under Rules 402 and 403 of the Federal Rules of Evidence.  The government asserts that "pursuant to these best practices, legitimate replicating companies verify with the parties placing their replication orders the existence of a valid license agreement between those parties and the copyright holders." (Government's Opposition, Pg. 16).  There are many problems with this statement.   First, the government did not address Mr. Liu's argument that the "best practices" as described by the RIAA, are not industry standards and, therefore, do not shed any light on the issue of whether or not Mr. Liu even acted negligently, much less "willfully."  Second, the government's contention that a replicating plant need adopt the best practices in order to be deemed "legitimate" is plainly false.  The record reveals that only a small fraction of replicating plants have actually adopted the best practices.  (RT, Pg. 412).  In Mr. Liu's case-in-chief, he called a witness, Mr. Steve Daniel, who was the Vice-President of U-Tech Media.  (RT, Pg. 498).  He testified that U-Tech is the fifth largest replicating company in the world.  (RT, Pg. 498).  He further testified that, while his company is familiar with the best practices, its employees do not regularly verify whether or not its customer is properly licensed to order the replication.  (RT, Pg. 504-505).

The fact that the best practices are not mandatory or even universally accepted renders meaningless the government's argument that Mr. Linares' testimony "was highly relevant on the issue of defendant's willfulness." (Government's Opposition, Pg. 16).  Rather, based on the evidence at trial, it is obvious that Mr. Linares' testimony was only marginally, if at all, relevant.

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                21

And seeing the manner in which the government employed this testimony, it is equally obvious how prejudicial it was. In contributed to the overall effect of reducing and shifting the government's burden of proof in this case. Therefore, Mr. Liu has adequately presented a "fairly debatable" question for the Ninth Circuit. If the Ninth Circuit decides in his favor, it will require a new trial or a reversal as to all counts.

H.   The issues of whether or not the Court improperly allowed questioning related to unrelated prior civil suits and whether the government exceeded the scope of the Court's permission are "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's arguments, are "likely to result in reversal or a new trial."

The questioning directed at Mr. Liu regarding unrelated prior civil suits was wholly inappropriate in this case. First the government argues that the evidence was relevant to show "defendant's knowledge of copyright laws, the consequences of infringement and the requirements of verifying the existence of a valid license." (Government's Opposition, Pg. 17). The mere existence of civil lawsuits in which companies that Mr. Liu may have had involvement with were accused of copyright infringement does not prove any of those points.

First, Mr. Liu never denied knowing that copyright laws exist. The fact that Super DVD included and indemnity clause in its agreements with clients demonstrates that the company was aware of copyright law. Moreover, Mr. Liu's testimony plainly revealed that he had been in the business for many years and was familiar with the restrictions related to copyrights. The government forgets, however, that criminal copyright law is a completely different species than its civil counterpart. Most importantly, there is no "willfulness" requirement in the civil context. This renders the civil cases completely different from the criminal arena in which the present case

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                    22

arose.

Also, the manner in which the government presented its questions was highly prejudicial. The prosecutor repeatedly asked Mr. Liu if *he* had been sued as opposed to the company for which he worked. Many of the suits at issue did not involve Mr. Liu personally and permitting the government to question him in this manner led to greater prejudice. Also, while the government inquired about the existence of the suits, it failed to ask any questions about the outcomes of most of them or what subject matter was at issue. The jury could not discern whether the activity underlying the civil suits was similar to the activity in the present case or not. Of course the jurors were prone to assuming it was similar based on the manner in which the prosecutor was asking the questions. In this way, the existence of these civil suits revealed nothing about Mr. Liu's knowledge of the consequences of infringement, but instead led jurors to believe he was guilty based solely on an assumption of Mr. Liu's propensity to commit copyright infringement.

Finally, the evidence of the prior civil suits is wholly irrelevant to the issue of whether Mr. Liu should have verified that his customers had valid licenses. There is no "requirement" in the criminal law statute that Mr. Liu check to ensure that his customers are licensed to order the reproduction of the media that they bring to Super DVD. The government persisted in trying to shift the burden on to Mr. Liu to show that he was not negligent, but this case was not about negligence. Mr. Liu had no obligation under the criminal law statute to verify that his customers were licensed to place their orders. Mr. Liu's negligence, if it can even be construed as that, was not relevant to the determination of "willfulness." Instead, it served to further erode the burden

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                    23

of proof placed on the government and impermissibly shifted that burden, in no small part, to Mr. Liu.

The government only referenced 4 civil suits in its pretrial motions.  In Agent Scott Hellman's declaration filed in conjunction with the government's request for this Court to take judicial notice of the complaints, Agent Hellman only referred to five civil suits. (Docket #80-1). The court's order in response to the government's motion in limine on this issue also only referred to four civil suits. During its cross examination, however, the government inquired about 8 civil lawsuits.  The government argues that the defense was on notice as to the other suit, but lack of notice is not the only objection being raised now by Mr. Liu.  The problem  Mr. Liu wishes to confront, in addition to being caught off guard without notice, is the government's exceeding the scope of this Court's order.  The government asked about civil suits that were not brought to the Court's attention, some of which were far too old to be relevant to the present case. This is inappropriate evidence and should have been excluded–especially since it was never approved by the Court to begin with.

I.   Mr. Liu's arguments that there was insufficient evidence as to all Counts and that the Court utilized an inappropriate standard for "willfulness" are "fairly debatable" and, if the Ninth Circuit accepts Mr. Liu's argument, "is likely to result in reversal or a new trial."

The government primarily argues that the definition of "willfulness," even if it was erroneous, would not amount to plain error.  This is a "fairly debatable" issue.  While the government cited case law for the proposition that the Ninth Circuit generally will not find "plain error" when the law on a particular subject is unsettled, the present case is markedly different

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                    24

from the cases the government relies upon.  Here, the effect of the Court's instructions on "willfulness" served to lower the standard of proof applied to the government's case.  In essence, the definition of "willfulness" employed here was inappropriate and, in the context of the aggregated effect of the other jury instruction and evidentiary errors, resulted in a denial of Mr. Liu's Due Process rights by lowering the evidentiary bar necessary for the government to obtain a conviction. Thus, Mr. Liu is raising an issue that involves core constitutional guarantees and he demonstrates how this Court, acting upon the government's request, chose to apply the wrong standard.

Because Mr. Liu's trial attorney field to propose a more appropriate definition of "willfulness' at trial, the government argues that "the Ninth Circuit is unlikely to find plain error." However, the issue of whether there was plain error related to this instruction is nonetheless one that is "fairly debatable."  Therefore, for the purpose of this motion, Mr. Liu has presented an issue which is sufficient to justify the granting of Mr. Liu's request for bail pending appeal.

### III.

### THE GOVERNMENT CONCEDED THERE IS A POSSIBILITY THAT AT LEAST ONE COUNT OF CONVICTION WILL BE REVERSED ON APPEAL; THIS ALONE IS SUFFICIENT TO JUSTIFY GRANTING MR. LIU'S MOTION FOR BAIL.

In its opposition, the government stated that "Even if the Ninth Circuit were to agree with defendant's statute of limitations argument, it would still likely only reverse as to Count Two of defendant's conviction." (Government's Opposition Pg. 5, fn. 3).  This statement implies that the government concedes there is a possibility of the Ninth Circuit reversing as to Count 2.  The acknowledgment of such a result brings this case squarely within the Ninth Circuit's

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW

25

interpretation in *Handy*.  The Court established that an argument that, if accepted by the appellate court, would result in reversal is sufficient to meet the requirements of *18 U.S.C. §3143(b)(1)(B)*. Nowhere in the statute does it say that the defendant needs to show that he or she would obtain reversal as to every count of conviction.

The government's statement is an admission that, at a minimum, Mr. Liu's statute of limitations challenge is "fairly debatable" as it pertains to the "Crouching Tiger, Hidden Dragon" DVDs.  It is also an admission that, should Mr. Liu be victorious in that argument, the result would be a reversal as to Count 2.

Also, the nature of a statute of limitations argument necessitates a greater level of scrutiny as to the type of prejudice incurred due to the ineffective assistance of trial counsel.  Trial counsel for Mr. Liu should have alerted the court prior to trial that he would be moving, pursuant to Rule 29, for dismissal of Counts 1 and 2 based upon the statute of limitations violations.  Counsel should also have argued that, unless the government had evidence that the CDs and DVDs were manufactured or distributed on or before November 29, 2001, it should not proceed to trial on those counts.  To do so would be a bad faith attempt on the part of the government to conflate the evidence related to Counts 1 and 2 with that of Counts 3 and 4.

If the government proceeded to trial on all four Counts, the defense should have moved for dismissal of Counts 1 and 2 immediately after the government concluded its case-in-chief. Defense counsel should simultaneously have moved for a mistrial based upon the government's bad faith and intentional prosecution of crimes that it knew to be outside the statute of limitations. If the trial court had granted the motion to dismiss, it would have affected Mr. Liu's case-in-chief

Defendant Julius Liu's Reply to
Government's Opposition to Motion
for Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                    26

as well as the closing arguments of both parties.  It would have cast a spotlight on the government's weak case with respect to Counts 3 and 4.  Moreover, this Court may have granted a mistrial in the face of the government's bad faith prosecution.

Additionally, if the Ninth Circuit accepts Mr. Liu's statute of limitations argument with respect to any of the Counts, it must immediately order Mr. Liu to be resentenced.  A reduction in the estimated loss would likely lead to a different result in the sentencing evaluation.  As Mr. Liu pointed out in the opening brief, such a result would necessarily lead to an immediate 2 level reduction in the Sentencing Guidelines calculation. (Defendant's Motion, Exhibit A, Pg. 42-43).

The government's concession as to Count 2 virtually mandates the granting of Mr. Liu's motion.  It is an admission that there is at least one "fairly debatable" issue that, if decided in Mr. Liu's favor, would lead to a reversal as to one of the counts of conviction.  This alone is sufficient to meet the standard articulated in *Handy*.

### IV.

### CONCLUSION

For the foregoing reasons, this Court should grant Mr. Liu's motion for bail pending appeal pursuant to *18 U.S.C. §3143(b)(1)(B)*.

Respectfully submitted,

Dated: May 4, 2011          **BAY AREA CRIMINAL LAWYERS, PC**

By: /s/David J. Cohen
       DAVID J. COHEN, ESQ.

Attorneys for Defendant **Julius Chow Lieh Liu**

**Defendant Julius Liu's Reply to**
**Government's Opposition to Motion**
**for Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                    27