DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

Attorneys for Defendant **Julius Chow Lieh Liu**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-06-00772-JW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIUS CHOW LIEH LIU, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT JULIUS LIU'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF
MR. LIU'S MOTION FOR BAIL PENDING APPEAL**

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   **THE RECORD ON APPEAL REVEALS THAT THE COURT
MADE NO ATTEMPT TO CONTACT MR. LIU OR HIS
ATTORNEY FOLLOWING THE RECEIPT OF THE JURY'S
QUESTIONS; THIS IS SUFFICIENT TO JUSTIFY MR. LIU'S
ARGUMENT THAT HE SHOULD BE GRANTED BAIL
PENDING APPEAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  **THE COURT FAILED TO CONDUCT A "CRITICAL STAGE"
OF MR. LIU'S CASE, THEREFORE, MR. LIU WAS
COMPLETELY DEPRIVED OF HIS RIGHT TO COUNSEL
DURING A CRITICAL STAGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   **THE JURY NOTES AT ISSUE IN THIS CASE REPRESENT
"SUBSTANTIVE AND FACTUAL INQUIRIES" MADE BY
THE JURORS AND, THEREFORE, REPRESENT "CRITICAL
STAGES" OF THE PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    **CASES IN WHICH THE APPELLANT CLAIMED VIOLATIONS
OF THE RIGHT TO DUE PROCESS, THE RIGHT TO A FAIR
TRIAL, AND THE RIGHT TO BE PRESENT HELP DEFINE THE
CHARACTERISTICS OF THIS CRITICAL STAGE, THE NATURE
OF A SUBSTANTIVE INQUIRY, AND SUPPORT THE
CONTENTIONS THAT MR. LIU WAS DENIED A CRITICAL
STAGE OF HIS TRIAL AND THAT THE TRIAL COURT'S
ERROR WAS NOT HARMLESS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.   **THIS COURT LACKS JURISDICTION TO RESOLVE FACTUAL
DISPUTES RELATED TO THE TRIAL RECORD OF THIS
CASE AND, THEREFORE, NO ADDITIONAL EVIDENCE
RELATED TO THE TRIAL COURT'S RESPONSE TO THE
JURY NOTES SHOULD BE PERMITTED AT THIS TIME** . . . . . . . . . . . . 22

    A.   The filing of a notice of appeal with the Ninth Circuit
       divested this Court of jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.   The government's assertion in its opposition brief that
       the trial judge contacted the attorneys following its
       receipt of the jury notes should be stricken because
       those assertions are not supported by the record . . . . . . . . . . . . . . . . . . . . . 25

-i-

C.    <u>If this Court, over Mr. Liu's objection, accepts additional evidence in order to resolve what it perceives is a factual discrepancy, it should order a full evidentiary hearing so that Mr. Liu can properly cross-examine the witnesses to the incident</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**VII.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**Case Law**                                                                                          **Page(s)**

*Fillippon v. Albion Vein Slate Co.,*
    250 U.S. 76, 82 (1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Frantz v. Hazey,*
    533 F.3d 724, 731 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 16

*Griggs et. al. v. Provident Consumer Discount Co.,*
    459 U.S. 56, 58 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Consolidated Properties, Inc.,*
    136 B.R.261, 266 (Dist. Nev. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Thorp,*
    655 F.2d 997, 998 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jago v. District Court,*
    570 F.2d 618, 619 (6th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Musladin v. Lamarque,,*
    555 F.3d 830, 842 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 9, 14

*Moore v. Knight,*
    368 F.3d 936 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 27

*Rogers v. United States,*
    422 U.S. 35, 39 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Cronic,*
    466 U.S. 648, 658-59 (1984) . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10, 13, 14, 17, 18, 20

*United States v. Frantz,*
    587 F.3d 1028 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Maraj,*
    947 F.2d 520, 525 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mohsen,*
    587 F.2d 1028, 1032 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 7, 9, 10, 11, 14

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Case Law</u> <u>Page(s)</u>

3

*United States v. Parent,*
4      954 F.2d 23 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

5

*United States v. Rhodes,*
6      32 F.3d 867, 874 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 20

7

*United States v. Rosales-Rodriguez,*
8      289 F.3d 1106, 1110 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

9

*United States v. Throckmorton,*
      87 F.3d 1069, 1072 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 20

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## **INTRODUCTION**

During its deliberations, the jury sent a total of five jury notes to the trial judge. Two of these notes were discussed on the record and the Court issued written responses to the jury after duly obtaining input from both parties' attorneys. For the remaining three notes, the record reflects that the parties were not contacted and their input was not incorporated into the answers that the Court provided to the jury.

The notes at issue are jury notes nos. 1, 3, and 5. (See Attached Exhibit A, Docket # 99: Packet containing all five substantive jury notes in addition to a sixth note in which the jury indicated it had reached a verdict). Mr. Liu, in his appeal to the Ninth Circuit, will argue that the trial judge violated his right to counsel at a "critical stage" in the proceedings by failing to promptly notify Mr. Liu and his attorney, and by failing to solicit input of counsel as to the three jury note responses[1]. A total deprivation of counsel at a critical stage of the case, even for a limited period of time, is structural error and the defendant need not show prejudice in order to win reversal of his or her conviction. *United States v. Cronic*, 466 U.S. 648, 658-59 (1984). In *Musladin v. Lamarque*, 555 F.3d 830, 842 (9th Cir. 2009), the Ninth Circuit, after thorough analysis, determined that the composing of a response to a jury note is a "critical stage" and prejudice is presumed for any deprivation of counsel during that process. *See also, United States*

---

1 Mr. Liu will also argue to the Ninth Circuit that his error violated his right to Due Process under the Fifth Amendment to the United States Constitution and his statutory right to be present at all stages of trial pursuant to Fed. R. Crim. Pro. 43.

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                         1

*v. Mohsen*, 587 F.2d 1028, 1032 (9th Cir. 2009) (a court's response to a jury note is a "critical stage" under *Cronic* when the note involves a "substantive inquir[y] about the facts or law" related to the case).

        After all moving papers were filed pertaining to the instant motion for bail pending appeal, but prior to the previously scheduled hearing date, Judge Ware, who presided over Mr. Liu's trial, became the Chief Judge for the Northern District Court of California. Consequently, some of his cases were reassigned. Mr. Liu's case was reassigned to Judge Fogel. On May 11, 2011, Judge Fogel conducted a status conference at the request of the parties. At that time, the Court indicated its uncertainty as to how it could proceed with respect to Mr. Liu's assertion that the trial judge failed to obtain input from his attorney before responding to three of the mid-deliberation notes that it received.

        At the status conference, the Court referred to government counsel's unsupported assertion in his brief – made without citation to the record or any detail of the claimed contacts – that the attorneys were, in fact, contacted prior to Judge Ware responding to jury notes. The Court then requested that Mr. Liu's current attorney seek a declaration from Mr. Liu's trial counsel, Mr. McNair-Thompson, indicating whether or not he was contacted and, if so, describing the nature of his communications with the Court related to the jury notes.

        Mr. Liu is now timely filing this supplemental brief.

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW

2

## II.

**THE RECORD ON APPEAL REVEALS THAT THE COURT MADE NO ATTEMPT TO CONTACT MR. LIU OR HIS ATTORNEY FOLLOWING THE RECEIPT OF THE JURY'S QUESTIONS; THIS IS SUFFICIENT TO JUSTIFY MR. LIU'S ARGUMENT THAT HE SHOULD BE GRANTED BAIL PENDING APPEAL.**

Mr. Liu's trial concluded on June 17, 2010.  The jurors were dismissed and the Court consulted with the parties briefly outside the presence of the jury to discuss matters related to the verdict form. (RT, Pg. 676).  Mr. Liu's attorney, Mr. McNair-Thompson, then inquired as to in what proximity the Court wished him to remain during jury deliberations. (RT, Pg. 679).  The Court articulated its policy to defense counsel as follows:

> My policy is that you have to be available in the courtroom. If you wish to be consulted during the course of deliberations as questions come out, I come into the courtroom to consult with the parties before I send an answer in.  If you're not here, I take that to be you're waiving your right to be notified of what the question is and how the Court proposes to respond to it.

(RT, Pg. 679).  Mr. McNair-Thompson then expressly stated his desire to be notified of any questions the jury may have: "Well, obviously, if there's a question, I want to deal with it." (RT, Pg. 680).  Mr. McNair-Thompson asked the court if he could go "over to McDonald's where they have a wifi and be available on five minutes notice." (RT, Pg. 680).  To this request the Court replied, "Certainly.  You just need to make those arrangements with Ms. Garcia, so stand by until she comes back into the courtroom and give her that information." (RT, Pg. 680).  The Court briefly discussed unrelated matters with the parties before "stand[ing] in recess pending the jury's deliberations." (RT, Pg. 680-682).  There is no additional dialog on the record for the remainder

Defendant Julius Liu's Supplemental
Brief in Further Support of Mr. Liu's
Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                3

of June 17, 2010.

At 3:02 p.m. that same day, however, the jury submitted the first of five notes to the Court. (Exhibit A, Pg. 2). In that note, the jury asked the Court "What is the location/city of the zip code 94621?" (Exhibit A, Pg. 2). This question clearly reflects an inquiry into the substantive facts of the case. One of the most important factual disputes in the case pertained to evidence that the shipment of software received by Vertex was shipped from the 94621 zip code. (RT, Pg. 347-48, 629). Super DVD was not located in this zip code which suggests that someone else shipped the software and used Super DVD's name as a means of diverting attention away from the real perpetrator.

Although Judge Ware stated on the record that he would address any jury questions with the parties in open court before responding to them, no dialog related to this question was ever conducted on the record. Instead, Judge Ware handwrote the following response to the jurors: "The geographic location of the zip code is not in evidence. Judge Ware." (Exhibit A, Pg. 3). When court was in session the following day, the court made no mention of this note or its response to it. (RT, Pg. 685).

The transcript for June 18, 2010 begins with the Court's discussion of jury note no. 2 which the jurors presented to the Court at 11:00 a.m. on June 18, 2011. (RT, Pg. 685). After discussing this note with the parties on the record and in open court, the Court prepared a two page written response. (Exhibit A, Pgs. 5-6). Having heard the arguments raised by the parties, the Court took another recess pending the jury's deliberations. (RT, Pg. 689). At 12:45 p.m. that

same day, the jury sent a third note to the Court. That note, like note no. 1, was never discussed with the parties. Instead, the Court came back on the record following jury note no. 4 which was submitted at 1:30 p.m.

Jury note no. 3 states that the jurors believed that there was a duplicate entry in the track titles of one of the allegedly counterfeit CDs. The jurors asked the court if they were to consider the title once or twice when rendering their verdict. Again, without consulting the parties, the Court handwrote its response to the jury: "Thank you. A revised form is being submitted to you. Judge Ware."

After discussing jury note no. 4 on the record in open court, the Court recessed once more. The final inquiry submitted by the jurors, jury note no. 5, was submitted at 3:15 p.m. and seems to have been totally disregarded by the Court. The Court did not address the note at all on the record and there is no indication that it even provided a response to it. Instead, at 3:30 p.m., the jury indicated that it had reached a verdict.

The record demonstrates that the attorneys were not notified regarding jury notes 1, 3, and 5. First, the Court explicitly stated that it would call the parties in for any note that the jury sent to the Court, and Mr. McNair-Thompson stated that he wanted to be present to deal with any questions from the jurors. The Court followed this procedure with respect to two of the notes, but failed to do so for the other three. The handwritten responses that the Court sent to the jurors suggest that the Court opted not to contact the attorneys regarding two of the notes. The complete lack of a response to note no. 5 suggests that it was never even considered by the Court or the

parties.

## III.

### THE COURT FAILED TO CONDUCT A "CRITICAL STAGE" OF MR. LIU'S CASE; THEREFORE, MR. LIU WAS COMPLETELY DEPRIVED OF HIS RIGHT TO COUNSEL DURING A CRITICAL STAGE.

The Ninth Circuit has stated that the "'stage' at which the deprivation of counsel may be critical should be understood as the *formulation* of the response to a jury's request for additional instructions, rather than its delivery." *Musladin v. Lamarque*, 555 F.3d 830, 842 (9th Cir. 2009). The court went on to say, "Counsel is most acutely needed before a decision about how to respond to the jury is made, because it is the substance of the response – or the decision whether to respond substantively or not – that is crucial." *Id.* The Ninth Circuit clarified its position in the case *United States v. Mohsen*, 587 F.3d 1028, 2032 (9th Cir. 2009) in which it held that the questioned jury note did not precipitate a "critical stage" analysis because the communication "made no substantive inquiry about the facts or law."

Mr. Liu's position is that the "critical stage" at issue here is the one in which the trial judge, in open court and on the record, reads the note he received from the jury and obtains feedback from the parties as to how the court should respond. Unless all of these elements are accounted for, a reviewing court must acknowledge that the "critical stage" never took place. The elements that render this a critical stage are the presence of the attorneys and the dialog between them and the court. Without that colloquy, the "critical stage" never effectively took place.

One of the cases cited in *Mohsen* was *United States v. Frantz*, 587 F.3d 1028 (9th Cir.

**Defendant Julius Liu's Supplemental Brief in Further Support of Mr. Liu's Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW

6

2009). The *Mohsen* court distinguished that case from *Frantz* on the basis that the latter – just like note no. 1 in the present case – "concerned a note from the jury about evidence that had not been admitted at trial." *Mohsen*, 587 F.3d at 1032.

In *Frantz v. Hazey*, 533 F.3d 724, 731 (9th Cir. 2008), the defendant, who was representing himself, was excluded from an in-chambers conference in which the judge addressed the issue of how to respond to a jury note. During deliberations, the jury asked about a tape of the 911 call in the case and a statement from a witness – neither of these items had been admitted into evidence. *Id.* The court then held a meeting in chambers to determine how to handle the jury note. *Id.* The defendant was excluded from the meeting, but his advisory counsel was present. *Id.* The prosecution agreed to release the tape of the 911 call, but the defendant's advisory counsel refused based on the defendant's express orders. *Id.* During the conference at issue, the court also considered how it would respond to the jury note. *Id.* at 743. The court initially planned to inform the jurors that "The 911 tape was not admitted into evidence and no manager's statement was ever taken." *Id.* Instead, the court ultimately instructed the jurors to "rely on [their] collective recollection of the testimony and the exhibits admitted into evidence." *Id.*

The state appellate court denied the defendant's appeal on the basis that the exclusion of the tape did not affect the outcome of the case. *Id.* at 732. In a federal habeas petition, the defendant raised the issue of his exclusion for the in-chambers conference. *Id.* The court also emphasized the extreme importance of the manner in which the judge responds to a jury's mi-deliberation inquiries and the necessity of defense counsel's (or, in instances of self-

representation, the defendant's) input in the crafting of the judge's response to the jury. *Id.* at 743. The Ninth Circuit determined that, unless the defendant formally agreed to allow advisory counsel to act fully on his behalf, then it was error to exclude the defendant from the meeting even if the advisory attorney accurately presented the defendant's position. *Id.* This is because a violation of the defendant's rights under *Faretta* and *McKaskle* which, like the deprivation of a defendant's right to counsel at a critical stage, is deemed to be "structural and, therefore, not subject to harmless error analysis." *Id.* at 727.

The present case is identical to *Frantz* in many important aspects. There, the jurors were asking about a piece of evidence that was not admitted at trial. Likewise, here, the jury inquired as to the location of a specific zip code that was central to the jury's understanding of the case, but which was never revealed during the trial. This certainly qualifies as a "substantive inquiry about the facts or law." Consequently, the Court's decision as to how to respond was a delicate ordeal and the parties' input was vital to ensuring that the jury accurately interpreted the information.

Even the proposed responses to the jury in *Frantz* were similar to the present case. There, the court chose between two responses both of which suggested that the jurors should examine only the evidence that was admitted. Here, the Court wrote simply that the "geographic location of the zip code is not in evidence." That response was nearly identical to the rejected response of the trial judge in *Frantz*. Moreover, *Frantz* reveals the potential for another response to the inquiry – the Court could have told the jurors in this case, just as the court in *Frantz* chose to do,

that they "must rely on [their] collective recollection of the testimony and the exhibits admitted into evidence."   Additionally, the *Frantz* court chose to conduct a conference to determine whether to release the tape or not.  No conference was held in this case as to whether or not the location of the zip code should be revealed to the jurors in response to their inquiry.

The Court, here, never conducted the "critical stage" of obtaining input and fashioning a response to the jurors' questions.  The critical stage requires certain formalisms in order to be deemed to have taken place.  The particular critical stage contemplated in *Musladin, Mohsen,* and *Frantz* is one which takes place on the record in the courtroom or the judge's chambers with counsel and the defendant present.  In order for appellate review to have any meaning, it is crucial that the trial court make a record of the proceedings.  This is an integral part of any critical stage of the trial or proceedings in general.  The Court in this case failed to conduct the critical stage with the essential trappings necessary to ensure its validity.  This is tantamount to failing to conduct this critical stage at all.

IV.

**THE JURY NOTES AT ISSUE IN THIS CASE REPRESENT "SUBSTANTIVE AND FACTUAL INQUIRIES" MADE BY THE JURORS AND, THEREFORE REPRESENT "CRITICAL STAGES" OF THE PROCEEDINGS.**

At the May 11, 2011 status conference, this Court commented that jury notes pertaining to such comparatively banal matters as what time the jurors would be permitted to leave for the day would not constitute a "critical stage" of the proceedings.  The government, in its opposition papers, also raised this point.  Citing *Mohsen*, the government stated: "Contrary to defendant's

contention, a court's failure to first consult with defendant's counsel prior to answering a jury question or request is not always structural error requiring reversal." (Government's Opposition to Mr. Liu's Motion for Bail Pending Appeal, Pg. 7, fn. 4). Mr. Liu agrees with the Court and the government in this regard.

Mr. Liu does not contest the Court's assertion that there is no structural error where the jury asks about mechanical issues such as scheduling or the location of exhibits. These are routine matters that generally do not require the defendant or his attorney's participation. While it is a good practice for the court to notify counsel even in those situations, a failure to do so would not result in a presumption of prejudice. Instead, the defendant may argue prejudicial error.

The government's citation of the *Mohsen* case is important here. In that case, the judge received a note from the jury indicating that it wanted to see the indictment with the "specific charges." *Mohsen*, 587 F.3d at 1031. The parties previously agreed not to provide the jurors with a copy of the indictment because the verdict form contained all of the relevant information. *Id.* The judge believed the jurors asked for the indictment because the jury had not, at that time, received the verdict form. *Id.* The Ninth Circuit agreed with Mohsen that the judge committed error by not contacting the parties about the note. *Id.* The Ninth Circuit rejected Mohsen's claim that the error was structural, however, and proceeded to subject it to harmless error analysis. *Id.* The court distinguished Mohsen's case from *Musladin*, *Frantz*, and others on the basis that "the communication [in *Mohsen*], by contrast, made no substantive inquiry about the facts or the law."

*Id.* at 1032.   Thus, under Ninth Circuit case law, structural error analysis applies only in circumstances in which the jury makes a substantive inquiry about the facts or the law.  All other jury inquiries handled without the input of defense counsel or without the presence of the defendant are subject to harmless error analysis either under the Due Process clause or fair trial guarantees of the Fifth and Sixth Amendments (i.e. harmless beyond a reasonable doubt) or the statutory right to be present pursuant to Fed. R. Crim. Pro. 43 (i.e. harmless by a preponderance of the evidence).

The three challenged inquiries in the present case were all substantive inquiries related to the facts of the case, and, therefore, the Court's failure to communicate with the defendant and his attorney was structural error under *Mohsen*.  Although the jury's first note was brief – as was the Court's response – it was extremely significant to the factual dispute the jury was charged with resolving.  Had defense counsel been given the opportunity to comment on the note, it very likely would have suggested an alternative response.  The defense may have chosen to request that the court reveal the location of the zip code.  Alternatively, defense counsel may have requested an instruction that the jurors rely upon their collective memories or any number of other possibilities.  By merely stating that the location of the zip code was not in evidence, the jury may have perceived the defense as inadequate.  The jurors may have felt deprived of facts they considered essential to a just resolution of the case.  Clearly, this affected Mr. Liu more profoundly in the eyes of the jury than it did the government.

The other two challenged notes were also direct factual inquires concerning the evidence.

In note no. 3, the jurors asked whether or not a particular track was erroneously repeated in the verdict form. Mr. McNair-Thompson, had he been made aware of the inquiry, could have asked for the judge to advise the jurors to review the evidence (i.e. listen to the CD) and determine whether or not the song was properly reflected as having been copied two times. Note no. 5, in which the jurors asked about one of the numbers corresponding to the songs on the compilation CDs was likewise a factual inquiry. According to the jury note, the number listed for one of the tracks was not to be found on the CDs that were admitted into evidence. This question could have afforded the defense an opportunity to alleviate some of the confusion regarding the various numbers that were discussed during the trial. This jury note is particularly interesting because the jury asked the judge to verify whether a certain "IBM mark" existed. In actuality, the number is referred to as an "IMB mark" which stands for the "inner mirror band" number. (RT, Pg. 446, Ln 2-4). The reason for the jurors' use of the incorrect acronym "IBM" is because the verdict form supplied by the Court also incorrectly used the letters "IBM." This discrepancy reveals the erroneous perception of the Court as well and how that error was propagated through the jury's deliberations. It demonstrates that the jurors were replying upon the Court's verdict form to a greater degree than they were their collective memories of the evidence – a fact that further reveals the degree of importance attached to the Court's communications to the jury. Although the jury reached a verdict several minutes after submitting this note, the Court should have clarified its mistake to the jurors and permitted them to return to their deliberations in light of this new information.

V.

**CASES IN WHICH THE APPELLANT CLAIMED VIOLATIONS OF THE RIGHT TO DUE PROCESS, THE RIGHT TO A FAIR TRIAL, AND THE RIGHT TO BE PRESENT HELP DEFINE THE CHARACTERISTICS OF THIS CRITICAL STAGE, THE NATURE OF A SUBSTANTIVE INQUIRY, AND SUPPORT THE CONTENTIONS THAT MR. LIU WAS DENIED A CRITICAL STAGE OF HIS TRIAL AND THAT THE TRIAL COURT'S ERROR WAS NOT HARMLESS.**

Although there is little direct guidance in the case law explaining the defining characteristics of a "critical stage" in the *Cronic* context, there are, however, numerous cases dealing with alleged violations of a defendant's right to be present under the Due Process clause of the United States Constitution and under Rule 43 of the Federal Rules of Criminal Procedure which elucidate what characteristics are integral to the critical stage analysis. Significantly, all of these cases support Mr. Liu's position that the "critical stage" requires a recorded dialog between the judge and the parties either in open court or in the judge's chambers. None of these cases confronts the notion of structural error, however, because it was either inapplicable or was not raised by the appellants. Such factual scenarios giving rise to a non-*Cronic* approach are those in which the attorney was present, but not the defendant; *See e.g.*, *United States v. Rhodes*, 32 F.3d 867, 874 (4th Cir. 1994); or those in which the inquiry was of a mechanical rather than a substantive nature. *See e.g.*, *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1110 (9th Cir. 2002); *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996).

There are several important principles that emerge when the line of cases dealing structural error is examined alongside the cases dealing with Rule 43 or other constitutional error. First, it is clear that there is no structural error where defense counsel is contacted and given the

Defendant Julius Liu's Supplemental
Brief in Further Support of Mr. Liu's
Bail Pending Appeal
*United States v. Liu;*
Case No. CR-06-00772-JW                    13

opportunity, on the record, to provide input into how the court should respond to a jury note –

irrespective of whether or not the defendant is present.  It is also apparent from *Musladin* and

*Mohsen* that the preparing of a response to a jury question that pertains to the substantive factual

or legal basis of the case *is a critical stage*.   To further contextualize these principles it is

necessary to evaluate the factual scenarios presented in the Rule 43 and Due Process cases.  These

cases are illustrative of the following principles: (1) they shed light on the requirements mandated

in any "critical stage"; (2) they provide examples of prejudicial versus harmless error; and (3)

they provide guidance as to what sorts of communications between the judge and jury qualify as

substantive such that they trigger a structural error or *Cronic* analysis.

Most importantly, every one of these cases demonstrates that the proper response to a

jury's inquiry involves the judge's notifying the defendant and his or her attorney before

responding, meeting with the parties on the record, giving the defendant and his attorney the

opportunity to provide input into how or whether to respond, and giving the defendant and his

attorney the opportunity to object to the actual response before it is delivered.  When a substantive

inquiry is being considered, the proceeding is transmuted into a "critical stage" and the failure to

adhere to these requirements strips the proceeding of its integrity.  In the present case, the judge

acted unilaterally, disregarding the conventions set forth in the cases below.  Because the inquiries

at issue here were substantive, the trial judge denied Mr. Liu the right to the critical stage, the

right to counsel, the right to Due Process of the law, the right to a fair trial, and the right to be

present under Rule 43.  The following cases further illustrate the different types of analyses that

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                              14

must be applied to each of these types of error. As noted above, if the inquiry is substantive and defense counsel is not present, structural error analysis is appropriate. If the defendant's constitutional right to Due Process or to a fair trial are violated, the government must prove that the error was harmless beyond a reasonable doubt. If only the defendant's statutory right to be present is implicated, the government bears the burden of showing that the error was harmless by a preponderance of the evidence.

The First Circuit Court of Appeals' opinion in *United States v. Parent*, 954 F.2d 23 (1st Cir. 1992) is especially instructive here. There the trial court received a note from the jurors asking if they could visually review the instruction that the court gave them on one of the elements. *Id.* at 24. The judge did not contact the attorneys and, instead, merely sent copies of pages from the government's jury instruction request related to the element. *Id.* The First Circuit held that "It cannot be doubted that the district court's handling of the jury note was in error." *Id.* at 24-25. According to First Circuit precedent, a "jury note should customarily 'be shown, or read fully, to counsel,' with counsel thereafter being "given an opportunity to suggest an appropriate rejoinder." *Id.* at 25 (quoting *United States v. Maraj*, 947 F.2d 520, 525 (1st Cir. 1991)). In *Parent*, the court noted that, although the trial judge "stated the law with reasonable fidelity," the fact that the parties were not made aware of the communication rendered the error "presumptively injurious." *Id.* at 25-26. (Quoting *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 82 (1919)). The *Parent* court also focused on the nature of the harm that is likely to emanate from a trial court's failure to engage the parties in an analysis of a jury's mid-deliberation inquiry

and to permit them to contribute to the composition of a response. *Id.* at 26. The First Circuit pointed out that "in such a situation, the real harm is not that the trial judge might have misstated the law – that sort of error, after all, could be meaningfully evaluated after the fact – but that the aggrieved party will have lost the value of the chance: the opportunity to convince the judge that some other or different response would be more appropriate, the circumstances considered. *Id.*

The First Circuit's analysis in *Parent* is directly on point with the facts of the present case. Here, Mr. Liu and his attorney were denied the opportunity to contribute to the preparation of responses to three separate jury notes – all of which prejudicially affected Mr. Liu during the course of the jury's deliberations.

In *Moore v. Knight*, 368 F.3d 936 (7th Cir. 2004), the Seventh Circuit examined a factual situation very similar to the present case in that the court failed to maintain a record. The Seventh Circuit, however, did not review for a violation of the defendant's right to counsel, but instead determined that his due process rights were violated. *Id.* at 943. In that case, the judge received a communication from the jury in which the jury asked factually specific questions related to the defendant's alibi defense. *Id.* at 938. Without obtaining the parties' input and without recording the communication, the judge directed the bailiff to convey the court's response to the jurors. *Id.* at 939. A subsequent evidentiary hearing revealed massive discrepancies related to the jurors' recollection as to what the bailiff told them. *Id.* at 939. The Seventh Circuit ultimately held that the communication, because it was verbal and conveyed via the bailiff, was presumptively prejudicial. *Id.* at 943. Crucially, that court noted that "any discrepancy as to what Judge Smith

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                    16

said to the jury is wholly due to the judge's failure to make a record of the communication as she was obligated to do, and her failure to simultaneously inform the attorneys of the jury's question." *Id* at 944. The court further stated that, "when evaluating the effect of this communication in terms of 'fundamental fairness' to the defendant, we are hesitant to punish [the defendant] for the ambiguities created by a lack of a record." *Id.*

Although there are numerous factual similarities between the present case and *Moore*, the analysis in *Moore* differed because that defendant did not argue the issue of structural error under *Cronic*. Instead, the defendant in *Moore* only argued that his right to Due Process and his right to be present were violated – violations which are subject to harmless error analysis. Mr. Liu, on the other hand, is arguing that, under Ninth Circuit precedent, the preparing of a response to a jury note pertaining to factual or legal issues related to the case is a "critical stage" under *Cronic*[2]. Also, as in *Moore*, the trial court's failure to make a record should not be held against Mr. Liu. Here, the maintenance of a record of the court's dealings with the jury was essential to the occurrence of the critical stage at issue. There was no mention in the record of the specific notes that Mr. Liu is challenging on appeal. Therefore, even if it could be somehow inferred from the record that Judge Ware or his clerk contacted the parties over the phone to ask for input, there is no record as to what was said, or whether the response submitted to the jury accurately reflected the parties' input. To disregard such fundamental elements of that stage as the input from the

---

2  Mr. Liu is also claiming violations of his rights to Due Process and to a fair trial pursuant to the Fifth and Sixth Amendments to the United States Constitution as well as to his statutory right to be present at all stages of the trial pursuant to Fed. R. Crim. Pro. 43.

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                     17

attorneys and the transcribing of the dialog into a reviewable record negates the entire proceeding. In that sense, Mr. Liu was wholly deprived of the critical stage in which appropriate responses to the jurors' factual inquiries were generated. Consequently, there can be no doubt that, because the entire "critical stage" was omitted altogether, Mr. Liu could not possibly have had counsel at such a non-existent critical stage. Lack of counsel at a critical stage is structural error and requires reversal without any showing of prejudice. *Cronic*, 466 U.S. at 659.

In *Rogers v. United States*, 422 U.S. 35, 39 (1975), the United States Supreme Court held that, under Rule 43, a "jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded." The Court concluded, however, that violations of a defendant's right to be present under Rule 43 is subject to harmless error analysis. *Id*. Although this case predates *Cronic*, the Supreme Court provided an example of the basic requirements of how a court must respond to a jury note.

In *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1110 (9th Cir. 2002), the Ninth Circuit stated: "Having found that the delivery of a supplemental jury instruction constitutes a 'critical stage' of a trial for which the defendant's presence (or that of his counsel) is constitutionally required, it is clear that the defendant also had a statutory right to be present under *Fed R. Crim. Pro. 43*." In that case, the court of appeals held that the defendant's right to be present was violated by the trial court's providing of an unsolicited note concerning the possible need to insert an alternate juror into the jury and the potential need to begin deliberations

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                    18

anew if the substitution took place. *Id.* at 1109. The Ninth Circuit ultimately held that, although it was error for the court to contact the jury without involving defendant or defense counsel, the error was harmless because it was given to the jury only an hour after beginning its deliberations and because the court did not attempt in its language to encourage the jurors to reach a premature decision. *Id.* at 1111.

Similarly, in *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996), the Ninth Circuit held that "By answering jury questions without giving the defendants the opportunity to be heard, the district judge violated *Rule 43.*" In that case, during its deliberations, the jury sent back a note requesting to view a video tape that had been played during the trial. *Id.* at 1071. The judge responded to the note without consulting the defendant or the attorneys. *Id.* Later that day, the judge notified the parties that he had received and responded to "a few notes." *Id.* The Court of Appeals, after finding that the trial judge committed plain error, refused to reverse because the defendant's attorney did not object after being informed in open court of the ex parte communication. *Id.* at 1073.

In *United States v. Rhodes*, 32 F.3d 867, 874 (4th Cir. 1994), the fourth Circuit held that the trial court's decision to exclude the defendant from an in-chambers discussion at which government and defense counsel were present regarding a "substantive question with respect to its instructions sent out by a deliberating jury" was plain error. Importantly, the Court of Appeals in that case was able to review a transcript of the in-chambers conference. *Id.* at 869-70. Upon reviewing that transcript, the court held that the error was harmless because the answer provided

by the court was the one which the defendant's counsel "urged the district court to use." *Id.* at 874.

Unfortunately, a reviewing court in this case does not have a transcript to review as did the Fourth Circuit in *Rhodes,* nor was any record made after the fact as in *Throckmorton.* Here, no indication was ever made on the record regarding the jury's inquiries save for the filing of the jury notes in the docket after the conclusion of the trial. The lack of any record militates strongly in favor of a finding of prejudicial error in this case. There is no way to confirm whether or not Mr. Liu's attorney was actually notified of these inquiries, what the Court told Mr. McNair-Thompson, whether or not Mr. McNair-Thompson was given the opportunity to review the Court's response, and whether that response comported with any objections made by Mr. McNair-Thompson at that time.

Whether this case is analyzed under *Cronic* or Rule 43, the result is the same. Under a structural error or *Cronic* approach, a reviewing court must presume prejudice where the trial court fails to consult defense counsel upon the receipt of an inquiry from a deliberating jury if that inquiry relates to a substantive factual or legal issue. The inquiries at issue here all fall into that category and, therefore, the trial court's failure to consult Mr. McNair-Thompson was structural error. Mr. Liu further contends that the trial court's failure to hold proceedings following its receipt of the notes amounted to more than just the deprivation of counsel, but was, instead, a complete deprivation of the critical stage itself. Under all of the cases cited above, the basic elements inherent in this critical stage involve a colloquy on the record with counsel and the

defendant in which the defendant and the attorney are permitted to argue to the court the most appropriate manner of response. There are no cases here that portray as optional any of these elements. Indeed, as the cases show, they are intrinsic to the proceeding itself.

Moreover, under the Due Process and Rule 43 analyses, it is clear that a court commits error when it conducts such proceedings without the presence of the defendant. Under this line of cases, a reviewing court does not presume error, but applies the applicable harmless error standard. Indeed, under all of the cases cited above, Mr. Liu's case presents what must undeniably be described as plain error. Mr. Liu's right to be present at all stages of trial was violated by the Court's failure to permit him and his attorney to address the three challenged inquiries. There is no indication that Mr. Liu waived his right to be personally present or to have his attorney be present for any discussion related to the creation of a statement in response to the jury's questions. In the present case, the error Mr. Liu is claiming was extremely prejudicial. Each of the inquiries related to factual issues inherent in the case. Mr. Liu's position with respect to the error in this case is arguable under either of the rubrics presented in the case law, and, therefore, this Court should grant his motion for bail pending appeal.

1

## VI.

2

### THIS COURT LACKS JURISDICTION TO RESOLVE FACTUAL DISPUTES RELATED TO THE TRIAL RECORD OF THIS CASE AND, THEREFORE, NO ADDITIONAL EVIDENCE RELATED TO THE TRIAL COURT'S RESPONSE TO THE JURY NOTES SHOULD BE PERMITTED AT THIS TIME.

3

4

5

A.   The filing of a notice of appeal with the Ninth Circuit divested this Court of jurisdiction.

6

7
Mr. Liu filed a notice of appeal with the Ninth Circuit Court of Appeals on December 22,

8
2011.  It is a general principle that "a federal district court and a federal court of appeals should

9
not attempt to assert jurisdiction over a case simultaneously."  *Griggs et al. v. Provident*

10
*Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  "The filing of a notice of appeal is an event of

11

12
jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district

13
court of its control over those aspects of the case involved in the appeal."  *Id.*  "When a proper

14
notice of appeal has been timely filed, the general rule is that jurisdiction over any matters

15
involved in the appeal is immediately transferred from the district court to the court of appeals."

16

17
*In re Thorp*, 655 F.2d 997, 998 (9th Cir. 1981).  "The district court is divested of authority to

18
proceed further with respect to such matters, except in aid of the appeal or to correct clerical

19
mistakes, or in aid of execution of a judgment that has not been superseded, until the mandate has

20
been issued by the court of appeals."  *Id.*  Appeal from a final judgment vests the court of appeals

21
with general jurisdiction over the entire case. *In re Consolidated Properties, Inc.*, 136 B.R.261,

22
266 (Dist. Nev. 1991).

23

24
Since the time the Mr. Liu filed his notice of appeal, the court of appeals has maintained

25

26
**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
27
**Bail Pending Appeal**
*United States v. Liu*;
28
Case No. CR-06-00772-JW                           22

jurisdiction over this case. While this Court clearly has the authority to rule on Mr. Liu's motion for bail pending appeal, it lacks the authority to take further evidence related to any aspect of the trial that is implicated in the appeal. By directing Mr. Liu and his attorneys to contact Mr. McNair-Thompson and obtain from him a factual declaration directly related to an issue on appeal, this Court overstepped its jurisdictional authority. The record related to Mr. Liu's trial is complete. *See Fed. R. App. Proc. 10(a)* ("The following items constitute the record on appeal: (1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk."). It is now incumbent upon the court of appeals to draw any logical inferences from the lack of a record indicating the trial judge's course of action in response to the receipt of the notes.

Moreover, the fact that 18 U.S.C. §3145 and Fed. Rule. App. Pro. 9 provide a distinct and alternate mechanism for appellate review of detention order adds further support to the notion that this Court is not permitted to supplement the record related to the issues raised in Mr. Liu's appeal. By statute, the ability to appeal a detention order is made separate from all other aspects of an appeal from the final judgment. The manner in which these two processes are segregated demonstrates that the jurisdiction afforded this Court to determine whether or not Mr. Liu should be granted bail is limited in such a way that this Court may not interfere with the record related to the issues on appeal. Consequently, this Court should address Mr. Liu's motion based upon the record as it currently stands. Although Mr. Liu is sympathetic to the Court's inability to resolve the apparent factual dispute between the parties, it is currently not within this Court's

power to do so.  Should the court of appeals deem it necessary to supplement the record prior to rendering a decision on this issue, it may, on its own initiative, order the case to be remanded for a limited evidentiary hearing.

Finally, as noted above, it is uncontested that district courts retain jurisdiction over the case for certain limited purposes, including when the district court is "acting in aid of the appeal." This phrase, however, does not provide this Court with the authority to alter the contents of the record on appeal by taking additional evidence. In *Jago v. District Court*, 570 F.2d 618, 619 (6th Cir. 1978), the Sixth Circuit reviewed a case in which the state challenged the district court's decision to release a defendant pending resolution of his habeas petition.  The state argued that, because a notice of appeal had been filed, the district judge "was without power to act." *Id.* The Sixth Circuit, while acknowledging the limited jurisdiction of the district court following an appropriately filed notice of appeal, concluded that "*if the question of his custody does not affect the merits of the appeal itself*, it is not unreasonable to believe that there is a retained power in the district court to aid in the appeal by undertaking that responsibility, at least in the absence of its exercise by an appellate court." *Id.* at 622 (emphasis added).

In the present case, Mr. Liu is obviously not challenging this Court's authority to rule on the merits of his motion for bail pending appeal.  But this Court's attempt to supplement the record while the appeal is pending does "affect the merits of the appeal itself."  Consequently, this Court should make its decision based on the state of the record as it currently exists and leave to the Ninth Circuit any decision to order the acquisition of supplemental evidence.

B.   <u>The government's assertion in its opposition brief that the trial judge contacted the attorneys following its receipt of the jury notes should be stricken because those assertions are not supported by the record.</u>

In its opposition to Mr. Liu's motion for bail pending appeal, the government asserts that the trial judge contacted the parties prior to answering the jury's interrogatories. The government states that, "The Court presented all of the jury notes to both government and defense counsel and provided both government and defense counsel with an opportunity to comment on each of the jury notes." (Government's Opposition, Docket 152, Pg. 7). The record in this case belies the government's unsupported claim. Indeed, the government's brief fails to cite to any part of the record indicating that such a dialog between the Court and the parties ever took place. Moreover, it is not clear whether government counsel's claim is based upon his personal knowledge that Mr. McNair-Thompson was contacted or whether it is based upon hearsay. Government counsel's statement was not made under oath and he offered no factual support tending to support the veracity of the statement, and Mr. Liu was not afforded his Sixth Amendment right to confront the witnesses against him. Finally, the government's assertion suffers from the same defect as would a declaration from Mr. Liu's trial counsel: this Court has no jurisdiction to consider it after a notice of appeal has been filed. The quoted statement, therefore, should be removed from the record. The court of appeals has jurisdiction over the substantive issues raised by Mr. Liu and the government cannot unilaterally supplement the factual record to suit its needs while the case is pending in the court of appeals.

**Defendant Julius Liu's Supplemental
Brief in Further Support of Mr. Liu's
Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW          25

C.   <u>If this Court, over Mr. Liu's objection, accepts additional evidence in order to resolve what it perceives is a factual discrepancy, it should order a full evidentiary hearing so that Mr. Liu can properly cross-examine the witnesses to the incident.</u>

At the May 11, 2011 status conference, this Court requested that defense counsel obtain a declaration from Mr. Liu's trial attorney, Mr. McNair-Thompson in order to resolve the factual dispute between the parties.

The trial record is already complete, however, and it is not the role of the parties to go back to the trial court to patch up inconsistencies and errors that have been brought to light during pending appellate proceedings. This sort of revisionist approach eviscerates the entire trial and appeals processes. The record is complete for purposes of Mr. Liu's appeal and neither this Court nor either of the parties should be permitted to alter the record in a substantive manner.

Additionally, any further modifications would retard the efficient disposition of Mr. Liu's appeal. Mr. Liu cannot submit his opening brief and pursue his appeal if this Court insists on adding to the record at this late stage. To do so could limit his ability to fully raise and argue the issues. Therefore, any additional evidence at this point runs contrary to concerns of public policy and judicial economy.

This is especially true with respect to the requested declaration from Mr. McNair-Thompson. Mr. McNair-Thompson's memory of the proceedings, as well as government counsel's, has been eroded by the passage of time and tainted by the nature of the arguments presented here. Clearly some dialog did take place on the record related to jury notes 2 and 4. While the attorneys and the court may generally recall some discussion of the notes, it is entirely

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    26

possible that they do not recall the specifics and may confuse the discussion of the unchallenged jury notes nos. 2 and 4 with that of nos. 1, 3, and 5 which are the subject of this argument. The only way to effectively ascertain the extent to which these notes were discussed with the attorneys is to hold a full evidentiary hearing on the issue. At such a hearing, it would be necessary to have both Mr. McNair-Thompson and Mr. Chew available for examination and cross-examination[3].

In *Moore v. Knight*, 368 F.3d 936, 938 (7th Cir. 2004), the Seventh Circuit Court of Appeals confronted a similar situation in which the judge failed to make any record of her response to the jury's mid-del iberation request for clarification of the facts of the case. Reviewing the record of a post-trial evidentiary hearing on the matter, the Seventh Circuit found it relevant that the jurors and the bailiff had conflicting recollections of the substance of the judge's communication to the jury. *Id.* at 942.

Here, there may also be such testimonial discrepancies that would affect the ability of the Court and the parties to obtain an accurate picture of what took place following the submission of the jury notes to the judge. These discrepancies cannot be recognized through the creation of a declaration by one of the parties. Instead, if this Court wishes to pursue this factual dispute further, it should order a full evidentiary hearing.

---

3 This would, of course, necessitate that Mr. Chew remain outside the courtroom during the examination of Mr. McNair-Thompson, and vice versa. To allow one to hear the testimony of the other could impermissibly color their respective recollections of the events.

**Defendant Julius Liu's Supplemental**
**Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                    27

## VII.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Liu's motion for bail pending appeal without supplementing the record with additional declarations or evidentiary hearings.

Respectfully submitted,

Dated: June 2, 2011                      **BAY AREA CRIMINAL LAWYERS, PC**

By: /s/David J. Cohen
    DAVID J. COHEN, ESQ.

Attorneys for Defendant **Julius Chow Lieh Liu**

**Defendant Julius Liu's Supplemental
Brief in Further Support of Mr. Liu's
Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW          28