DAVID J. COHEN, ESQ.
California Bar No. 145748
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Julius Chow Lieh Liu**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-06-00772-JW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIUS CHOW LIEH LIU, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT JULIUS LIU'S SUPPLEMENTAL REPLY BRIEF IN FURTHER
SUPPORT OF MR. LIU'S MOTION FOR BAIL PENDING APPEAL**

## TABLE OF CONTENTS

I.    THE GOVERNMENT CONCEDES THAT THE PREPARING
      OF A RESPONSE TO A JURY NOTED INQUIRY RELATED
      TO THE FACTUAL OR LEGAL ASPECTS OF THE CASE
      IS A CRITICAL STAGE AND THE ABSENCE OF
      COUNSEL AT SUCH A CRITICAL STAGE IS STRUCTURAL
      ERROR  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   THE MINUTE ENTRIES AND DECLARATIONS PROVIDED
      BY THE GOVERNMENT ARE INCONCLUSIVE AND
      UNRELIABLE AND SHOULD NOT BE CONSIDERED BY
      THIS COURT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      A.    The minute entries do not prove that the trial court
            conducted any discussion related to Jury Notes Nos.
            1, 3 and 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      B.    The declarations by Mr. Paxton and Agent Hellman
            reveal inconsistencies that betray the inherent
            unreliability of the documents . . . . . . . . . . . . . . . . . . . . . . . .  5

III.  THE GOVERNMENT'S ARGUMENTS THAT THIS COURT
      MAY ADMIT NEW EVIDENCE TO RESOLVE THE PENDING
      MOTION, TO CLARIFY THE RECORD PURSUANT TO
      RULE 10, OR TO AID IN THE APPEAL ARE ALL
      INCORRECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

IV.   AS THE GOVERNMENT CONCEDES, JUDGE WARE IS
      ONE OF THE PERCIPIENT WITNESSES RELATED TO
      THIS ISSUE, THEREFORE, IT WOULD BE ENTIRELY
      INAPPROPRIATE FOR JUDGE WARE TO RESUME
      AUTHORITY OVER THIS CASE IN RESPONSE TO THIS
      FACTUAL DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

-i-

1

## **TABLE OF AUTHORITIES**

2

**Case Law**                                                                 **Page(s)**

3

4
*Blaine v. Whirlpool Corp.,*
    891 F.2d 203, 204 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5

6
*Crawford v. Washington,*
    541 U.S. 36, 62-63 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

7

8
*Dickerson v. Alabama,*
    667 F.2d 1364, 1367 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9

10
*In re. Grand Jury Proceedings Under Seal,*
    947 F.2d 1188, 1189 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11
*In re. Silberkraus,*
    336 F.3d 864, 869 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

12

13
*Jago v. District Court,*
    570 F.2d 618, 622 (6th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

14

15
*Griggs et. al. v. Provident Consumer Discount Co.,*
    459 U.S. 56, 58 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

17
*Melendez-Diaz v. Massachusetts,*
    129 S.Ct 2527, 2538 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

18

19
*Musladin v. Lamarque,*
    555 F.3d 830, 842 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20

21
*Pratti v. United States,*
    350 F.2d 290 (9th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22
*United States v. Bennet,*
    161 F.3d 171, 185-87 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23

24
*United States v. Handy,*
    761 F.2d 1279, 1281 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

25

26
*United States v. Mohsen,*
    587 F.2d 1028, 1032 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

27

28

I.

**THE GOVERNMENT CONCEDES THAT THE PREPARING OF A RESPONSE TO A JURY NOTE INQUIRY RELATED TO THE FACTUAL OR LEGAL ASPECTS OF THE CASE IS A CRITICAL STAGE AND THE ABSENCE OF COUNSEL AT SUCH A CRITICAL STAGE IS STRUCTURAL ERROR**

The government does not contest Mr. Liu's position that the preparing of a response to the jury notes is a "critical stage" under Ninth Circuit law and that the denial of the right to counsel at a "critical stage" is structural error under *Cronic*. *See Musladin v. Lamarque*, 555 F.3d 830, 842 (9th Cir. 2009). Instead, the government's sole position is that the requisite dialog between the trial court and the parties took place. The government also concedes that the notes that Mr. Liu is challenging in this case – Jury Notes Nos. 1, 3 and 5 – are inquiries related to factual and legal elements of the case. As discussed in *United States v. Mohsen,* 587 F.2d 1028, 1032 (9th Cir. 2009), the formulation of a response to such an inquiry is a "critical stage."

Because the government has not taken the position – either in court or in its supplemental brief – that the court's preparation of a response to the notes was a critical stage, it should be precluded from taking this position at the June 30, 2011 hearing. Mr. Liu has endeavored to present the government and this Court with a comprehensive outline of its position. The government, after presenting essentially only a single argument in response to Mr. Liu's brief, should not be permitted to raise new arguments for the first time at the hearing on June 30, 2011.

Defendant Julius Liu's Supplemental
Reply Brief in Further Support of Mr. Liu's
Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                                    1

## II.

## THE MINUTE ENTRIES AND DECLARATIONS PROVIDED BY THE GOVERNMENT ARE INCONCLUSIVE AND UNRELIABLE AND SHOULD NOT BE CONSIDERED BY THIS COURT

In response to this Court's request for additional documentation related to the trial court's handling of the challenged jury notes, the government submitted four documents: the Criminal Minutes for June 17, 2010 and June 18, 2010, a declaration from former Special Assistant United States Attorney David M. Paxton, and a declaration from FBI Special Agent Scott Hellman. The government contends that these documents conclusively show that the trial judge in this case, Judge James Ware, upon receiving each of the five notes from the jurors, brought the parties into the courtroom where they discussed the inquiries and the proposed responses to the notes. The documents that the government relies upon, however, do nothing to invalidate Mr. Liu's argument that he was deprived of his right to counsel at the time the court prepared responses to the jury's questions.

    A.    The minute entries do not prove that the trial court conducted any discussion related to Jury Notes Nos. 1, 3 and 5.

The government submitted the minutes from June 17, 2010 and June 18, 2010 in support of its position that the Court heard argument related to the jury notes. The minutes do not, however, support the government's contentions.

First, in its supplemental brief, the government provides a list of the relevant entries in the minutes to support its claim that "The trial court's criminal minutes from June 17, 2010 and June 18, 2010 confirm that Judge Ware held off-the-record hearings with the parties."

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW        2

(Government's Memorandum in Opposition, Docket #165, Pg. 6).  Amusingly the government omits the fact that the minutes reveal that no discussion, on or off the record, ever took place with respect to Jury Note No. 5.  The jury submitted Note No. 5 at 3:15 p.m. on June 18, 2010, however, the minutes are silent as to this.  Instead, the minutes show that, at 3:37 p.m., the court summoned the jury for the verdict.  Unlike each of the previous four notes, the trial court did not even provide the jury with a response to Jury Note No. 5.  This record reveals conclusively that Jury Note No. 5 was completely ignored.

Jury Note No. 3 is similarly problematic.  Contrary to the government's claim, the minutes do not reflect that the court conducted a hearing related to that note.  Instead, the minutes merely state: "Jury Note No. 3 re typographical error to verdict form.  In the interim, a revised verdict form is submitted to correct the error."  It is not clear from the record who made the determination that this really was a typographical error and whether the parties gave any input to the court related to the supposed "error."  Indeed, Mr. McNair-Thompson and Mr. Liu may have opted for an entirely different response to the note and should have been informed.  In any event, it seems clear from the minutes that, as with Note No. 5, the court conducted no hearing on this note.

The minute entry at 3:05 p.m. on June 17, 2010 reads as follows: "Hearing off the record re Jury Note No. 1."  The government contends that this entry in the minutes proves that the trial court conducted a hearing with the attorneys and the defendant present.  The government's position is thoroughly untenable for several reasons.  The mere fact that the courtroom clerk wrote that a "hearing" took place "off the record" does not provide any indication as to the nature of the

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                        3

so-called "hearing." The word "hearing" is not a magic word. The minute entry does not clarify whether, in this instance, "hearing" meant that the proceeding took place in chambers or in the courtroom or over the phone. In short, the fact that there is a minute entry with the word "hearing" signifies nothing about the nature or participants in the hearing.

In addition to failing to describe the nature of the hearing, the minutes do not show that Mr. Liu's attorney or even government counsel were present for the "off the record" hearing related to Note No. 1. As both parties have pointed out, Judge Ware established his policy regarding juror inquiries at the outset of the deliberations process. He stated that, upon receiving a note he would come into the courtroom to discuss it. "If you're not here," Judge Ware continued, "I take that to be you're waiving your right to be notified of what the question is and how the court proposes to respond to it." This statement by Judge Ware creates the likelihood that Judge Ware conducted the "off the record" hearing in question outside the presence of one or both of the attorneys.

This theory is further supported by the timing of the notes in relation to the "off the record" hearing and the court's subsequent response. Mr. McNair-Thompson anticipated the problematic nature of the trial judge's directive to be present in court during deliberations and specifically inquired whether he could wait at a local McDonald's and be in the courtroom on five minutes' notice. The jury submitted Note 1 at 3:02 p.m. The minutes provided by the government show that the court conducted a five minute "off the record" hearing pertaining to that note at 3:05 p.m. before sending in a response to the jury at 3:10 p.m. The timing of this

sequence of events implies that, even though the court may have conducted a hearing, Mr. McNair-Thompson was not yet in the courtroom because he informed the court that he would be available on five minutes' notice and the entire process took a maximum of only 8 minutes.

The court made a decision to deal with Jury Note No. 1 "off the record." This decision lends support to Mr. Liu's argument that his trial attorney was absent for the preparation of the court's response to the note. It would be nonsensical for the trial judge to hold a "hearing" with all of the participants present in the courtroom and then choose not to make a record of it. This decision to go "off the record" at a "critical stage" in the trial demonstrates that this was not a "hearing" in the ordinary sense of the word. The court's warning that it would proceed without counsel, the lack of a transcript, the obscure reference to an "off the record hearing" in the minutes, and the swiftness of the trial judge's handwritten response to the note all signify that the court failed to give Mr. Liu and his attorney the opportunity to provide input related to the note. The record, therefore, fully supports Mr. Liu's argument that his attorney was not present for any discussions related to Jury Notes Nos. 1, 3, and 5.

B.    The declarations by Mr. Paxton and Agent Hellman reveal inconsistencies that betray the inherent unreliability of the documents.

To buttress its claim that the trial court conducted the requisite discussions with counsel in response to the notes, the government, over Mr. Liu's objection, now attempts to supplement the record with two declarations[1]. Both of these declarations reveal substantial deficiencies and

---

1 Without consulting Mr. Liu's current counsel and without waiting for this Court to decide the jurisdictional and evidentiary issues that Mr. Liu raised in his supplemental brief, the government apparently also attempted to contact Mr. McNair-Thompson. Despite the questionable ethical propriety

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW

5

call into question either the declarants' ability to recall the past or their ethics.

Agent Hellman's declaration is troubling to say the least. In the most general language he states:

> The jury presented five notes to the Court during the jury's deliberations. Judge James Ware presented each note to the attorneys for the parties for review and comment. Only after each party reviewed and commented on each of the notes did Judge Ware formulate a response to the notes.

(Declaration of Agent Hellman, Pg. 2). This statement betrays the specious nature of the declaration. The minutes clearly show that *no hearing was conducted related to Notes Nos. 3 and 5.* For that reason alone, this declaration should be stricken. Agent Hellman either mistakenly believed that five notes were discussed or else he simply counted the number of notes and made the unsupportable statement that all five notes were discussed. At best, this declaration represents a failed memory contorted to meet the current needs of the prosecution. At worst, it implies arguably perjurious conduct.

Mr. Paxton's declaration, because it lacks specificity, admits of the possibility that the court did not discuss certain notes with the parties. First, Mr. Paxton never addresses how many notes were discussed with the parties. It is uncontroverted that two of the notes – Notes Nos. 2 and 4 – were discussed adequately with the parties and the dialog related to those notes was transcribed in the record. Mr. Liu does not challenge the government's contention that there were

---

of government counsel contacting Mr. Liu's former attorney in an effort to thwart Mr. Liu's motion for bail pending appeal, Mr. McNair-Thompson refused to provide a declaration on the basis that it would contravene his duty of loyalty to Mr. Liu. Mr. Chew, himself, did not attempt to provide his own declaration as to the court's handling of the jury notes on June 17, 2010 and June 18, 2010.

discussions related to those two particular notes.  Mr. Paxton goes on to state, "it is my recollection that all of these questions [from the jury] were essentially handled using the same procedure."  In describing that procedure, Mr. Paxton declares that the judge would call the parties – including Mr. Thompson – into the courtroom, read the question to the parties and then conduct "an informal, 'off the record' discussion about how the Court should respond to the jury question." It is notable that, in his declaration, Mr. Paxton never claims that the court utilized this process with all five notes, instead he states only that he is "unaware of any jury questions that were submitted to the Court that were not handled in this manner."  The equivocality of this declaration reveals its inadequacy.  Mr. Paxton's declaration cannot support the government's argument that each and every one the jury notes were discussed according to the procedure articulated by Mr. Paxton.  In fact, the overarching message of his declaration is that, for those jury notes that were discussed and for which Mr. Paxton was present for the discussion, the court followed the procedure outlined above.  It is also important to point out that, although Mr. Paxton only referred to "informal, off the record" discussions, clearly there were at least two discussions (i.e. related to Notes Nos. 2 and 4) that were on the record indicating that he may simply have been mixing up those hearings with the non-existent hearings related to Notes Nos. 1, 3 and 5. This suggests that, like Agent Hellman, Mr. Paxton's memory has been, intentionally or unintentionally, altered to comport with the documentation that currently exists, namely, the jury notes in the record (Docket #99) and the Criminal Minutes (Docket #93 and 96).

The jury deliberations and resultant notes took place approximately one year prior to the

declarations submitted by the government. Since that time, the actors involved in this case have devoted their attention to numerous other cases. It is ludicrous to now claim that they can recall, one year later, the exact circumstances of these jury notes (i.e. how many of the notes were discussed, what was the nature of the discussion, were all of the attorneys present, etc.). Even assuming that the declarants here made their best good faith attempt to recall the facts and present them in the most truthful manner possible, it must be conceded that the memory of the specific nature of these events is, at this time, dim. Indeed, this is the exact reason that we implore our courts to maintain strict adherence to the practice of making a record of everything that takes place in the courtroom. The significance of many of the events that take place during the course of a criminal case, while obscure or seemingly inconsequential at the time, later becomes clear when the case is being reviewed on appeal.

**III.**

**THE GOVERNMENT'S ARGUMENTS THAT THIS COURT MAY ADMIT NEW EVIDENCE TO RESOLVE THE PENDING MOTION, TO CLARIFY THE RECORD PURSUANT TO RULE 10, OR TO AID IN THE APPEAL ARE ALL INCORRECT**

"A federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs et al. v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The government does not challenge this axiomatic jurisdictional principle; instead, it attempts to contort this case so that it fits within an exception. The exceptions that the government relies upon, however, are clearly incompatible with the facts of this case.

**Defendant Julius Liu's Supplemental
Reply Brief in Further Support of Mr. Liu's
Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                         8

The government offers three theories that it contends allow this Court to accept into evidence the declarations it has submitted.  First, the government argues that this Court may accept additional evidence as needed to resolve the motion for bail pending appeal that is currently before it.  The government cites *Pratti v. United States*, 350 F.2d 290 (9th Cir. 1965) in support of this proposition.  The government's reliance on *Pratti* is misplaced.  That case stands for the proposition that the district court has the jurisdictional authority to hear a defendant's motion for bail pending appeal while an appeal is pending in the Court of appeals: "A district court has jurisdiction to grant bail pending appeal." *Id.* at 291.  Mr. Liu does not contest this Court's authority to render a decision as to his bail status pending the resolution of his appeal. In its brief, the government further quotes language from the case: "Factual issues are usually involved in passing upon such a motion and such issues can best be initially determined in the district court." *Id.*  The government's citation, however, takes this language out of context.  It is true that the district court has a better vantage point from which to make factual determinations uniquely and independently relevant to a motion for bail pending appeal (i.e. whether the defendant is a flight risk or a danger to the community).  Again, Mr. Liu has never taken the position that this Court is without the authority to make such factual determinations that are exclusive to the resolution of this motion.  That does not, however, imbue the Court with the jurisdiction to take new evidence that would affect the issues that Mr. Liu is planning to raise on appeal.  That would be tantamount to allowing the district court to effectively decide the appeal – a notion that is disposed of by *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir.

Defendant Julius Liu's Supplemental
Reply Brief in Further Support of Mr. Liu's
Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW

9

1985)(Rejecting the notion that a defendant must prove his case definitively to the trial court before being granted bail: "requiring a defendant to demonstrate to the district court that its ruling is likely to result in reversal is tantamount to requiring the district court to certify that its ruling was erroneous."). The *Pratti* case does not stand for the proposition that the district court may, in deciding the motion for bail pending appeal, preemptively accept additional factual evidence and render a factual determination about an arguable issue that is to be presented on appeal.

Mr. Liu's position is that the record stands as it does, and that the record indicates that Mr. Liu's attorney was never contacted by the trial court regarding three of the jury notes. The trial judge apparently made an intentional decision not to record the events that took place following the submission by the jury of three jury notes. The formulation of a response to those notes is a "critical stage" and requires that the trial court adhere to the strictures of procedure intrinsic to maintaining an individual's rights during such "critical stages." It is clear from the record that the trial court failed to do this. If the government believes there is any obscurity in the record, it may and should argue this point to the Ninth Circuit Court of Appeals. That court will make a determination as to what the record actually means. This Court's role in confronting the motion for bail pending appeal, therefore, is to determine whether or not, based on the record, Mr. Liu has presented a "substantial question of law or fact likely to result in reversal." 18 U.S.C. § 3143(b)(1). The depth of analysis in the papers submitted by the parties clearly demonstrates that Mr. Liu has done so.

Although neither the government nor the Court invoked Rule 10 at the May 11, 2011

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                              10

hearing, the government now asks this Court to accept its additional evidence pursuant to Rule 10 of the Federal Rules of Appellate Procedure. The government specifically argues that Rule 10 ( c) grants this Court the power to "complete an otherwise incomplete factual record." (Government's Memorandum in Opposition, Pg. 4). That section, however, by its very language limits its application to instances in which the *appellant* seeks to supplement the record related to proceedings that "were not recorded or when a transcript is not available." The government further replies upon Rule 10(e). That subsection affords the district court the power to correct or modify the record in instances when a "difference arises about whether the record truly discloses what occurred in district court." This rule does not allow for the inclusion of new substantive evidence while review is pending in the Court of Appeals, however. The failure to transcribe the proceedings during the deliberations was not of an accidental nature. Rather, it was a deliberate decision on the part of the court. Rule 10(e) is designed to permit a court to recreate a record following some incidental or ministerial oversight. As such, it is inapplicable to the present case.

Here, the record is clear as it stands and there is no difference as to what happened in the district court. The minutes submitted by the government actually support Mr. Liu's contention that certain notes were never discussed with counsel because they clearly show that no hearing was conducted in response to Jury Notes Nos. 3 and 5.

Because neither the government nor the Court referred to Rule 10 at the time the Court ordered additional briefing, Mr. Liu takes the position that Rule 10 is not the procedural vehicle upon which this Court meant to rely. Even if Rule 10 permits modification of the record, that

determination should be made by the Court of Appeals. *See Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir. 1982)("While federal appellate courts do not often supplement the record on appeal with evidence not reviewed by the court below, it is clear that the authority to do so exists. Whether an appellate record should be supplemented under the particular circumstances of the case is a matter left to the discretion of the federal courts of appeals.")(internal citations omitted). On the other hand, if this Court specifically determines that Rule 10 does encompass this sort of factual finding (a determination that Mr. Liu will contest) then it must conduct a full evidentiary hearing so as to provide the Court of Appeals with a "substantially verbatim account of the proceedings." *See United States v. Selva*, 546 F.2d 1173, 1174-75 (5th Cir.1977)(Ordering the district court to attempt to reconstruct a "substantially verbatim account of the record" and holding that, if the district court is unable to so reconstruct the record, it may order a new trial.)

Finally, the government argues that this Court retains jurisdiction to "act in aid of the appeal." While this is generally an uncontroverted proposition, as Mr. Liu argued previously, a district court may not act, even if "in aid of the appeal," if doing so would "affect the merits of the appeal itself." *See Jago v. District Court*, 570 F.2d 618, 622 (6th Cir. 1978). It cannot be argued that the receiving of additional evidence in the form of either unsupported factual declarations or additional testimony pertaining to an issue that Mr. Liu intends to raise on appeal would not "affect the merits of the appeal." The government argues that *Jago* is distinguishable because the Sixth Circuit limited its review to the "narrow issue" with which it was confronted. (Government Memorandum in Opposition, Pg. 6, n. 1). Nothing in that court's opinion indicates

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                    12

this limitation, however. Indeed, the language employed by the Court of Appeals in *Jago* suggests that it is enunciating a general proposition related to what it means for a district court to act "in aid of the appeal": "Certainly if the physical welfare of the petitioner is the responsibility of the district court during the appeal and if the question of his custody does not affect the merits of the appeal itself, it is not unreasonable to believe that there is a retained power in the district court to aid in the appeal by undertaking that responsibility, at least in the absence of its exercise by an appropriate court." *Id.*

The government cites several cases in support of its argument that "a district court may act to assist the appeal by completing the record for appellate review." (Government's Memorandum in Opposition, Pg. 5). The government, however, provides no contextual case analysis comparing the cited authority to the present case. Upon examination it becomes abundantly clear that none of the cited cases actually support the government's argument, and, in fact, they run contrary to it. Like the *Jago* court, the opinions of the courts cited by the government all take into account the impact that the district court's action has on the appeal itself. The actions of the district courts at issue in these cases are all determined on review to have no prejudicial effect on the appellate issues. Moreover, none of the cited cases deal with the reopening of the record to add new evidence in the manner of the present case.

The government only cites one Ninth Circuit case, *In re Silberkraus*, 336 F.3d 864, 869 (9th Cir. 2003). That case, however, bears no factual similarity to the present case. In *Silberkraus*, the appellant challenged the inclusion of a written opinion by the bankruptcy court in which that

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                    13

court detailed its findings. *Id.* The appellant filed the notice of appeal on September 29, 2000.

*Id.* The bankruptcy court issued its written opinion approximately two weeks later on October

12, 2000. *Id.* The Ninth Circuit made it clear that its rationale for permitting the inclusion of the

written opinion into the record was the fact that the bankruptcy courts "written findings of fact

and conclusions of law . . . were consistent with the [bankruptcy] court's oral findings." *Id*

Thus, the *Silberkraus* decision reflects a far different conception of when it is appropriate

for a lower court to admit additional documents into the record following the filing of a notice

of appeal. In the present case, Mr. Liu filed the notice of appeal on December 22, 2010. This

Court expressed no interest in clarifying the record through the admission of additional evidence

until May 11, 2011 – nearly six months later. At that time, Mr. Liu's attorneys were already

deeply involved in the writing of the opening brief for the appeal and did not anticipate that the

record would be altered in any way that would affect the issues being raised on review[2]. Most

---

2  The government argues that, because Mr. Liu's opening brief has not yet been filed, this Court's decision to admit new evidence cannot affect the issues Mr. Liu is presenting on appeal because those issues "ha[ve] not yet been definitely determined." (Government's Memorandum in Opposition, Pg. 4). The government further suggests that the filing of a motion for an extension of time to file the opening brief supports this argument. This is a ridiculous proposition. Mr. Liu submitted a draft of his opening brief in conjunction with his motion for bail pending appeal. The issues were well outlined in the motion and thoroughly analyzed with legal authority in the draft of the opening brief. The issues Mr. Liu intends to raise on appeal are, for the most part, well-settled. At the time he submitted his motion for bail pending appeal, Mr. Liu indicated his intention to file the opening brief in advance of the hearing on the motion. It is only in response to the government's submission of additional evidence that Mr. Liu is further delaying the filing of his brief. Any attempt by the government or the district court to modify the factual record in response to a defendant's appellate argument necessarily has an affect upon the arguments made by the appellant. By attempting to reopen the record in this case, the government is forcing Mr. Liu and his attorneys to delay the filing of the opening brief for his appeal. To proceed in the Ninth Circuit while the district court record is in a state of flux would almost certainly be ineffective assistance of counsel should any major evidentiary upheaval take place as a result of these proceedings. Consequently, Mr. Liu's attorneys have submitted two motions for extensions of time following this

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                    14

importantly, this case is not one in which the district court is merely memorializing findings of fact and law that were made at an oral hearing. Instead, the government is requesting that additional documents and evidence be received by this Court that serve to undermine Mr. Liu's arguments on appeal. Were the documents submitted by the government in any way conclusive of the issue, then perhaps this Court would be justified in accepting them; however, as discussed above, the government's supplemental evidence further clouds the murky factual waters surrounding this crucial and dispositive appellate issue.

The out of circuit precedent cited by the government is equally inapposite. *United States v. Bennet*, 161 F.3d 171, 185-87 (3d Cir. 1998) involved the district court's filing of a sentencing memorandum after the defendant filed a notice of appeal. The Third Circuit, while acknowledging the tardiness of the district court's filing, declined to adopt a bright-line rule that would forbid its consideration of an untimely sentencing memorandum. *Id.* at 186. That court, instead, chose to "look to the nature of the supplemental memorandum and whether its consideration would prejudice the defendant." *Id.* After reviewing the sentencing memorandum in that light, the Third Circuit held that the sentencing memorandum did not prejudice the defendant. *Id.* Importantly, the court stated that "[the defendant] concedes the District Court did not alter or clarify its rulings to address the arguments raised in his appellate brief or cater to the identity of the panel." *Id.* Ultimately, the court held that the sentencing memorandum was merely a "helpful amplification of the District Court's sentencing decisions and its consideration

Court's order for supplemental briefing. The government has not opposed either of these requests.

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                    15

will not prejudice the defendant." *Id.*

*In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1189 (4th Cir. 1991) involved the Fourth Circuit's consideration of an order by the district court in response to appellant's multiple motions to quash a grand jury subpoena issued to his accountant. The procedural history of the case is radically different from the present case. Within the span of a single week, the district court issued several orders that were the subject of multiple appeals. *Id.* There, the appeal concerned an interlocutory order rather than a final judgement as in the present case. *Id.* The Fourth Circuit noted that, as in the previously cited cases, one of the challenged orders merely "memorialized the district court's oral ruling." *Id.* at 1190. The second order was accepted by the Court of Appeals because it "addressed for the first time the specific issue raised by appellant's motions and was, therefore, directly in aid of these appeals." *Id.* Thus, without reviewing the district court's orders, the Court of Appeals would not have a basis for reviewing the issues being raised by the appellant in that case because the lower court had yet to articulate its position prior to the filing of the order.

*Blaine v. Whirlpool Corp.*, 891 F.2d 203, 203 (8th Cir. 1989) involved plaintiffs' racial discrimination challenges against their employer and their union. After a two day bench trial the court issued an oral ruling in favor of the defendants. *Id.* At the time of its oral ruling, the court announced that it would be filing a written order outlining its findings of fact and conclusions of law. *Id.* at 204. The plaintiffs immediately appealed and one week later, the district court issued its written findings of fact and conclusions of law. *Id.* The Eighth Circuit determined that it

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu;*
Case No. CR-06-00772-JW                                     16

could consider the lower court's written findings because "the district judge explicitly informed the parties that his oral opinion would be supplemented by a written opinion supported by legal authority." *Id.* The Eight Circuit further supported its ruling by noting that "The written opinion is consistent with the court's oral opinion in all material respects and the written findings assist this Court in determining the appeal." *Id.*

All of the cases cited by the government stand in stark contrast to the present case. In each of the cases cited by the government the lower court issued a written order within a very short time period following the filing of the notice of appeal. Also, in each of those cases, the order issued by the lower court mimicked the court's previous oral rulings that were delivered prior to the filing of the notice of appeal. In the present case, the government is asking this Court to open up the record and add additional evidence supporting its contention that the trial judge dealt with the jury notes in a manner consistent with Mr. Liu's constitutional guarantee to the assistance of counsel at a "critical stage" of the proceeding. It is not the burden of Mr. Liu to compensate for the inadequacy of the record maintained by the trial court. As the record currently stands, it seems obvious that three of the jury notes were not presented to the defendant or his attorney at the time they were received. While the government may argue on appeal the existence of evidentiary gaps that can be interpreted differently, it seems abundantly clear that Mr. Liu has, at a minimum, raised an arguable issue for his appeal and one that, if decided in his favor, would result in the reversal of his conviction. Mr. Liu has, therefore, satisfied the evidentiary requirement for the motion for bail pending appeal and no further evidence need be incorporated

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                    17

into the record at this late stage.

**IV.**

### AS THE GOVERNMENT CONCEDES, JUDGE WARE IS ONE OF THE PERCIPIENT WITNESSES RELATED TO THIS ISSUE, THEREFORE, IT WOULD BE ENTIRELY INAPPROPRIATE FOR JUDGE WARE TO RESUME AUTHORITY OVER THIS CASE IN RESPONSE TO THIS FACTUAL DISPUTE

In a footnote on the final page of its brief, the government argues that this case would benefit from being transferred back to Judge Ware because he "has first-hand knowledge of what occurred during deliberations and could take judicial notice of what occurred[3]." (Government's Memorandum in Opposition, Pg. 7, n. 3). The government concedes, however, that Judge Ware, as well as the trial attorneys, are percipient witnesses to the events related to the court's handling of the jury notes. The fact that Judge Ware is a percipient witness and that he has an interest in not having the Ninth Circuit find error in a trial over which he presided, means that this case should, under no circumstances, be transferred back to Judge Ware.

Nearly one year has passed since the jury deliberations in this case. Considering the volume of cases that he has handled, Judge Ware is not likely to specifically remember exactly how he dealt with three of the five jury notes in this one case, the trial for which lasted only four days. Judge Ware, like the other percipient witnesses, would have a difficult time recalling

---

3 Even if this case were transferred back to Judge Ware, it is clear that he could not take "judicial notice" of what happened during the jury deliberations of this trial. Rule 201(b) of the Federal Rules of Evidence limits the kinds of facts that are subject to judicial notice as follows: "A judicially noticed fact must be one not subject reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Under no reading of Rule 201(b) can Judge Ware take "judicial notice" of the facts relevant to this issue.

Defendant Julius Liu's Supplemental
Reply Brief in Further Support of Mr. Liu's
Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                        18

exactly which notes were discussed and the nature of and parties to those discussions and his taking "judicial notice," like the declarations, presents the potential that his memory would conform to support the conviction rather than reflect an accurate representation of the facts. This is surely not to imply that Judge Ware would lie or intentionally distort the facts, but when memories are cloudy, it is natural for a witness to unintentionally fill in the gaps with memories of what he or she believes should be the truth rather than what actually is the truth especially when the record and surrounding evidence is as sparse as it is related to this issue.

This all further underscores Mr. Liu's contention that, if this Court chooses to attempt to sort out the factual record related to these jury notes, it must conduct a full evidentiary hearing rather than rely upon declarations or "judicial notice[4]." The government claims that "an evidentiary hearing is not warranted" because of Mr. Liu's "failure to produce any evidence to support his position." This statement is legally and factually wrong. Relying on the record, Mr. Liu has cogently articulated his position that his trial counsel did not take part in the discussions related to three of the jury notes. Mr. Liu carries no burden at this stage of the proceedings to put forth additional evidence because the record in the trial court speaks for itself. There are valid reasons for Mr. Liu to believe that the witnesses to these proceedings may not remember the details and may embellish them. The inaccuracies and vagaries of the government's proffered

---

4 Mr. Liu would, however, be willing to stipulate that Judge Ware may be called as a witness should the Court order an evidentiary hearing in this matter. This would address the government's argument that Judge Ware is in a unique position to provide information regarding his handling of the jury notes while simultaneously ensuring that Mr. Liu is granted his right to confront him as a witness in this limited context.

Defendant Julius Liu's Supplemental
Reply Brief in Further Support of Mr. Liu's
Bail Pending Appeal
*United States v. Liu*;
Case No. CR-06-00772-JW                                   19

declarations reveal that Mr. Liu's concerns are justified.

The Sixth Amendment to the United States Constitution guarantees the accused the right "to be confronted with the witnesses against him." This right to confront witnesses in a criminal trial covers all "testimonial" evidence. *Crawford v. Washington*, 541 U.S. 36, 62-63 (2004). The United States Supreme Court noted that statements made under oath and sworn affidavits that are intended to be used during litigation are "testimony" within the meaning of the Sixth Amendment. *Id*. at 52.

In *Melendez-Diaz v. Massachusetts*, 129 S.Ct 2527, 2538 (2009) the Court elaborated on its previous holding in *Crawford*. In *Melendez-Diaz*, the Court held that "*ex parte* out-of-court affidavits" prepared by forensic analysts declaring that the substance at issue in the case was cocaine and indicating the weight of the cocaine were "testimonial" in nature and the admission of those affidavits without offering the accused the right to confront the affiants was a violation of the Confrontation Clause. *Id*. at 2532, 2542. The Court made a point of reiterating that affidavits are "testimonial in nature." *Id*. at 2532. Quoting *Crawford*, the Court held that because the affidavits were a "solemn declaration or affirmation made for the purpose of establishing or proving some fact," they were testimonial. *Id*. The Court also noted that the testimonial nature of the affidavits was made clear by the fact that they were prepared with the intention of being used at trial[5]. *Id*.

---

5 While *Crawford* and *Melendez-Diaz* both refer to witnesses at trial, the same analysis applies to the circumstances here. Any evidence this Court accepts, whether in the form of declarations or live testimony, is part of the trial record because the purpose of the admission is to reconstruct the events that took place during jury deliberations. Thus, if this Court accepts any of the government's theories as to

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                                    20

1   The majority, responding to the dissent's argument, also rejected the idea that the

2   affidavits were equivalent to "a clerk's certificate authenticating an official record – or a copy

3   thereof – for use at trial," a category of documents that was traditionally admissible without

4   violating the Confrontation Clause. *Id.* at 2538-39. The majority pointed out that this is a

5   "narrowly circumscribed" exception and reiterated the well-established corollary to that rule that

6   the clerk "had no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of

7   what the record contains or shows, or to certify to its substance or effect." *Id.* at 2539 (internal

8   quotation marks and citations omitted). The majority then referred to a line of cases that it

9   considered more directly on point and which apply with equal force to the circumstances of the

10  present case:

11
12
13       Far more probative here are those cases in which the prosecution sought to admit
         into evidence a clerk's certificate attesting to the fact that the clerk had searched
14       for a particular relevant record and failed to find it. Like the testimony of the
         analysts in this case, the clerk's statement would serve as substantive evidence
15       against the defendant whose guilt depended on the nonexistence of the record for
         which the clerk searched. Although the clerk's certificate would qualify as an
16       official record under respondent's definition--it was prepared by a public officer
         in the regular course of his official duties--and although the clerk was certainly not
17       a "conventional witness" under the dissent's approach, the clerk was nonetheless
         subject to confrontation.
18

19

20  *Id.* at 2539.

21       The facts of the present are conceptually congruent to *Melendez-Diaz*. Here, the

22  presentation of declarations as substantive evidence violates the Confrontation Clause. If the

23

24  ─────────────────────────

25  this Court's authority to supplement the record, it must do so at an evidentiary hearing so that Mr. Liu
    can confront the witnesses who will be adding to the trial record itself.

26  **Defendant Julius Liu's Supplemental**
    **Reply Brief in Further Support of Mr. Liu's**
27  **Bail Pending Appeal**
    *United States v. Liu;*
28  Case No. CR-06-00772-JW                                    21

government is challenging Mr. Liu's interpretation of the record – the only justifiable interpretation that can be made based on the record as it exists – it must bring forth the percipient witnesses that it has identified and permit Mr. Liu to cross examine them.  Like the clerk who fails to find a particular record, the witnesses contemplated in this case relative to this issue are not "conventional witnesses." They are, however, equally subject to confrontation.

The success or failure of Mr. Liu's case may hinge upon the issue of how the trial court dealt with the mid-deliberation inquiries from the jurors.  For unknown reasons, the trial court did not see fit to order a court reporter to make a record of the events that took place "off the record" pertaining to Jury Note No. 1.  This notation in the minutes is not dispositive that an actual hearing, in the true sense of the word, even took place nor does it indicate the nature of the hearing or whether the attorneys were present.  The trial judge's admonition that he would construe an absent attorney as effectuating his party's waiver to be present suggests that the court went forward in discussing that note without the input of defense counsel.  This is further supported by the fact that Jury Note No. 2 was handled in a completely different manner.  There the trial judge did discuss the note with the parties prior to delivering a response to the jury.  The minutes related to Jury Note No. 3 do not indicate that a hearing was ever conducted to discuss how the court should respond.  This supports Mr. Liu's contention that no discussion ever took place before the court sent back its response.  The court dealt with Note No. 4 as it did Note No. 2 with a discussion on the record involving the attorneys prior to delivering a response.  Finally, there is little room to assert that the court discussed Note No. 5 with the attorneys.  The note was

delivered to the court just fifteen minutes before the delivery of the note indicating the jury had

reached a verdict.  Several minutes later, the jury delivered the verdict in open court with the

parties present.  No discussion related to the note was recorded or referred to in the minutes.

Any statements made by any witness to the court proceedings during deliberations are

sensitive as each one of them arguably has an interest in the outcome of this case.  The passage

of time makes it even more important to be able to challenge the witnesses on cross examination.

No court can constitutionally force Mr. Liu to relinquish his right to confront witnesses  in favor

of a declaration made by an interested party.  If this Court wishes to uncover the details of the trial

court proceedings, the only constitutionally justifiable route is to order a full evidentiary hearing.

**V.**

**CONCLUSION**

For the foregoing reasons, this Court should refuse to admit any additional evidence and

strike government counsel's previous statements related to the trial court's handling of the jury

notes during the deliberation phase of Mr. Liu's trial.  If this Court wishes to proceed over Mr.

Liu's objections, it should afford Mr. Liu the opportunity to confront the witnesses by way of a

**Defendant Julius Liu's Supplemental**
**Reply Brief in Further Support of Mr. Liu's**
**Bail Pending Appeal**
*United States v. Liu*;
Case No. CR-06-00772-JW                              23

full evidentiary hearing. Additionally, for the reasons set forth in this brief as well as those presented in Mr. Liu's motion for bail pending appeal, this Court should grant his motion.

Respectfully submitted,

Dated: June 16, 2011                **BAY AREA CRIMINAL LAWYERS, PC**

By: /s/David J. Cohen
DAVID J. COHEN, ESQ.

Attorneys for Defendant **Julius Chow Lieh Liu**