**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>JULIUS CHOW LIEH LIU,<br>*Defendant-Appellant*. | No. 10-10613<br><br>D.C. No.<br>5:06-cr-00772-JW-1<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
March 11, 2013—San Francisco, California

Filed October 1, 2013

Before: John T. Noonan, Raymond C. Fisher,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Criminal Law

The panel vacated convictions and sentences on three counts of criminal copyright infringement and one count of trafficking in counterfeit labels in a case in which the defendant's company commercially replicated CDs and DVDs for various clients on a scale that subjects the defendant to substantial criminal liability if a client – and, by extension, the defendant – lacked permission from the copyright holder to make the copies.

The panel held that the term "willfully" in 17 U.S.C. § 506(a) requires the government to prove that a defendant knew he was acting illegally rather than simply that he knew he was making copies, and that to "knowingly" traffic in counterfeit labels under 18 U.S.C. § 2318(a)(1) requires knowledge that the labels were counterfeit. Because the district court improperly instructed the jury otherwise and the errors were not harmless, the panel vacated the convictions and remanded.

The panel concluded that the district court should dismiss one of the copyright infringement counts on remand because counsel was ineffective by failing to raise an obvious statute-of-limitations defense.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David J. Cohen (argued) and Jason T. Campbell, Bay Area
Criminal Lawyers, PC, San Francisco, California, for
Defendant-Appellant.

Jenny Ellickson (argued), Trial Attorney, Melinda Haag,
United States Attorney, and Barbara J. Valliere, Chief,
Appellate Division, United States Department of Justice, San
Francisco, California, for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Julius Liu appeals his convictions and sentence for
criminal copyright infringement and trafficking in counterfeit
labels. Liu's company, Super DVD, commercially replicated
CDs and DVDs for various clients on a scale that subjects
him to substantial criminal liability if a client—and, by
extension, Liu—lacked permission from the copyright holder
to make the copies.

Under the relevant criminal statutes, Liu's guilt turns on
whether he acted "willfully" and "knowingly." We hold that
the term "willfully" requires the government to prove that a
defendant knew he was acting illegally rather than simply that
he knew he was making copies. Similarly, to "knowingly"
traffic in counterfeit labels requires knowledge that the labels
were counterfeit. Because the district court improperly
instructed the jury otherwise, we vacate Liu's convictions and
remand. We also conclude that the district court should
dismiss the second count against Liu on remand because his

counsel was ineffective, failing to raise an obvious
statute-of-limitations defense.

## BACKGROUND

### I.  The Replication of CDs and DVDs

Commercial CD and DVD replication differs from the
process of recording content onto CDs and DVDs in that pre-
recorded discs have their content stamped onto them—
requiring a molding machine and a stamper—rather than
burned.   To create a CD stamper, a process known as
"mastering," some source material containing digital content
is necessary, such as a tape, recordable CD, or music file.
Counterfeiters making a "straight counterfeit," i.e., an exact
copy of an existing CD, can start with either a legitimate or
counterfeit version of the CD.   Counterfeiters making a
previously nonexistent compilation of tracks take multiple
legitimate disks and burn the relevant tracks onto a recordable
CD, which then serves as the source material for the stamper.

Replication plants process orders for customers, who are
typically the publishers (or persons purporting to be the
publishers) who own the reproduction rights to the works in
question.  While a few plants specialize in mastering, most
deal exclusively with replicating.  Plants offering both types
of services are rare because of the higher cost associated with
mastering, which requires more expensive equipment, larger
premises, a clean room environment, and greater expertise to
operate.  A replication plant that does not create stampers
in-house will outsource the work to a mastering plant.

## II.  The Investigation of Liu and Super DVD

Liu has worked in the replication industry since the early 1990s.  In 2000, he founded, and became the CEO of, a DVD-manufacturing company called Super DVD.  By 2001, Super DVD employed about 65 people and operated four replication machines at its Hayward, California warehouse.

In mid-2001, Super DVD fell on hard financial times. The manufacturer of one of its replication machines went bankrupt and the machine was taken back to Irvine, California.  Two of the other machines were repossessed because Super DVD fell behind on its lease payments.  Use of the final replication machine was frozen due to a dispute over royalties between the machine manufacturer and another company.  Super DVD's engineers left for other employment, and in 2003 the company did not renew its business license with the city.  In an effort to lease the factory space, Liu showed the property to approximately 10–15 persons per week.

Meanwhile, the government had become suspicious of Super DVD's operations.  In May 2003, Immigration and Customs Enforcement agents raided the warehouse of Vertex International Trading, a computer software reseller based in Coral Springs, Florida, where agents recovered counterfeit copies of the Symantec software "Norton Anti-Virus 2003" and related documentation.  The documentation included purchase orders, handwritten notes, and FedEx shipping labels from more than 50 vendors, including Super DVD.[1]

---

[1] Liu challenges the admissibility of evidence recovered from the warehouse.  Because we overturn Liu's convictions on other grounds, we do not address Liu's evidentiary objections.

Later that month, private investigator Cynthia Navarro, working on behalf of Symantec, posed as a potential lessee to investigate Super DVD's warehouse. While there, Navarro observed a man using one of two machines that she believed were used for CD or DVD replication. Through a window, she could see into a locked room that was filled wall to wall with spindles of CDs.

At the end of July 2003, agents executed a search warrant on the Super DVD warehouse and recovered thousands of DVDs and CDs. One room stored CDs and DVDs, and another held stampers, artwork, and masters. The CDs included a compilation of rap tracks, *Rap Masters Vol. 2*; three compilations of Latin music tracks, *Los Tucanes de Tijuana: Romanticas*, *Lo Mejor de la Mafia*, and *3 Reyars* [sic] *del Tex Mex: Romanticas*; and a greatest hits album, *Beatles 1*. The agents also recovered DVD copies of the film *Crouching Tiger, Hidden Dragon*. Liu did not have authorization from the copyright holders to replicate any of these works.

During an interview and at trial, Liu admitted that Super DVD manufactured the *Crouching Tiger* DVDs in 2001 for a company called R&E Trading. R&E gave Super DVD a stamper with the name "Tiger" on it but not the full title of the film. The DVDs were still in Super DVD's warehouse at the time the search warrant was executed because R&E had rejected them, claiming that the movies would freeze. Liu stated that when R&E refused to pay for the order, he became personally involved and realized that R&E did not have the rights to duplicate such a famous movie. Super DVD filed a lawsuit against R&E alleging that R&E deceived it about the copyrights. The lawsuit sought payment from R&E on about 40 invoices totaling approximately $85,000, including work

done on the *Crouching Tiger* movie.  Super DVD obtained a jury verdict for approximately $600.

Liu generally denied any knowledge of or involvement in replicating the other works.  Liu explained that he became involved with the Latin music compilations when one of the former Super DVD engineers introduced Liu to his uncle, Juan Valdez, a famous mariachi singer.  Liu and Valdez got together and played music—Liu on the guitar, Valdez singing. Valdez expressed interest in publishing CDs, and Liu told him that he didn't have the facility to do it but suggested companies that could take care of the mastering, printing, and even the sleeve.  Liu volunteered to do the overwrapping for Valdez because it only cost him "pennies."  Valdez told Liu that he created the tracks by mixing his voice with music from a Karaoke machine and that he had paid for the license.  Liu listened to some of the tracks and, believing that it was Valdez's voice, thought that the music "belong[ed] to him."

### III.    Liu's Convictions and Sentence

The government charged Liu with three counts of criminal copyright infringement under 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1) based on the music CDs, the *Crouching Tiger* DVD, and the Norton Anti-Virus software.  A fourth count alleged that Liu trafficked in the counterfeit labels on the software, 18 U.S.C. § 2318(a).  Following a three-day jury trial, Liu was convicted on all counts.  The district court sentenced Liu to four years in prison followed by three years of supervised release.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ANALYSIS

## I.  The District Court Erred in Instructing the Jury on the "Willfulness" and "Knowledge" Elements

### A.  Standard of Review

"When a party properly objects to a jury instruction, we review de novo whether the instructions given 'accurately describe the elements of the charged crime.'"  *United States v. Munguia*, 704 F.3d 596, 598 (9th Cir. 2012) (quoting *United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007) (en banc)).  A district court's omission or misstatement of an element of an offense in the jury instructions is subject to harmless error review.  *United States v. Wilkes*, 662 F.3d 524, 544 (9th Cir. 2011) (quoting *United States v. Kilbride*, 584 F.3d 1240, 1247 (9th Cir. 2009)).  We review unpreserved errors in the jury instructions for plain error.  *United States v. Phillips*, 704 F.3d 754, 762 (9th Cir. 2012) (citing *United States v. Moreland*, 622 F.3d 1147, 1166–67 (9th Cir. 2010)).

The parties disagree as to whether Liu properly preserved an objection to the jury instructions so as to be entitled to de novo review.  Liu argues that the district court failed to provide him an opportunity to object to the jury instructions as required under Federal Rule of Criminal Procedure 30(d). We agree.

Liu requested an instruction parroting 17 U.S.C. § 506(a)(2)—that "[e]vidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright." The government did not include this language in its proposed instruction on the elements of copyright infringement, and Liu objected on that basis. The government informed the court that it had no problem with Liu's requested instruction.

The night before closing arguments, the district court emailed counsel a tentative set of jury instructions and indicated that it would give them a revised draft in the morning if it made additional changes. The next morning, before the defense presented its case, the district judge stated that "some changes to the instructions [were made]. . . , none that I think are of substance." In fact, the court had made several substantive changes. In particular, it added the definition of "knowingly" that is now at issue. Previously, that instruction had simply stated that the government needed to prove that Liu "knowingly trafficked in counterfeit labels affixed or designed to be affixed to copies of a copyrighted computer software product called 'Norton Anti-Virus 2003' belonging to Symantec Corporation." The final version of the instruction added that

> An act is done "knowingly" if the Defendant is aware of the act and does not act through ignorance, mistake or accident. The government is not required to prove that the defendant knew that his act was unlawful. You may consider evidence of the Defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

Besides adding the instruction defining "knowingly," the district court did not include in the final version the instruction regarding proof of willful copyright infringement requested by Liu and acquiesced to by the government. Instead, it added its own explanation of willful infringement that incorporated the government's requested instruction defining infringement generally, without a mens rea element. The court instructed the jury that Liu "willfully infringed" if he "without authorization duplicated, reproduced or sold the copyright belonging to the owners of the works." The court further adopted the government's requested definition of willfully—that "[a]n act is done 'willfully' if the act is done knowingly and intentionally, not through ignorance, mistake or accident."

There is no indication that the district court distributed a copy of the finalized jury instructions to counsel at that or any other time until just before instructing the jury. Further, after the court delivered the instructions to the jury, it did not ask counsel whether there were any objections to them before the jury retired to consider its verdict. The court's procedure casts serious doubt upon its compliance with Rule 30(d) and due process. *See United States v. Loya*, 807 F.2d 1483, 1492 (9th Cir. 1987); *United States v. Nerone*, 563 F.2d 836, 847–48 (7th Cir. 1977). Even if Liu's counsel could have objected to the instructions between the time they were delivered and the time the jury began deliberating, any resultant modification to the instructions would have risked calling the jury's attention to the issue. Under these circumstances, Liu was not required to object. *See United States v. Ramirez*, 714 F.3d 1134, 1137–38 (9th Cir. 2013). We thus review for instructional error de novo. *Id.*

**B.  The "Willfulness" Element of Criminal Copyright Infringement Requires Knowledge that the Conduct Was Unlawful**

Copyright infringers have been subject to civil liability since the Nation's founding.  *See* Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124, 124–25.  In a civil suit, liability for copyright infringement is strict.  "[T]he innocent intent of the defendant constitutes no defense to liability." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[B][1] (Matthew Bender rev. ed. 2011)).

Congress first imposed criminal liability for certain types of infringement in the late nineteenth century.  *See* Act of January 6, 1897, ch. 4, 29 Stat. 481, 482.  The general approach to criminal copyright enforcement—then, as now—has been to punish only those violations that are both willful and economically motivated.  *See id.* (punishing as misdemeanor infringement that is "willful and for profit"); *accord* Copyright Act of 1976, Pub. L. 94-553, ch. 5, § 506(a), 90 Stat. 2541, 2586 (codified as amended at 17 U.S.C. § 506(a)(1)(A)) (imposing criminal liability on "[a]ny person who infringes a copyright willfully and for purposes of commercial advantage or private financial gain").

Of the two factors that distinguish criminal from non-criminal copyright violations, willfulness and commerciality, the latter is of little practical importance.  The Copyright Act defines "financial gain" broadly to include "receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works." 17 U.S.C. § 101.  The commerciality requirement thus "does not meaningfully winnow down the population of copyright defendants

potentially liable to incarceration . . . . [T]he only bar against an overzealous prosecutor criminalizing nearly every copyright infringement case lies in the other prerequisite to criminal liability: willfulness." 4 Nimmer, *supra*, § 15.01[A][2].

But the term "willfully" is ambiguous.**[2]** *See Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) ("'Willful' . . . is a 'word of many meanings . . . .'" (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943))). To infringe willfully could simply mean to intentionally commit the act that constitutes infringement. Alternatively, it could mean that the defendant must act with a "'bad purpose' or 'evil motive' in the sense that there was an 'intentional violation of a known legal duty.'" *United States v. Moran*, 757 F. Supp. 1046, 1048 (D. Neb. 1991) (quoting *Cheek v. United States*, 498 U.S. 192, 200 (1991)). The 1976 Copyright Act does not define "willfully," and its legislative history offers little guidance. *See id.* at 1049 n.2.

When faced with a criminal statute containing an ambiguous "willfulness" element, courts normally resolve any doubt in favor of the defendant. *Ratzlaf*, 510 U.S. at 148 (citing *Hughey v. United States*, 495 U.S. 411, 422 (1990)). Although the general rule is that "ignorance of the law or a mistake of law is no defense to criminal prosecution," the modern proliferation of statutes and regulations "sometimes

---

**[2]** Even within the context of *civil* copyright infringement, we have defined "willful" to mean different things in different contexts. *See Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707–08 (9th Cir. 2008) ("The term 'willful' as used in copyright infringement cases is not equivalent to 'willful' as used in determining whether a debt is nondischargeable under the bankruptcy code.").

ma[kes] it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the . . . laws." *Cheek*, 498 U.S. at 199–200. Thus, the government must prove that the defendant acted "willfully"—that is, with "specific intent to violate the law"—to be convicted of certain federal criminal offenses. *Id.* at 200 (citing *United States v. Murdock*, 290 U.S. 389 (1933)); *see also Bryan v. United States*, 524 U.S. 184, 191–92 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" (quoting *Ratzlaf*, 510 U.S. at 137) (footnote omitted)).

In reviewing a conviction for criminal copyright infringement, we, and numerous other circuits, have assumed that proof of the defendant's specific intent to violate someone's copyright is required. *See United States v. Beltran*, 503 F.3d 1, 2 (1st Cir. 2007); *United States v. Manzer*, 69 F.3d 222, 227 (8th Cir. 1995); *United States v. Minor*, 756 F.2d 731, 734 (9th Cir. 1985); *United States v. Gottesman*, 724 F.2d 1517, 1522 (11th Cir. 1984); *United States v. Whetzel*, 589 F.2d 707, 712 (D.C. Cir. 1978);[3] *see also United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir.

---

[3] Early prosecutions for criminal copyright infringement under the 1976 Copyright Act also charged the defendants with violating the National Stolen Property Act, which criminalizes the interstate transport of goods, wares, or merchandise that were "stolen, converted or taken by fraud." 18 U.S.C. § 2314. In *Dowling v. United States*, 473 U.S. 207 (1985), the Supreme Court held that copyright infringement did not constitute theft, conversion, or fraud, abrogating *Minor*, *Gottesman*, and *Whetzel*, which had held to the contrary.

1980) (holding so).  *But compare United States v. Backer*, 134 F.2d 533, 535 (2d Cir. 1943) (finding sufficient evidence that the defendant had willfully copied where he "deliberately had the copies made and deliberately sold them for profit"), *with United States v. Rose*, 149 U.S.P.Q. 820, 824 (S.D.N.Y. 1966) (instructing, notwithstanding *Backer*, that the government must prove the defendant acted "voluntarily and purposely and with specific intent to do that which the law forbids—that is to say, with bad purpose either to disobey or disregard the law").  We now explicitly hold that "willfully" as used in 17 U.S.C. § 506(a) connotes a "voluntary, intentional violation of a known legal duty."  *Cheek*, 498 U.S. at 201 (internal quotation marks omitted).

The Copyright Act's legislative history supports our interpretation.  In 1997, Congress updated the statutory provision governing criminal copyright infringement by inserting the language that Liu requested:  "evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement."  No Electronic Theft (NET) Act, Pub. L. 105-147, § 2(b), 111 Stat 2678, 2678 (1997) (codified as amended at 17 U.S.C. § 506(c)).  This language was in response to the "on-going debate about what precisely is the 'willfulness' standard in the Copyright Act."  143 Cong. Rec. S12,689 (daily ed. Nov. 13, 1997) (statement of Sen. Orrin Hatch); *see also id.* at 12,690 (statement of Sen. Patrick Leahy) ("This clarification was included to address the concerns expressed . . . because the standard of 'willfulness' for criminal copyright infringement is not statutorily defined and the court's interpretation[s] have varied somewhat among the Federal circuits."); H.R. Rep. No. 105-339, at 9 (1997) (explaining that the Subcommittee on Courts and Intellectual Property amended the bill "to define 'willful' misconduct" in response

to "questions concerning the meaning of the word and its application in the electronic environment").[4]  Upon passage of the bill in the Senate, Senator Hatch stated that willful "ought to mean the intent to violate a known legal duty. . . . As Chairman of the Judiciary Committee, that is the interpretation that I give to this term.  Otherwise, I would have objected and not allowed this bill to pass by unanimous consent."  143 Cong. Rec. S12,689.

As a practical matter, requiring only a general intent to copy as a basis for a criminal conviction would not shield any appreciable amount of infringing conduct from the threat of prosecution.  Civil liability will not lie if an author fortuitously creates a work that is substantially similar to another author's copyrighted work. *See Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 106 (1st Cir. 2011) ("[E]ven when two works are substantially similar with

---

[4] Industry representatives and other stakeholders testifying before Congress expressed their hope that the term "willful" would be "given the interpretation that [the majority of] courts ha[d] given [it] in the criminal context," i.e., "that it is not enough for the defendant in a criminal case to have had an intent to copy the work; he must have acted with knowledge that his conduct constituted copyright infringement."  *Copyright Piracy, and H.R. 2265, the No Elec. Theft (NET) Act:  Hearing Before the Subcomm. on Courts and Intellectual Prop. of the Comm. on the Judiciary H.R.*, 105th Cong. 13–14 (1997) (statement of Marybeth Peters, Register of Copyrights); *see id.* at 157 (statement of David Nimmer, counsel, United States Telephone Association) ("The courts' divergent interpretations of Section 506(a) yield uncertainty . . . . Congress should specify that 'willful' . . . requires a specific intent to violate a known legal duty."); *see also id.* at 37 (statement of Brad Smith, Associate General Counsel, Microsoft Corp.) ("[W]e are *only* talking about *willful infringement* of a copyright holder's rights. . . . [U]nder criminal law a willful act requires that it be intentionally done with knowledge that it was prohibited by law.").

respect to protectable expression, if the defendant did not copy as a factual matter, but instead independently created the work at issue, then infringement liability must be denied." (quoting 4 Nimmer, *supra*, § 13.01[B]) (internal quotation mark omitted)). To infringe a copyright, one must *copy* the protected work. *See, e.g.*, *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) ("To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991))). Copying is of necessity an intentional act. If we were to read 17 U.S.C. § 506(a)'s willfulness requirement to mean only an intent to copy, there would be no meaningful distinction between civil and criminal liability in the vast majority of cases. That cannot be the result that Congress sought.

In the present case, notwithstanding the parties' agreement to add an instruction that "[e]vidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright," 17 U.S.C. § 506(a)(2), the district court did not include the requested language. In fact, the district court exacerbated the omission by defining willful infringement without the crucial knowledge component:

> In order for the defendant to be found guilty of [copyright infringement], the government must prove each of the following elements beyond a reasonable doubt:
>
> First, that on a date beginning in 2001 and continuing to on or about July 31, 2003, in the

> Northern District of California, defendant willfully infringed, that is, without authorization, duplicated, reproduced, or sold compact disks that infringed the copyright belonging to the owners of the works . . . .

By defining "willfully infringed" without any requirement that the defendant knew he was committing copyright infringement, the district court instructed the jury to apply a civil liability standard.

The district court further compounded this error a short time later, instructing the jury that "[a]n act is done 'willfully' if the act is done knowingly and intentionally, not through ignorance, mistake, or accident." We recently considered a virtually identical instruction in *United States v. Berry*, 683 F.3d 1015 (9th Cir. 2012). The district court had instructed the jury that "an act is done willfully if the defendant acted or failed to act knowingly and intentionally and did not act or fail to act through ignorance, mistake, or accident." *Id.* at 1021. Finding error, we explained that "the instruction given merged the concepts of 'knowing' and 'willful' without conveying the culpable state of mind that the term 'willfully' is designed to invoke in the criminal arena." *Id.* (citing *Bryan*, 524 U.S. at 192).

We conclude that the district court in this case erred by defining willfulness such that the jury could have convicted Liu without finding that he knew that his actions were unlawful.

## C.  The Instructional Error Was Not Harmless

Liu's convictions on the copyright infringement counts cannot stand unless the instructional error was harmless. "An error in describing an element of the offense in a jury instruction is harmless only if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'"  *Munguia*, 704 F.3d at 603–04 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

The conclusion was irresistible that the infringing CDs and DVDs were replicated in the Super DVD warehouse. The discs all were found there with the exception of the Norton Anti-Virus software, which was discovered at the Vertex warehouse along with purchase orders and shipping labels linking it to Liu and Super DVD.  Almost all of the music CDs bore Liu's initials, "JL."  Liu admitted to reproducing the *Crouching Tiger* DVDs for R&E Trading, and there was a written agreement from early 2001 between Super DVD and R&E to press 2,000 copies of the *Beatles* CD.  Although Liu claimed to have no knowledge of how the other discs were made, suggesting that the orders may have been handled by his sales staff, it is unclear whether the jury disbelieved him, thought he had forgotten, or found his employees' acts attributable to him.[5]

---

[5] While criminal liability for copyright infringement cannot lie purely on the basis of respondeat superior, we note in passing that the district court could have given the jury clearer guidance on this issue.  It instructed only that "[a]n individual is liable for willful infringement even if the conduct on which you base your finding of wilful infringement is performed as a representative of a corporation."

Whatever the case, Liu's state of mind was critical.  Liu was aware of copyright laws and admittedly had been sued for copyright infringement in the past.  His guilt thus hinged on whether he knew that his clients did not have authorization to replicate the disks at issue.

Liu presented evidence that his customers signed agreements stating that they had the copyright to the works in question and promising "to be responsible for all copyright related legal responsibilities."  His expert witness testified that other replicators also rely on such agreements rather than carefully investigate each customer.  Liu testified that he attempted to verify that there were no copyright violations on the Latin music compilations by listening to the some of the tracks and satisfying himself that it was Valdez's voice.  He further claimed that he did not realize R&E's order for *Crouching Tiger* DVDs was unauthorized until he became embroiled in the payment dispute, at which time he filed a lawsuit against R&E.  The fact that he initiated a lawsuit over a dispute involving thousands of infringing copies of *Crouching Tiger, Hidden Dragon* that he created is arguably compelling evidence that he did not understand his conduct to have been wrongful.

We cannot say that the jury would not have credited some or all of this evidence had the jury appreciated its relevance.  The evidence may have supported a finding that Liu did not know that he was illegally copying copyrighted material and thus he did not willfully infringe the copyrights.  Therefore, the failure to provide a proper willfulness instruction was not harmless beyond a reasonable doubt.

We reject the government's contention that any error was harmless because, on the second day of trial, the district court

correctly described the concept of willfulness to the jury. The court stated that "one of the issues in this case [is that] the government claims that Mr. Liu did certain conduct willfully, which means that he did it intentionally, that he knew what was going on and he knew that it was a violation of someone's rights under the copyright laws, or he had good reason to know that." But this statement is itself problematic. Having "good reason to know" one is violating the law is not tantamount to knowing it.

Even if the court's statement accurately conveyed the willfulness standard to the jury, a correct statement of the law given during trial does not cure an incorrect one delivered immediately prior to deliberations. *See Seltzer v. Chesley*, 512 F.2d 1030, 1035 (9th Cir. 1975) ("Erroneous instructions can be corrected by the trial judge only by expressly correcting them and by directing the members of the jury to expunge the erroneous statements from their minds."); *cf. Petrocelli v. Angelone*, 248 F.3d 877, 888–89 (9th Cir. 2001) (finding that court's improper statement of the law during trial did not violate due process "because the trial judge used the correct instruction at the end of trial and because the correct instruction was the only instruction given to the jury to take with them to the jury room" (quoting *Guam v. Ignacio*, 852 F.2d 459, 461 (9th Cir. 1988)) (internal quotation marks and brackets omitted)).

Further, the district court's statement about willfulness was made in a context that had nothing to do with the elements of criminal copyright infringement. The court was in the middle of delivering unrelated comments about character evidence. It immediately minimized the need for the jury to pay attention to its comments, adding that "[t]hose are all things I'll tell you about when I give you my

instructions on the law." Thus, it is inconceivable that the district court's partially correct statement on willfulness mid-trial overcame the effect of its erroneous statements in the oral and written jury instructions given to the jury immediately prior to deliberations.

Accordingly, we vacate Liu's convictions and sentence for criminal copyright infringement on counts one through three and remand to the district court. For reasons we will explain, count two must be dismissed.

### D. The "Knowingly" Element of Trafficking in Counterfeit Labels Requires Knowledge that the Items Are Counterfeit

Liu also challenges the jury instructions on the fourth count for trafficking in counterfeit labels. That offense requires proof that the defendant acted "knowingly." 18 U.S.C. § 2318(a)(1). Like "willfully," the word "knowingly" is susceptible to more than one meaning in this context. It could mean either that the defendant knew that he was trafficking or that he knew that the labels were counterfeit. We hold that "knowingly" in this context means the latter, and thus the government must prove that Liu knew the labels were counterfeit.

The original statute required that the defendant act both "knowingly and with fraudulent intent" and, further, that he act "knowing the label to have been falsely made, forged, or counterfeited." Act of Oct. 9, 1962, Pub. L. 87-773, § 1, 76 Stat. 775. The statutory language changed to its current form—omitting all of these requirements except that the defendant act "knowingly"—in the Piracy and Counterfeiting Amendments Act of 1982, Pub. L. 97-180, § 2, 96 Stat. 91.

The Senate report makes clear that this change was not intended to be substantive because the omitted language was viewed as superfluous:

> [T]he proposed section 2318 eliminates the requirement of fraudulent intent. Instead, it would be sufficient if the offense of trafficking in counterfeit labels were "knowingly" committed. The Department of Justice testified before the Committee [on the Judiciary] that dropping the fraudulent intent requirement would present no problem, essentially agreeing with the Committee's view that the fraudulent intent requirement is superfluous if one is acting with the knowledge that the articles are counterfeit. In other words, it would be difficult to conceive of a situation in which one could traffic in articles knowing that they are counterfeit without intending to defraud the purchaser.

S. Rep. No. 97-274, pt. 5, at 8–9 (1981), *reprinted in* 1982 U.S.C.C.A.N. 127, 134–35. Thus, it is clear that Congress used "knowingly" to refer to knowledge that the labels were counterfeit.

The district court instructed the jury that it could convict Liu on count four only upon a finding that he "knowingly trafficked in counterfeit labels affixed or designing to be affixed to copies of a copyrighted computer software product called 'Norton Anti-Virus 2003' belonging to Symantec Corporation." The court then defined "knowingly," taking its instruction from Ninth Circuit Model Criminal Jury Instruction 5.6, including the optional second sentence:

"[A]n act is done 'knowingly' if the defendant is aware of the act and does not act through ignorance, mistake, or accident. *The government is not required to prove that the defendant knew that his act was unlawful*" (emphasis added).

The comment to the model instruction recognizes that some offenses require proof that the defendant knew his conduct was unlawful, citing *United States v. Santillan*, 243 F.3d 1125, 1129 (9th Cir. 2001), and *United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997), *abrogated on other grounds by Henderson v. United States*, 133 S. Ct. 1121 (2013).[6]

*Turman* is analogous to the circumstances here. In that case, the district court instructed on money laundering, which requires knowledge that the laundered funds were derived from wire fraud but not necessarily knowledge that the defendant knew money laundering itself was illegal. 122 F.3d at 1169. The court informed the jury that to reach a guilty verdict it must find that the defendant "knowingly engaged or attempted to engage in a monetary transaction which [he] knew involved criminally derived property." *Id.* The district court reiterated the point, stating that "[t]he government must prove beyond a reasonable doubt that the

---

[6] *Turman* held that the trial court erred in failing to require proof that the defendant knew his conduct was illegal. Despite recognizing the error, we found that the error was not plain because the law was unsettled when the instructions were given and "an error is not plain unless it would have been obvious to a reasonably competent district judge at the time of trial." 122 F.3d at 1171. The Supreme Court recently rejected this reasoning in *Henderson*, holding that "whether a legal question was settled or unsettled at the time of trial, it is enough that an error be 'plain' at the time of appellate consideration" to warrant reversal. 133 S. Ct. at 1130 (internal quotation marks omitted).

Defendant knew that the monetary transaction involved criminally derived property." *Id.*

But even the unambiguous instruction in *Turman* about what the defendant needed to know did not immunize the process from error, because the district court went on to give the same instruction that was given here—that the government need not prove that the defendant knew his act was unlawful. *See* 122 F.3d at 1169. Although the defendant had not objected to this instruction, we pointed out that it constituted error under *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994). *Turman*, 122 F.3d at 1169. *Stein* reversed the money laundering convictions of another defendant whose jury had received similar instructions because "a broad, general definition of 'knowingly' might be interpreted to allow conviction even where the defendant did not know the laundered funds were illegally obtained." *Turman*, 122 F.3d at 1169 (construing *Stein*).

In this case, the instructions regarding knowledge were even more problematic than in *Turman* and *Stein* because the district court never clarified what Liu needed to know, i.e., that the labels were counterfeit. The district court merely stated that Liu must have "knowingly trafficked in counterfeit labels." This instruction was at best ambiguous as to whether Liu needed to know that the labels were counterfeit or merely needed to know that he trafficked in labels that later turned out to be counterfeit—a strict liability standard.

Accordingly, we hold that the district court erred in its instruction on knowledge—both because the court failed to clarify that "knowingly" referred to knowledge that the labels were counterfeit and because it supplied the confusingly

broad statement about the government not needing to prove knowledge that we rejected in *Turman* and *Stein*.

This jury instructional error was not harmless beyond a reasonable doubt for the same reasons that the willfulness instruction was not harmless. There was evidence that Liu did not know that the Norton Anti-Virus disks were unauthorized which, if accepted by the jury, may have resulted in a different outcome. We therefore vacate Liu's conviction and sentence on count four and remand to the district court.

## II. Liu's Ineffective Assistance of Counsel Claims

Liu asserts that he received ineffective assistance of counsel because his trial attorney failed to argue that the alleged copyright infringement violations in counts one and two were barred by the five-year statute of limitations, 17 U.S.C. § 507(a). As a general rule, we do not review challenges to the effectiveness of defense counsel on direct appeal. *United States v. Rahman*, 642 F.3d 1257, 1260 (9th Cir. 2011) (citing *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005)). The only exceptions are when "the record on appeal is sufficiently developed to permit determination of the issue," or "the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Id.* (citing *Jeronimo*, 398 F.3d at 1156). Review, when warranted, is de novo. *United States v. Benford*, 574 F.3d 1228 (9th Cir. 2009) (citing *United States v. Benlian*, 63 F.3d 824, 826 & n.3 (9th Cir. 1995)).

## A.  Factual Background

On November 29, 2006, the grand jury returned the original indictment, which contained an allegation that Liu committed criminal copyright infringement (count one) and trafficked in counterfeit labels (count two).  It alleged that Super DVD reproduced more than 11,000 CDs containing copyrighted music and more than 50,000 CDs containing copyrighted software programs.  The first count alleged that on or about July 31, 2003, Liu willfully infringed the copyrights of copyrighted music and software including, but not limited to, 36 musical tracks and two Norton Anti-Virus 2003 software programs.  The second count alleged that beginning on an unknown date and continuing until about May 12, 2003, Liu knowingly trafficked in counterfeit labels for two Symantec programs.

On March 12, 2008, the grand jury returned the first superseding indictment, which consisted of two counts of criminal copyright infringement, one count of trafficking in counterfeit labels, and one count of criminal forfeiture and destruction, 18 U.S.C. §§ 506(b), 509(a).  The first count alleged that beginning on an unknown date and continuing until on or about July 31, 2003, Liu willfully infringed copyrighted music works, including but not limited to 51 musical tracks.  The second count alleged that beginning on an unknown date and continuing until about May 2003, Liu willfully infringed the copyrights of two Symantec antivirus programs.  The third count alleged that beginning on an unknown date and continuing until about May 2003, Liu knowingly trafficked in counterfeit labels for the two Symantec programs.

Lastly, on February 17, 2010, the grand jury returned the second superseding indictment, which consisted of three counts of criminal copyright infringement and one count of trafficking in counterfeit labels. Counts one, three, and four approximately corresponded to counts one, two, and three in the first superseding indictment. Count two alleged that beginning on an unknown date in 2001 and continuing until about July 31, 2003, Liu willfully infringed copyrighted music works, including but not limited to *Crouching Tiger, Hidden Dragon*. This was the first time that *Crouching Tiger, Hidden Dragon* appeared in an indictment. At trial, the district court corrected the second superseding indictment so that in the second count "music" was replaced by "motion picture."

## B.  Whether the Statute of Limitations Was Tolled

"Generally speaking, the return of an indictment tolls the statute of limitations with respect to the charges contained in the indictment." *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990) (citing *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir. 1990); *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 778 (9th Cir. 1986)). Tolling continues when a superseding indictment on the same charges is returned while a previous indictment is still pending. *Id.* (citing *Italiano*, 894 F.2d at 1282).

"[I]f the counts in the superseding indictment 'broaden[ed] or substantially amend[ed]' the charges in the original indictment, the statute of limitations would not have been tolled as to those charges." *Id.* (alteration in original) (quoting *Sears*, 785 F.2d at 778–79). In contrast, "where the counts of an original indictment are simply duplicated verbatim into a superseding indictment, the statute of

limitations on those counts is tolled, even if additional counts that are subject to no limitations objection are added." *Id.* (citing *United States v. Jones*, 816 F.2d 1483, 1487 (10th Cir. 1987); *Sears*, 785 F.2d at 779).

"To determine whether a superseding indictment substantially broadens or amends a pending timely indictment, . . . it is appropriate to consider 'whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence.'" *United States v. Yielding*, 657 F.3d 688, 704 (8th Cir. 2011) (quoting *United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003)). The central concern in determining whether the counts in a superseding indictment should be tolled based on similar counts included in the earlier indictment is notice. "If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense." *Pacheco*, 912 F.2d at 305 (citing *Italiano*, 894 F.2d at 1283).

### 1.  Count One

With respect to count one, Liu claims that by alleging additional music tracks in each successive indictment, the government broadened the scope of the conduct at issue. The factual record before us is inadequate, however, to address the merits of this contention. It is unclear, for example, whether and when Liu was on notice of the entire catalogue of works recovered from the Super DVD warehouse such that once he was accused of infringing certain music CDs he would fairly be on notice that others might be added to the

list. Therefore, we decline to address whether Liu's counsel was ineffective for failing to assert a statute-of-limitations defense to count one.

### 2. Count Two

As to count two, Liu asserts that he lacked notice that *Crouching Tiger, Hidden Dragon* would be at issue until more than five years after the alleged infringement. This issue can be resolved on the current record given that it turns largely on the language of the indictments rather than on factual matters. We therefore proceed to address it.

We agree with Liu that he had no notice whatsoever that he should prepare to be prosecuted for willfully infringing a motion picture work until the second superseding indictment. He was alleged to have infringed it between 2001 and 2003, but the second superseding indictment was not returned until 2010. The delay in bringing this charge is longer than the law permits. *See* 17 U.S.C. § 507(a).

The government argues that the addition of the *Crouching Tiger, Hidden Dragon* allegation "did not meaningfully broaden the scope of the original indictment" because the original indictment "allude[d]" to the infringement of movies. The government is referring to the forfeiture allegation at the end of the original indictment that would have required Liu to

> forfeit . . . all copies, manufactured, reproduced, distributed, sold, or otherwise used, intended for use, or possessed with intent to use in violation of the offense under Section 506(a), and all plates, molds,

matrices, masters, tapes, *film negatives*, or
other articles by means of which such copies
may be reproduced, and all electronic,
mechanical, and other devices for
manufacturing, reproducing, and assembling
such copies, including but not limited to the
items listed below:

(1) ODME replication machine—Serial
Number 98017, Unit Code CDR 2010/00
Manufacture Year 1998; and

(2) Hanky Printer—Serial Number
AA-72B1R, Model Number CD-300
(emphasis added).

The inclusion of the word "film negatives" in the middle of
boilerplate forfeiture language is not nearly enough to have
put Liu on notice that he was to be subject to copyright
infringement charges involving motion pictures.

The government also insists that "there is no material
difference between music and movies for the infringement
charged in this case" because "both types of infringement
required the same kind of equipment and resulted in digital
copies pressed on discs." Assuming that the government's
factual premise is true—the record is ambiguous—its
relevance is unclear. Liu took orders from several different
clients. The *Crouching Tiger* order was a distinct transaction
from the ones at issue in the original indictment. Liu might
have used his equipment to commit any number of similar but
unconnected crimes. If he had done so and the government
intended to prosecute him for one of those crimes, it had until

the relevant statute of limitations ran out to charge him. Here, it did not.

Plainly, count two of the second superseding indictment was not subject to tolling. Because the alleged conduct occurred more than five years earlier, this count was time-barred. We can think of no legitimate reason for Liu's trial counsel not to have raised the obvious statute-of-limitations defense, and Liu was unquestionably prejudiced by the result—he was convicted. Consequently, Liu's counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).

We have already vacated Liu's conviction and sentence on count two based on the inadequate willfulness instruction. Given that this count is time-barred, we see no reason the government should be allowed to retry him on it. On remand, the district court should dismiss count two.

**CONCLUSION**

We vacate Liu's convictions and sentences for criminal copyright infringement and trafficking in counterfeit labels.[7]

---

[7] As to counts one and two, Liu challenges the district court's calculations of the infringement amount and the quantity of infringing works. We find no error. By default, the infringement amount is calculated as the number of infringing copies multiplied by the retail value of the *infringing* work. United States Sentencing Guidelines § 2B5.3, cmt. 2(B). In certain enumerated circumstances, such as the case here, when the infringing item "is a digital or electronic reproduction of the infringed item," the infringement amount is instead calculated as the number of infringing copies multiplied by the retail value of the *infringed* work. *Id.* § 2B5.3, cmt. 2(A)(i)(II). Thus, the district court appropriately valued the CDs and DVDs at the retail price of the infringed works. With regard to

We need not address the remaining issues raised on appeal and remand this matter to the district court for further proceedings consistent with this opinion.

**VACATED and REMANDED with instructions.**

---

the number of infringing works, in the absence of any evidence suggesting that particular purchase orders found at the Vertex warehouse overstated the quantity of software produced, the court was entitled to rely on the number of sales they reflected.  As to the infringing discs found at the Super DVD warehouse, the court's calculation of the number of infringing works was supported by both the Super DVD documents and the actual CDs and DVDs.